IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD GRISSOM,

                    **Plaintiff,**

v.                                                            CASE NO. 23-3260-JWL

JORDAN BELL, ET AL.,

                    **Defendants.**

### MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff and state prisoner Richard Grissom, who currently is housed at El Dorado Correctional Facility (EDCF) in El Dorado, Kansas, filed this pro se civil action pursuant to 42 U.S.C. § 1983. (Doc. 1.) The Court has reviewed the complaint and identified certain deficiencies that are set forth below and that leave portions of the complaint subject to dismissal. The Court will therefore direct Plaintiff to show cause why these portions should not be dismissed. In the alternative, Plaintiff may file a complete and proper amended complaint that cures the deficiencies identified herein. If Plaintiff fails to do so in the allotted time, the identified portions of this matter will be dismissed without further prior notice to him and this case will proceed only on the remaining asserted grounds for relief.

**I.**    **Nature of the Matter before the Court**

Plaintiff names as defendants Jordan Bell, the Classification Administrator at Hutchinson Correctional Facility (HCF); Daniel Schnurr, Warden of HCF; Joel Hrabe, Deputy Secretary of Corrections – Facility Management; the unnamed Classification Administrator at Lansing Correctional Facility (LCF); and Shannon Meyer, Warden of LCF. (Doc. 1, p. 2.) He asserts claims against all Defendants in their individual and official capacities. *Id.* Plaintiff has been incarcerated

1

since his 1990 state-court convictions of three counts of first-degree murder, one count of aggravated kidnapping, four counts of robbery, two counts of aggravated burglary, and one count of misdemeanor theft. *See State v. Grissom*, 251 Kan. 851, 879, 936 (1992).

As the factual background for this complaint, Plaintiff alleges that in January 2018, he was transferred out of EDCF "for 'his and [a] staff member's safety.'" *Id.* at 5. On March 15, 2019, while he was housed at HCF, he was placed in the restrictive housing unit (RHU) after an altercation with two other inmates; CCI Razalia Benford informed Plaintiff that the altercation meant that he would be transferred to general population at a different facility. *Id.* at 4; (*see also* Doc. 1-3 (noting location as HCF)). On April 2, 2019, Benford advised in writing that he had two transfer options—LCF or a facility in Larned, Kansas—but Larned was the only realistic option since Plaintiff had a "central monitor" at LCF. (Doc. 1, p. 4; Doc. 1-2.)

Kansas Department of Corrections (KDOC) Internal Management Policy and Procedure (IMPP) 20-105A covers the periodically required reports for "all residents continuously held in" RHU, which must "include, at a minimum, information justifying the continued placement in RHU." *See* IMPP 20-105A(IX)(A)-(A)(1). The subsequent subsection provides: "If the Warden and [the restrictive housing review board (RHRB)] cannot articulate reason(s) for continuing the placement, then the placement is to end." *See* IMPP 20-105A(IX)(A)(1)(a). After Plaintiff had been in RHU for 180 days, a periodic review was required. (Doc. 1, p. 4; Doc. 1-3.) Defendants Bell and Schnurr, as well as two deputy wardens, recommended that Plaintiff be released from RHU; the review also noted that Plaintiff could not return to general population at HCF and would need to be transferred to another facility. (Doc. 1, p. 4; Doc. 1-3.)

On January 27, 2020, Plaintiff submitted a Form 9 to staff noting that he had been in RHU for over 10 months waiting to transfer to general population at another facility. (Doc. 1, p. 4; Doc.

2

1-4.) He advised that his "physical health [was] declining," and that his inability to move around in the small cell combined with the hot summers was exacerbating "[his] condition."[1] (Doc. 1, p. 4; Doc. 1-4.) Plaintiff also pointed out that an IMPP in effect at the time required that individuals "'shall not' be held . . . longer than reasonably necessary to accomplish the transfer to another facility." (Doc. 1-4.) In response, Benford explained that other inmates had been waiting longer to transfer "because KDOC doesn't have the bed space right now to facilitate transfers as quickly as we would like," but Benford had emailed the transfer coordinator to see if anything could be done to effect the transfer before summer. (Doc. 1, p. 4; Doc. 1-4.)

On March 13, 2020, the required yearly review of Plaintiff's AHU status occurred. (Doc. 1, p. 4; Doc. 1-5.) Once again, all involved—including Defendant Hrabe—recommended Plaintiff's release from RHU, but the review form also noted that Plaintiff could not be released to general population at HCF and a "[m]aximum custody transfer will be difficult" and was "unlikely." (Doc. 1, p. 4; Doc. 1-5.) Plaintiff remained in RHU at HCF. (Doc. 1, p. 4.)

On June 10, 2020, Plaintiff filed a grievance against Defendant Bell; the following day, Plaintiff was moved from an RHU cell with bars to an RHU cell with a solid door. *Id.* at 5. The lack of circulating air exacerbated Plaintiff's "medical condition" and led to him being placed in the clinic for more than a week. *Id.* On June 15, 2020, Plaintiff filed in this Court a complaint that began a federal civil rights action. *See Grissom v. Bell, et al.*, Case No. 20-cv-3163-JWB-ADM, Doc. 1. He named as defendants in that action current Defendants Bell and Schnurr along with 18 other members of HCF staff. *Id.* Highly summarized, the complaint included allegations that Bell and Schnurr unconstitutionally subjected Plaintiff to excessive force and cruel and unusual punishment and violated his liberty interests by actions they took related to the handcuffs used on

---

[1] Plaintiff does not further identify his medical condition.

Plaintiff, and that at least some of those actions were motivated by a desire to retaliate against Plaintiff for a prior excessive force lawsuit he had filed against EDCF. *See id.* at 10.

Returning to the civil rights action now before this Court, Plaintiff alleges that on November 1, 2020, he submitted a Form 9 to Defendant Bell, noting that he still had not been transferred, despite the previous and unanimous recommendations that he be released from RHU upon transfer to a different facility. (Doc. 1, p. 4; Doc. 1-6.) Two days later, Defendant Bell replied: "You are scheduled to be transferred once transfers are allowed to occur due to the COVID pandemic." (Doc. 1, p. 4; Doc. 1-6.)

On April 27, 2021, this Court ordered service in *Grissom v. Bell, et al.*, and requested that Defendants waive formal service of process. Case No. 20-cv-3163-JWB-ADM, Doc. 7. The waiver of service was returned executed as to all defendants on May 28, 2021. *Id.* at Doc. 8. Five days later, on June 2, 2021, Plaintiff was transferred to LCF and housed in "Supermax long[-]term segregation," where he alleges that "the wors[t] of the worst is confined." (Doc. 1, p. 5.) Plaintiff contends that the transfer was retaliation for his proceeding with the civil rights action in which Defendants Bell and Schnurr had just waived service. *Id.*

LCF staff controlled the lights in the long-term segregation unit, which were on from 7:00 a.m. until approximately 10:00 p.m. *Id.* Plaintiff was not allowed to purchase food or coffee, nor was he allowed to have a television, sweats, shorts, art supplies, books, a hot pot, a lamp, a mirror, or other items. *Id.* The first required review of Plaintiff's segregation at LCF occurred in July 2021. *Id.* Plaintiff alleges that the segregation review board advised him that he did not belong in segregation and it "was recommending release to general population and transfer to a different facility." *Id.* In a July 8, 2021 response to a form 9 filed by Plaintiff regarding his segregation, an LCF Unit Team Manager told Plaintiff that "Major Ball[,] myself[, and] EAI will advocate for

4

your release to GP."[2] *Id.*

Nevertheless, Plaintiff remained in segregation and, on March 22, 2022, he was transferred to EDCF, where he was housed in administrative RHU. (Doc. 1, p. 5.) The transfer was approved by the unnamed Defendant LCF's Classification Administrator and Defendant Meyer, the Warden at LCF. *Id.* As noted above, Plaintiff had been transferred out of EDCF in 2018 for safety reasons. Plaintiff has again been recommended for release to general population and currently is on holdover status waiting for transfer to a different facility. *Id.* at 5-6. He has been in RHU for over four years since he was first recommended for release to general population and he asserts that his RHU status has prevented him from having a job, experiencing better overall health and contact visits, and getting daily yard time, daily showers, time in the dayroom, and other privileges associated with better classification. *Id.* at 6.

As Count I, Plaintiff alleges that Defendants Schnurr, Bell, and Hrabe approved and authorized Plaintiff's June 2, 2021 transfer from RHU at HCF to long-term segregation at LCF as unconstitutional retaliation for Plaintiff exercising his right to access the courts by pursuing case number 20-cv-3163-JWB-ADM. *Id.* at 8. Plaintiff contends that these actions violated his First Amendment rights and his "liberty interest." *Id.* As Count II, Plaintiff alleges that Defendant Meyer and the unnamed Defendant LCF's Classification Administrator continued the unconstitutional retaliation by approving Plaintiff's transfer from LCF long-term segregation to

---

[2] This language is taken from Plaintiff's factual allegations in the complaint currently before the Court. (Doc. 1, p. 5.) The Court notes, however, that the Form 9 and response are included as an exhibit to the complaint and a review of that exhibit shows that the quoted language, when considered in context, did not promise immediate advocacy. Rather, the response stated:

> Not sure what you are wanting me to do w[ith] this paperwork. Per our discussion in seg [*sic*] review[,] you will be in A2 a minimum of 4 months, however, we (Major Ball[,] myself[, and] EAI will advocate for your release to GP when you reach that 4 month mark. We cannot do anything until then.

(Doc. 1-8.)

RHU at EDCF on March 22, 2022 instead of releasing him to general population. *Id.* Plaintiff also contends that these actions violated mandated IMPPs and therefore violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. *Id.*

As Count III, Plaintiff alleges that "all Defendants" have violated his rights under the Fourteenth Amendment's Equal Protection Clause. *Id.* He points out that he "is multiracial but is considered black by prison officials," and he asserts that "no other inmate within KDOC" has been repeatedly recommended for release to general population at another facility but has instead been transferred to a segregation unit at another facility. *Id.* Plaintiff further contends that the transfers, denial of transfers, unfavorable classifications, and arbitrary decision-making serve no legitimate penological interests and the Court must consider the racial disparity in treatment. *Id.* As relief, Plaintiff seeks $50,000.00 in punitive damages; $50,000.00 in compensatory damages, and a lower custody classification level. *Id.* at 10.

## II. Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes this pro se complaint and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then Plaintiff has not met his burden. *See Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

**III.  Discussion**

    **A.  Count I**

The Court expresses no opinion on the merits of Count I or the likelihood of Plaintiff's ultimate success on the arguments therein. The Court concludes only that Count I states a plausible claim for relief and thus passes the initial screening required by 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

### B. Count II

Count II is subject to dismissal for failure to state a plausible claim on which relief can be granted. As noted above, Count II alleges that Defendant Meyer and the unnamed Defendant LCF's Classification Administrator continued the unconstitutional retaliation by approving Plaintiff's transfer from LCF long-term segregation to RHU at EDCF on March 22, 2022 instead of releasing him to general population. (Doc. 1, p. 8.) Count II also contends that these actions violated mandated IMPPs and therefore violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. *Id.*

### i. Retaliation Claim

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'" *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). An "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 Fed. Appx. 845, 848 (10th Cir.2001)(citing *Maschner*, 899 F.2d at 949–50; *Peterson*, 149 F.3d at 1144)). Plaintiff "must allege more than his personal belief that he is the victim of retaliation." *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

> "To state a First Amendment retaliation claim, a plaintiff must allege that: 1) he was engaged in constitutionally protected activity; 2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and 3) the defendants' adverse

actions were substantially motivated by the plaintiff's protected activity. Specific facts showing retaliation, as opposed to personal beliefs, must be alleged.

*O'Bryant v. Finch*, 637 F.3d 1207, 1215 (10th Cir. 2011) (citations omitted).

Plaintiff sufficiently alleges the first and second elements of a retaliation claim. With respect to the third element, however, he fails to allege sufficient facts to demonstrate a plausible claim that Defendants Meyer and the unnamed Classification Administrator at LCF were substantially motivated by Plaintiff's lawsuit when they approved his transfer to RHU at EDCF in March of 2022.

> "A plaintiff may be able to establish that a defendant's actions were substantially motivated by protected activity where the allegations show 1) the defendant was aware of [the plaintiff's] protected activity; 2) the protected activity complained of the defendant's actions; and 3) the alleged retaliatory act 'was in close temporal proximity to the protected activity.' Temporal proximity between protected activity and a challenged prison action, however, does not in itself demonstrate the causal nexus for a retaliation claim."

*Id.*

Plaintiff alleges that "[t]his action was the continuation of the initial retaliation for using the court system," but he alleges no facts that support this conclusion. (Doc. 1, p. 8.) Neither Defendant Meyer nor the LCF Classification Administrator were parties to case number 20-cv-3163-JWB-ADM and that case did not complain about actions by either of them. Moreover, although case number 20-cv-3163-JWB-ADM was ongoing in March 2022, the existence of a lawsuit against KDOC defendants is not enough in and of itself to show temporal proximity to actions taken by KDOC defendants not involved in that lawsuit for purposes of alleging retaliatory motive. Accordingly, Plaintiff has failed in Count II to plead a plausible claim for retaliation.

### ii. Due Process Claim

The final sentence in Count II reads: "The refusal to abide by mandated IMPP rules and regulations also violates the Due Process Clause of the 14th Amendment." (Doc. 1, p. 8.) The

Tenth Circuit has explained that when the violation of prison policy is the basis for a constitutional claim, the plaintiff bears the burden to "explain how or why the violation of the policy" violated his constitutional rights; simply alleging the violation of policy is insufficient. *See Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010). Although Plaintiff alleged several IMPP violations in the section of the complaint dedicated to describing "the background of [his] case," (Doc. 1, p. 3-6) he did not identify in the "cause of action" portion of the complaint which IMPP he alleges Defendants Meyer and the unnamed LCF Classification Administrator violated, nor does he explain how the violation implicated his constitutional due process rights.

The required form complaint directs plaintiffs to provide the supporting facts separately for each count brought; this aids the Court in determining the basis of a litigant's claims and whether the claims have been sufficiently pled. As noted above, although the Court liberally construes pro se pleadings, it "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney*, 113 F.3d at 1173-74. The complaint currently before the Court fails to adequately explain the due process claim in Count II and, as such, this portion of Count II is subject to dismissal.

### C. Count III

Count III asserts an equal protection claim "against all Defendants" based on Plaintiff's race. (Doc. 1, p. 8.) Plaintiff states that he is "multiracial but is considered black by prison officials" and that he "has not been treated equally as other inmates that are similarly situated." *Id.* More specifically, he claims that "no other inmate within KDOC" has "been recommended for release from RHU to general population multiple times at 3 different facilities but instead is transferred to a different segregation unit." *Id.*

The Equal Protection Clause of the Fourteenth Amendment "'commands that no state shall

10

"deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.'" *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also Ashaheed v. Currington*, 7 F.4th 1236, 1249 (10th Cir. 2021). As the Tenth Circuit has explained, "to establish an equal-protection violation [based on race], Grissom must show that the [p]rison [o]fficials treated him differently from similarly situated white prisoners. 'Individuals are similarly situated only if they are alike in all relevant respects.'" *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018) (quoting *Requena*, 893 F.3d at 1210)). When an equal protection claim is based on race, the plaintiff also must "'sufficiently allege that defendants were motivated by racial animus.'" *See Requena*, 893 F.3d at 1210) (quoting *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989)).

In the complaint now before the Court, Plaintiff has not sufficiently alleged that he was treated differently from similarly situated prisoners of another race. The allegation that he is treated differently from all other KDOC prisoners is the type of conclusory statement that is insufficient to support a plausible claim for relief. *See Requena*, 893 F.3d at 1210 ("[G]eneral allegations of racial animus and discriminatory treatment are too vague and conclusory to state a claim."). Additionally, no facts pled in the complaint support Plaintiff's contention that his race was related to the decisions to transfer him between different segregation units rather than release him to general population. Accordingly, Count III is subject to dismissal for failure to state a plausible claim for relief.

### D. Relief Sought

As relief, Plaintiff seeks $50,000.00 in punitive damages; $50,000.00 in compensatory damages; and a lower custody classification. (Doc. 1, p. 10) Plaintiff brings his claims against

11

Defendants in both their individual (or personal) and official capacities. (Doc. 1, p. 1-2.) "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991)). Thus, Plaintiff's request for money damages from Defendants in their official capacities and his request for injunctive relief against Defendants in their individual capacities are subject to dismissal.

## IV.    Response or Amended Complaint Required

For the reasons stated herein, Counts II and III, as well as certain relief requested by Plaintiff, are subject to dismissal. Plaintiff is given the opportunity to show cause, in writing, why these portions of the complaint should not be dismissed. In the alternative, Plaintiff may file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

In order to add claims or significant fact allegations, Plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint does not simply supplement the original complaint; it completely replaces it. Therefore, any claims or allegations not included in the amended complaint are no longer before the Court. To be clear, Plaintiff may not simply refer in an amended complaint to his initial complaint; the amended complaint must contain all allegations, claims, and exhibits that Plaintiff intends to pursue in this action, including those to be retained from the initial complaint. Plaintiff must write the number of this case (23-3260) at the top of the first page of his amended complaint. He must name each Defendant in the caption of the complaint and again refer to each defendant in the body of the complaint. In each count of the amended complaint, he must adequately identify the federal constitutional provision or law he believes was violated and he must allege sufficient facts tied to that count to show that each

12

defendant personally participated in at least one of the federal constitutional violations alleged in the complaint, including dates, locations, and circumstances. Plaintiff may attach additional pages to the form complaint if necessary, but he should not utilize the form complaint only to refer the Court generally to an attached memorandum. Again, Plaintiff should identify which alleged facts support which counts in the amended complaint.

If Plaintiff fails to timely file an amended complaint or a written response in which he shows cause why the portions of the complaint identified herein should not be dismissed, the Court will dismiss those portions of the complaint without further prior notice to Plaintiff. This matter will then proceed only on Count I, without a request for money damages from Defendants in their official capacities and without a request for injunctive relief against Defendants in their individual capacities.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including February 2, 2024 to show cause, in writing, why the portions of the complaint identified herein should not be dismissed. In the alternative, Plaintiff is granted to and including February 2, 2024 to file a complete and proper amended complaint that cures all the deficiencies discussed herein. The clerk is directed to send 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED.**

DATED:  This 2nd day of January, 2024, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge