Richard Grissom-#33728
Name

EDCF, P.O.Box 311

El Dorado, KS 67042
Address

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

Richard Grissom , Plaintiff
(Full Name)

CASE NO. 5:23-cv-3260-HLT/ADM
(To be supplied by the Clerk)

v.

Jordan Bell, et al. , Defendant (s)
(See Pg.6-10 for Remaining Defendants)

**Verified First Amended**
CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C. §§§ 1983,
1985(2) & (3), and § 1986, & §§1988.
**Trial By Judge On All Triable Issues**

## I. JURISDICTION

A. Plaintiff:

(1)  Richard Grissom , is a citizen of  Kansas
     (Plaintiff)                                (State)

who presently resides at  El Dorado Corr. Facility (EDCF), 1737 S.E. Hwy. 54/
                                                           (Mailing address or place
P.O.Box 311, El Dorado, KS 67042 .
of confinement.)

B. Defendants:

(1)  Defendant  Jordan Bell                        is a citizen of
                (Name of first defendant)

Hutchinson, Kansas                              , and is employed as
                (City, State)

HCF Classification Administrator          . At the time the
                (Position and title, if any)

claim(s) alleged in this complaint arose, was this defendant acting under the color of state

law? Yes ☒ No ☐. If your answer is "Yes", briefly explain:

Please refer to Pg. 6 — Pg.10

XE-2 8/82            CIVIL RIGHTS COMPLAINT §1983

1 of 39

(2) Defendant ___Please refer to Pg. 6-10 herein___ is a citizen of

*(Name of second defendant)*

___for remaining named & directly___, and is employed as

___involved defendants___

___. At the time the

*(Position and title, if any)*

claim (s) alleged in this complaint arose was this defendant acting under the color of state

law?  Yes ☐  No ☐ . If your answer is "Yes", briefly explain:

_____

_____

## C. Jurisdictional Authorities:

Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331(1), § 1343 (a)(3); 42 USC §§ 1983, & §§ 1985(2)&(3), §§ 1986'. Also 28 USC §§ 2201 & 2202 for Declaratory relief. Plaintiff's claims for Injunctive relief are authorized by 28 USC §§ 2283 & 2284/& Rule 65 F.R.Civ.P.; The U.S. District Court of Kansas is an appropriate venue under 28 USC §§ 1391(b)(2). And this court has supplemental jurisdiction over the Plaintiff's State law tort claims under 28 USC § 1367 and KSA 75-6101 et seq. & KSA 21-5105 re the criminal mistreatments/KSA 21-5416. And jurisdiction per 18 USC §§ 3332(a) for 18 USC §§ 241, 242, 371, 1621 Violations & Grand Jury Indictments of Defendants federal criminal Acts. The Court also was jurisdiction under 28 USC § 1651.

## II. NATURE OF THE CASE

A. Pursuant to 28 USC § 1746, I, Richard Grissom - Plaintiff Pro Se, herewith declare upon my solemn oath & under penalty of perjury (18USC§§1621) that the following facts are true & correct, & based upon my personal experience & knowledge.

### B. Background Facts:

(1) Plaintiff is presently a 64 yrs. old prisoner confined in the KDOC since 1989 (he was probably railroaded on concocted circum-stantial evidence orchestrated by the infamous & now unmasked apex Predator Paul Morrison—former JoCo D.A./KSA/G-& corrupt confederates w/him in the criminal justice system all colluding to convict by any means necessary & their victims would exceed Arrowhead Football stadium's capacity (See also former JoCo D.A. Ofc. Administrator Linda Carter's corruptly "sealed" D.Ct. deposition.), & thru-out his KDOC incarceration, he has been one of many "high profile" prisoners, discriminatorily singled out for insidiously "targeted" unconstitutional & criminal mistreatments for years & years, w/diabolically perverse intents to & has, subjected him to unprecedented psychological abuses causing irreparable injuries during past 5 yrs, of his being confined unlawfully in segregation & subjected to sham reviews. Continued at Pg. 10 - Subsection C.- statement of Actionable Facts.

2 of 39

# III. Causes of Action

1) I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations: (If necessary you may attach up to two additional pages (8h" x 11") to explain any allegation or to list additional supporting facts.)

A) (1) Count I: _Please refer to Pg. 21 - 32_ _____

_____

_____

(2) Supporting Facts: (Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.):

_____

_____

_____

_____

_____

B) (1) Count II: _____

_____

(2) Supporting Facts: _____

_____

_____

_____

3 of 39

C) (1) Count III: _____ı_____

_____

(2) Supporting Facts: _____

_____

_____

_____

**IV** PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun other lawsuits in state or federal court dealing with the same facts

involved in this action or otherwise relating to the conditions of your imprisonment?

Yes ☒ No ☐ . If your answer if "Yes", describe each lawsuit. (If there is more than

one lawsuit, describe the additional lawsuits on another piece of paper, using the same

outline.)

a) Parties to previous lawsuit:

Plaintiffs: ___Same_____

Defendants: _____

b) Name of court and docket number _____

_____

c) Disposition (for example: Was the case dismissed? Was it appealed? Is it still

pending?) _____

_____

d) Issues raised _____

_____

4 of 39

XE-2 8/82                    CIVIL RIGHTS COMPLAINT §1983

e) Approximate date of filing lawsuit _____

f) Approximate date of disposition _____

(9) Continued at Pg. 35

1) I have previously sought informal or formal relief from the appropriate administrative

officials regarding the acts complained of in Part C Yes [X] No [ ]. If your answer is

"Yes", briefly describe how relief was sought and the results. If you answer is "No",

briefly explain why administrative relief was not sought.

Plaintiff humbly refers all readers hereof to his evidentiary
exhibits attached to this FAC; & to note that the effective
usage of discovery tools will provide a "himalayan treasure
trove" of his vigorous pursuits of admin. remedies that were
futile & obviously corruptly predetermine. For anyone to remotely
say that "all admin. remedies as were available "were not pursued
would be committing perjury (which is "normal" for KDOC defendants
& their "officers of the court" defenders & being evil twins of the
defendants attys. in Littler v. Martinez, 2020 U.S. Dist. Lexis 1850.

**V REQUEST FOR RELIEF**

1) I believe that I am entitled to the following relief:

Please refer to Pg. ˉ36~38

_____

_____

_____

_____

N/A at this time
_____
Signature of Attorney (if any)

s/ [signature]
Richard Grissom—
Plaintiff/Pro Se
KDOC #
EDCF, P.O. Box 311
El Dorado, KS 67042

_____

_____
(Attorney's full address and telephone number)

Pg.6/8-13-24 Verified FAC - C/A#23-CV-3260-HLT :

B. Defendants Continued from Pg.2:

HCF: (For events from 3-15-19 to 6-2-21 at HCF Directly, & thereafter):

(2) Dan Schnurr - Warden, at 500 Reformatory Rd., Hutchinson, KS, 67504;
(3) Debra Mcconaghy- Dep. Warden & Classif. Administrator; *
(4) Robert Vieyra- Dep. Warden. *
(5) Tommy Williams- Dep.Warden. *
(6) Clay Vanhoose- Major. *
(7) Mike Nichols - Seg. Unit Mngr. *
(8) Terrin Hackney- B-Cellhouses Unit Mngr. *
(9) John Markus- EAI Supervisor. *
(10) Lt. Raymond Stiggins— Seg. Units Lt. *
(11) Marcus Dawes - Seg. Unit Team. *
(12) Jeffery Pettyjohn — Seg. Unit Team. *
(13) Brendan Graff — Seg. Unit Team. &
(14) Rozalia Benford- Seg. Unit Team. *
(15) Debra Lundry — Health Svcs. Administrator for both Corizon & Centurion Medical Services Contractors (Corizon pre- 7-1-20; Centurion post 7-1-20)*
(16) Misti Keolavone- M/H Svcs. Supervisor. *
(17) Kevin Stansbury — M/H Counselor for Segregation. *
(18) Corizon Medical Health Services Contractor, 205 Powell Place, Ste. 104, Brentwood, TN 37027.
(19) Centurion Medical Health Services Contractor, Regional Ofc. for Kansas, 6220 SW 29th, Topeka, KS 66614.
(20) CO1 Louann Dyche, HCF D. house shift officer on 3-18-19. *
(21) J. Doe #1 — Property/Personal Injury Claims Coordintor for HCF, & All Grievances. *

Each of the above named defendants separately, & jointly w/the below named defendants, were directly & actively involved in the actionable wrongs at bar, by virtue of their acts & failures to act & at all times material & relevant herein, acted under color of state law & the protections of the rules, regulations, policies, & corrupt customs & practices entrenched at KDOC facilities & at KDOC Central Ofc., & general orders, unique to each facility, & contrary to our state & federal criminal laws (KSA Ch. 21 & Title 18 respectively) & "protections" of each other's unlawful collusions.

   LCF: (For events from 6-2-21 to 3-22-22 at LCF directly & in conspiratorial league w/ defendants at HCF, EDCF, & KDOC central Ofc.):

(22.) Shannon Meyer-Warden, *301 E. Kansas, Lansing, KS. 66043;
(23.) CS1 Holly Shaw - Property Room Decimations Supervisor, *.
(24.) J. Doe #2- Property & Personal Injury Claims Coordinator for LCF, *.
(25.) J. Doe #3 - Grievances Coordinator Designee for LCF, *.

Pg. 7/B13-24 Verified FAC-C/A# 23-CV-3260-HLT :

B. Defendants Continued from Pg. 6 :

LCF: (For events from 6-2-21 to 3-22-22 at LCF directly & in conspiratorial league w/ defendants at HCF, EDCF, & KDOC Central Ofc.) :

(26) Lindsey Wildermuth - Seg. Unit Mngr., *.
(27) Jorge Hernandez - Seg. Unit Counselor, *.
(28) Colette Winklebaur, Dep. Warden, *.
(29) James Skidmore, Dep. Warden, *.
(30) Nicholas Ball, Major, *.
(31) James Gift - EAI Supervisor, *.
(32) Dani Wagner - LCF Classification Administrator, *.
(33) J. Doe #4 - A-4 Seg. M/H "BHP" Counselor, *.
(34) J. Doe #5 - " " " " " , *.
(35) J. Doe #6 - LCF M/H Supervisor, *.
(36) David Haehl - EAI / "Special Agent", *

Each of the above named defendants, separately & jointly, in conspiratorial league w/ the HCF, EDCF, & other defendants named below, were directly & actively involved in the actionable wrongs at bar, by virtue of their acts & failures to act, & at all times material & relevant herein, acted under color of state law & the protections of the rules, regulations, policies, & corrupt customs & practices entrenched at KDOC facilities, & at KDOC Central Ofc., & general orders unique to each facility, & contrary to state & federal criminal laws (KSA Ch. 21 & Title 18 respectively), & "protections" of each other's unlawful collusions.

EDCF : (For events from 3-22-22 to 4-24-24 at EDCF directly & in conspiratorial league w/ defendants at HCF, LCF, & KDOC Central Ofc.) :

(37) Tommy Williams - Warden* 1737 S.E. Hwy. 54, El Dorado, KS 67042;
(38) Maria Bos - Dep. Warden, *
(39) Matthew Moore - Dep. Warden, *
(40) John Gannon - EAI Dep. Director, *. (his "ofc." is at EDCF).
(41) Thomas O'Brien - EAI Supervisor, *.
(42) Ashley McKeen - Segregation M/H "BHP" Counselor, *.
(43) Robert Reed - " " " " " ,
(44) Leonard Moore - Major, *, " " " " .
(45) Lt. Cody Austin - Segregation Units Lt., *.
(46) Dustin Randolph - Major, *.
(45) Jarris Perkins - Property / Injury Claims / EDCF Designee *.
(46) Brandon Walmsley - CM2 / Segregation Units Administrator, *.
(47) Jennel Buchanan - A-Cellhouse Seg. Unit Mngr., *.
(48) Kirbie Shearburn - EDCF Classification Supervisor, *.
(49) CM2 David Lewis - Segregation Units Administrator *
(50) Brian Reeves - Segregation Unit Team Counselor *.
(51) Erin Snell, Mental Health "BHP" Supervisor *.
(52) Sarah Madgwick - HSA / EDCF Centurion *.
(53) Alicia Mefford - EDCF M/H Dept. Director, *.

7 of 39

Pg. 8/8-13-24 Verified FAC - C/A #23-CV-3260-HLT:
B. Defendants Continued from Pg. 7 :
EDCF Defendants Continued:

(54) Gillian Delano, Segregation M/H "BHP" Counselor, *.
(55) Joni Cole, EDCF Staff Atty., *.
(56) Laine Barnard, EDCF Staff Atty., *

Each of the above named defendants, separately & jointly, in conspir-
atorial league w/the HCF, LCF, & other named defendants below, were
directly & actively involved in the actionable wrongs at bar, by virtue of
their acts & failures to act, & at all times material & relevant herein, each
acted under color of state law & the protections of the rules, regulations,
policies, & corrupt customs & practices entrenched at KDOC facilities, & at
KDOC Central Ofc., & general orders unique to each facility, & contrary to state
& federal criminal laws (KSA Ch. 21 & Title 18 respectively), & "protections" of
each others unlawful collusions.

    KDOC H.Q./Central Ofc. - Topeka (For events from 3- -19 to 8- -24
        & ongoing)
(57) Jeff Zmuda - KDOC S.O.C. *, 714 SW Jackson, 3rd Fl., Topeka, KS. 66603;
(58) Joel Hrabe - KDOC Dep. S.O.C., *.
(59) Gloria Geither - "    "    "    ", post-Hrabe.
(60) Darcie Holthaus - S.O.C.'s "All Purposes Firewall Designee", *.
(61) Natasha Carter - KDOC Chief Counsel, post Jeff Cowger, *.
(62) Jeff Cowger - KDOC Chief Counsel, pre Natasha Cowger, *.
(63) Doug Woods - KDOC EAI Director, *.
(64) Melissa Waldock - Central Ofc. "Risk Mngmt. Classft. Manager", *.
(65) Lloyd Jensen - "    "    "    "    "    "    ", *.

    Each of the above named defendants were directly involved in these
actionable wrongs at bar, by virtue of their acts & failures to act, & at
all times material & relevant herein, acted under color of state law & the
protections of the rules, regulations, policies, & corrupt customs & practices
entrenched at KDOC facilities, & particularly at the KDOC Central Ofc.
& general orders unique to each facility, & contrary to state & federal
criminal laws (KSA Ch. 21 & Title 18 respectively), & "protections" of each
other's unlawful collusions.

    Other State Defendants Directly Involved & Alleged Co-conspirators:
(66) KS gov. Laura Kelly - she is directly involved & being the state's "CEO"
who final authority over every state agency & department "secretary"
w/unbridled authority to commence, enforce, or cease any arbitrary
or unlawful act(s) or omission(s) perpetrated by any state employee
&/or state agency against any person anywhere in the state →
                        8 of 39

B. Other State Defendants Continued:

(66) Continued:
of Kansas, & further has the legal, moral, & ethical duty & obli-
gation to not only appt. independent Special Counsel per KSA 75-116
to vigorously investigate & prosecute all criminal law violations
by State officials (maliciously) violating their authority as
employees of the State & contrary to the criminal laws of Kansas
enumerated under KSA Chapter 21 (i.e., KSA 21-5416 for example)
& w/out fear or favor, & Gov. Kelly further has the righteous (legal
duty & obligation to terminate the KDOC S.O.C. Jeff Zmuda &
his brazenly corrupt Deputy S.O.C. Gloria Geither, for their arro-
gantly contemptuous refusals to comply w/ their nondiscretionary
statutory (KSA 75-5210(a) re "humane treatment KSA 75-5251 re
"shall investigate & act on all complaints of staff misconduct un-
lawfully, immorally, & unethically perpetrated on any KDOC pris-
oner) & constitutional duties guaranteed to all persons in Kansas
per Articles 1, 3, 9, 11, 15, 17, & 18, of the KS Constitution's Bill of Rights,
& per the U.S. Constitution's 1st 4th 8th & 14th Amendments, & as
declared 52 yrs. ago by the KS Supreme Court in Levier v. State,
497 P.2d 265, 5W. 2 (1972), stating:
    "The rights of an inmate include entitlement to adequate...
    medical care & treatment... and protection against physical
    or psychological abuse or unnecessary indignity"
It is fairly alleged & believed by legions of Kansans, that Gov. Kelly & her
subordinates employed under the KDOC umbrella have lost sight of
their sworn oaths of ofc., & their moral/ethical legal duties that
strictly govern the treatment of prisoners.
    Both Gov. Kelly & her "Director of Constituent Services"/Dawn
Knudtson, are served at 300 SW Tenth, State Capitol Bldg. Rm. 241-S,
Topeka, KS 66612.
(67) Dawn Knudtson, being Gov. Kelly's "Director of Constituent Svcs." is
directly involved by virtue of her ofc. & tasked w/ fully & fairly noti-
fying the gov. of criminal acts complaints by KDOC employees upon
prisoners w/ depraved impunity to be acted upon by the governor,
& presented to her multiple times by Plaintiff & other prisoners
& their advocates. *
(68) Stephen Owens is an elected District 74 Kansas legislator from
Hesston, in Harvey Co. Kansas, & he has egregiously been on the
Legislature's "Correction's Oversight Committee" & masqueraded
as the "Chairman" for far too many years & has always corruptly
ignored & "silently" sanctioned all manner of actionable &
hideously criminal/unconstitutional abuses inflicted on KDOC
prisoners by prison officials w/ impunity, & its fairly said by
rational persons w/ **knowledge of the pertinent facts & evidences,**
that Owens is pompously incompetent & repulsively corrupt, & he has
been directly involved in Plaintiff's specific complaints of actionable
wrongdoings at bar, and also directly involved in countless other →

Pg. 10 / 8-13-24 Verified FAC - C/A # 23-CV-3260-HLT

B. Other State Defendants Continued :

(68) Continued :
prisoners & their advocates fierce protests of actionable criminal
& constitutional wrongdoings by KDOC officials w/ unconscienable
impunity, & his perverse inactions defies logic & reason, & established
law. He is served at 300 SW Tenth, State Capitol Bldg. / Rm. 274-W, in
Topeka, KS 66612 .

(69) The KDOC as a State agency is sued in its official capacity for
the declaratory judgments, & preliminary & permanent injunctive reliefs
sought in this suit hereinafter, & is served at The KS Atty. General's
Ofc., 120 S.W. Tenth, 2nd Floor, Topeka, KS , 66612.

(70) The State of Kansas is also sued in its official capacity for the
declaratory judgments, & preliminary & permanent injunctive reliefs
sought in this suit herein after.

        All named persons directly involved defendants, each of them in-
dividually & jointly, are sued in their individual capacities for money
damages, & as specifically named hereinafter for the preliminary &
permanent injunctive reliefs sought are sued properly in their official
capacities.
        Both Corizon & Centurion Medical Contractors entities are sued in
their individual capacities for money damages for the medical & mental
health malpractices, acts & omissions herein; & Centurion, Inc. is also
separately sued in its official capacity for the preliminary & perman-
ent injunctive relief sought herein after.
        Both the KDOC & State of Kansas are sued in their individual
capacities for money damages arising from the failures to properly train,
supervise, & discipline KDOC wrongdoers cited herein, & both are also
separately sued in their official capacities for the preliminary & perm-
anent injunctive relief sought & entitled to herein.


Section II, Subsection C. - Statement of Actionable Facts

(1.) Plaintiff is presently a 64 yr. old man who has been in continuous
KDOC custody since 1989, (approx. 35 yrs.), & had prior to the action-
able facts/evidences at bar herein, been criminally & unconstitu-
tionally confined in segregation status under egregiously unprecedented
punitive conditions for 21 straight years, which plainly had dramatic
affect on his physical & psychological health as intended. That which
is before the court herein defies established law & is shocking to
the conscience, & demonstrates that those in "leadership" positions
should at a minimum, should be immediately terminated, & reveals
gross malfeasances that has allowed the entrenched cultures of
arrogant unconstitutionalis imposed on prisoners w/ impunity, to thrive →
10 of 39

Pg. 11/8-13-24 Verified FAC - C/A#23-CV-3260-HLT

Section II, Subsection C./Statement of Actionable Facts:

(1) Continued from Pg. 10 :

Throughout the KDOC, & State/federal Officials, LEO's, & the Court's loathe to intervene & enforce basic constitutional rights guaranteed by the 1st, 4th, 8th & 14th Amendments. Accountability to the rules of law have been a foreign concept as the facts/evidences at bar in this case aptly & sadly reveals. The "actionable facts & evidences" hereinafter focuses on:

(a) Deliberate indifference by specific defendants to Plaintiff's serious medical needs which constitutes 8th Amendment violations, conjoined w/ 1st Amendment retaliations for complaining about specific defendants malicious refusals to accommodate medical staff's treatment recommendations.  Actionable facts & evidences that will persuasively support jury findings of 8th Amendment deliberate indifferences & 1st Amendment retaliations liabilities.

(b) Whether KDOC IMPP#20-104, section I.B. at subsection 14, a.(2), which unambiguously states:

"The Warden or his designee may place in Admin. Seg. Inmates who are identified as holdovers.
An individual shall not be held on holdover status for a period longer than reasonably necessary to accomplish the transfer to another facility." (emphasis added).

Creates a common-sense meaning & "liberty interest entitlement to what is "reasonable", and at what point in time does the "shall not..." cross-over past being unreasonable & patently in violation of the 8th Amendment ban on cruel & unusual punishment, in violation of an unlawful seizure upon his person & effects forbidden by the 4th Amendment unique to this prisoner, & in violation of Plaintiff's 14th Amendment rights to legitimate due process & equal protection of the law.

Is a "holdover status" past 90 days "reasonable"?
" " " " " 180 days " ?
" " " " " 365 days " ?
" " " " " 730 days " ?
" " " " " 1000 days " ?
" " " " " 2000 days "?

The Kansas Supreme Court ruled in Jamerson, 304 Kan. 678 (2016), on these many questions, & applied to Plaintiff's actionable facts/evidences, he has valid actionable constitutional violations & injuries that are →

Pg. 12 /8-13-24 Verified FAC- C/A #23-CV-3260-HLT
Section II. Subsection C. Statement Of Actionable Facts :

(1)(b) Continued from Pg. 11 :

glaringly sufficient to support a Jury or Judge's findings of multiple
actionable constitutional violations. The concrete written proofs evidence
all showing diabolical lies over & over "for over 5 yrs. on hold over
status" is indefensible, & the psychological abuses inflicted are irrepar-
able.

(2) On 3-15-19, while confined in general population at HCF in B-2 cell-
house, & while in the main dining room eating breakfast, COI Louann
Dyche knowingly & unlawfully, opened Plaintiff's cell door for 2 I/m's
to steal his personal property, & knew repercussions would ensue.
See also Exhibits #1

(3) And when Plaintiff returned to his cell from breakfast & discovered
what had occurred & who was responsible, a physical altercation was
had with the 2 I/m's responsible & response staff code called. All
involved were taken to one of the 3 segregation celldocks, & Plaintiff
placed in the upstairs A-3 cellhouse, & incurred 2 rules infractions, &
he pled guilty & sentenced to 30 days Dis. Seg. w/60 days Privileges
Restrictions plus a concurrent sentence of 15 days Dis. Seg. & 30
days Privileges Restrictions.   See Exhibits #2.   ; And defendant Dyche's
superiors engaged in a criminal & unconstitutional conspiracy to "immunize"
her culpabilities (defendants Vanhoose, Bell, Meconaghy, Vieyra, Williams, Schnurr, Markus,
Woods, Cannon, Hrabi, Zmuda, Holthaus, & Cowger) & preserve the corrupt "status quo".
(4.) Plaintiff thereafter filed a LOST property claim form due to
defendant Dyche's active complicity in the theft of his property, &
because of the entrenched corrupt culture amongst staff, his claim
was preposterously rejected.   See Exhibits #3.   /J. Doe #1 consp-
iratorial denial of Plaintiff's 14th Amendment rights in league w/Schnurr & Zmuda et al.

(5.) Plaintiff's dis. seg. sentence expired on 4-15-19, yet w/in days
of being placed in A-3 cellhouse, a parade of staff found their
way to his cell to discuss his situation & what occurred, & giving
him notice that he would have to be transferred to gen. pop. status
at another facility "as soon as possible", & specifically echoing
& repeating these statements in person at his cell or in the "Seg.
Reviews" were defendants Vieyra, Williams, Vanhoose, Nichols, Stiggins,
Dawes, Pettijohn, Graff, Benford, Keolavone, Stansbury, Hackney, Bell, &
others (names are unknown to Plaintiff). And these "official decisions"
were memorialized in writing. See Exhibits #4

Pg. 13 / 8-13-24 Verified FAC - C/A #23-CV-3260-HLT

Section II. Subsection C. Statement of Actionable Facts:

(6.) Plaintiff was confined in an "open bars cell" while confined in the A-3 cellhouse for 14 months; & while confined in A-3 began incurring serious health issues (rashes & lesions) & was stupendously misdiagnosed by boneheaded medical staff declaring he had "Lupus", & long thereafter (after taking "Lupus" medications) was diagnosed as having a severe case of psorias, which was exacerbated by hot weather & sunlight. Plaintiff was denied the medical cremes required for his condition by an incompetent medical staff & his complaints to HSA Lundry, the facility Doctor (barely spoke English) & the Corizon & replacement Centurion Regional Ofc. in Topeka Chief Medical Officer's, were futile. And the only relief was being able to simply have a daily shower vs. 3x weekly shower... & when defendants Bell & Vanhoose learned of both medical staff & Counselor Benford allowing such, they rabidly declared Plaintiff was manipulating staff & intimidated medical staff vis-a-vis defendant Lundry, into rescinding this medical condition relief. And they (Bell & Vanhoose) then directed Plaintiff's move to the downstairs A-2 Seg. cellblock & placement into a notorious "solid steel door cell in which ventilation airflow was non-existent & being the torrid summer weather, caused the temperture & "heat index" inside the cell to easily be 7-10 degrees hotter & they (Bell & Vanhoose) knew this & that such extremes would greatly exacerbate his medical issues & they intended such deliberate indifferences to his serious medical condition needs & found a willing co-conspirator in Lundry. See Exhibits # 5 and 6. Plaintiff's grievances & Injury Claims perfunctorily denied by defendants Bell, Schnurr, Zmuda, & Holthaus w/deliberate indifference to his serious medical condition needs & caused unnecessary pain & suffering.

(7.) It is a renowned fact known & repeated for decades that defendant Vanhoose is a serious ultra racist & has repeatedly and openly declared himself to be, "the red-neck ringleader of racist staff at HCF" & routinely berated men of color w/derogatory racial slurs, & defendant Bell was always a Vanhoose alcolyte & his pathway of advancement w/in the ranks at HCF was by being a corrupt "cover-up artist" stooge whose loyalties were "to the entrenched culture of criminalities at HCF, & examples of their inhumanities are nonexhaustive & legendary. See Exhibits# 6 and 7; and HCF's SST. (Special Security Team aka "goon squad") are notoriously renowned for viciously sadistic attacks on defenseless prisoners in restraints/take judicial notice of Nicholas Speer v. C01 James Beardsley/Case# 20-CV-3025-SAC; See also

(8.) Plaintiff was confined in Segregation at HCF from 3-15-19 to 6-2-21, when corruptly transferred to LCF's then "super-max" Segregation cellblock in malicious contempt of the repeated verbal & written declarations of being on "hold-over status" for general population transfer to another prison. Plaintiff's status of being confined in "long term →

Pg. 14 / 8-13-24 Verified FAC - C/A # 23-CV-3260-HLT
Section II. Subsection C. Statement of Actionable Facts:

(8) Continued from Pg. 13:

& apparently diabolically selective & racially discriminatory indefinite segregation, was being orchestrated by defendants Zmuda, Hrabe, Geither, Waldock, Jensen, & the "designee" (for Zmuda/Hrabe/Geither Holthaus, & apparently in league w/ Gov. Kelly & her "Director of Constituency Services Dawn Knudson, & also in conspiratorial league w/ Rep. Stephen Owens/KS Legislature's chairman of the corrections Oversight Committee, according to comments made to Plaintiff in person by HCF's Bell & Vanhoose; & by defendants Wildermuth, Hernandez, Skidmore, Gift, & Ball at LCF, that not only were the HCF hierarchy of the Warden Schnurr & his subordinates Williams/Vieyra, Bell, Vanhoose, inciting retaliations against Plaintiff for his justifiable claims & grievances filed at HCF & the EDCF hierarchy was directly involved & also actively "politiking" w/ the KDOC hierarchy of Zmuda, Hrabe, et al & Chief Counsel's Ofc., to prevent Plaintiff from being transferred back to EDCF under any circumstances because of the (criminal & unconstitutional acts stupendously perpetrated by) former EDCF employee Palm against Plaintiff. See also Exhibits # 9 and 10

(9) Plaintiff's repeated verbal & written protests while confined at LCF to or with defendants (from 6-2-21 to 3-22-22 / 10 months) Wildermuth, Hernandez, Winklebaur, Skidmore, Ball, Gift, Wagner, Hachl, & U/K LCF Mental staff defendants (PNU), that everyone was talking out both sides their mouths w/ knowing lies that he was "at the top of the kick-out to gen. pop. list" & it was always emphasized repeatedly that LCF's heirarchy intended to release him to LCF gen. pop. status, but that "it had to be specifically approved by the S.O.C. & Deputy S.O.C." See again the 12-23-21 Form 9 reply from Wildermuth / Exhibit # 10

(10) Backtracking a moment, while at HCF, Plaintiff filed KS Fed. Ct. C/A 5:20-CV-3163-JWB/ADM, challenging HCF security staff's deliberate indifferences to his serious medical needs for extended length handcuff restraints & medical exceptions granted him for several decades, to the use of regular handcuff restraints which when handcuffed behind his back cut his wrists & severely restricted blood circulation to his hands & not only caused excessive swelling & numbness to his hands that lasted several days. Plaintiff was repeatedly threatened w/ being physically assaulted & sprayed w/ chemical munitions & his medical exemptions maliciously violated & Plaintiff complied out of fear & to avoid moronic rules violations & discovered that his medical records exemptions had been corruptly erased from his medical records & these unlawful expungements from his medical records could only be had by corruptly complicit HCF medical staff & it is adamantly alleged & believed that defendant Lundry was in fact personally involved →

14 of 39

Pg. 15/873-24 Verified FAC - 9/A#23-CV-3260-HLT

Section II. Subsection C. Statement of Actionable Facts :

(10) Continued from Pg. 14 :

& she has a documented history of like complicities in erasing medical record doctors orders. see Exhibit #5,6,7,8

And prisoners who pursue litigation against HCF security &/or medical staff know & experience retaliatory acts as "std. operating prcedure". And promptly after the waiver of service had upon both defendants Bell & Schnurr was filed on 5-28-21, & service effectuated, on 6-2-21, they (Bell & Schnurr) conspired w/ defendant McConaghy, Stiggins, Vanhoose, Vieyra, Williams, Marcus, Lundry, Cannon, Woods, Zmuda, Hrabe, Holthaus, & Waldock, & Cowger to transfer Plaintiff w/out just cause to LCF's new highly restricted "super max segregation unit in complicity w/ LCF defendants Shanno Meyer, James Skidmore, Dani Wagner, Major Ball, & UTM Wildermuth, & gift, on 6-2-21.

(11.) That every segregation review had at HCF, LCF, & EDCF from late March 2019 to his ultimate release to gen. pop. at EDCF was in fact a corrupt sham that arrogantly defied established rules, regulations, policies, & established law —— & such diabolical shams, deceits, frauds, & lying is the insidious custom & practice of HCF, LCF, EDCF, & other KDOC facilities & KDOC senior officials.

(12) Plaintiff protests to Mental Health officials assigned to seg. units at HCF, LCF, & EDCF were futile & the psychological abuses suffered, dramatically affected his physical & psychological well-being & his daily activities, which included overwhelming despair, insomnia, loss of appetite, near constant debilitating anxiety attacks, substantial punitive conditions & lack of accesses to canteen privileges, destructions of his legal & his personal property (maliciously done w/impunity by LCF Property Rm. staff / defendant Shaw) & he continues to suffer psychological fears that he will be subjected to such deviantly unlawful abuses, segregation, & transfers again unless granted injunctive reliefs.

(13) At the first LCF Segregation Review Board meeting in July 2021, he was advised by the board members (defendants Wildermuth, Ball, & EAI representative) that they recognized he absolutely did not belong in segregation & were recommending his prompt release to gen. pop. status or transfer to another facility's gen. pop., & they collectively opined to Plaintiff that his dreadfully unlawful situation was being egregiously orchestrated by officials at HCF, EDCF, & the highest levels at KDOC HQ central ofc. (Zmuda, Hrabe, Chief Counsel, Holthaus, & Waldock). See also Exhibits #10

(14) Plaintiff's confinement conditions at LCF's "supermax seg. unit" was severely punitive & entirely unjustified in the face of several years of "hold-over status / release to gen. pop. status recommendations" & included deprivations contrary to his status, including having the cell lighting controlled entirely by staff & turned on at 7am & then turned off around 10pm, & allowed to purchase only hygiene items & denied to →

Pg. 16 / 8-13-24 Verified FAC - C/A #23-CV-3260-HLT

Section II. Subsection C. Statement of Actionable Facts:

(14) Continued from Pg. 15:

purchase any food items or coffee or other beverages, having a haircut maybe every 6 wks., & shaving only w/a beard trimmer when allowed a haircut, & having constant yelling to communicate w/others thru a closed solid steel door. And also denied use of personal TV's & radios, sweat pants, shorts, Art supplies, books/magazines/newspapers, hot pot, lamp, mirror, etc., & very limited access to a telephone about once per week. And Plaintiff suffered about 20 lbs. weight loss due to LCF conditions.

(15.) Additionally, prior to being transferred to LCF, defendant Bell was appointed as the HCF Classification Administrator & was the key primary staff person in control of who would be transferred & in conjunction w/defendants at HCF, were fully aware that Plaintiff could not be released to LCF gen. pop. status due a central monitor I'm in LCF gen. pop. prohibiting both being in gen. pop. at same prison, & their intents were to keep Plaintiff in seg. indefinitely & knowing he would be confined under extremely punitive conditions at LCF "supermax" w/out lawful cause & would suffer physical & psychological actionable injuries.

(16) On 3-22-22, after 10 mos. of extremely punitive conditions at LCF's "supermax" seg. confinement, & incessant malicious frauds & psychological abuses, Plaintiff was transferred to EDCF's Seg. Units vis-a-vis a "collaboration" between LCF defendants Meyer, Ball, Skidmore, Gist, Haehl, Wagner, Wildermuth, Hernandez, & HCF defendants Schnurr, Vieyra, Markus, Vanhoose, & EDCF defendants Williams, Bos, Shearburn, Deputy Warden Moore, Major Moore, O'Brien, Cannon, Randolph, Walnsley, Buchan, Lewis, Cole, & Barnard, & Central Ofc. defendants Zmuda, Hrabi, Holthaus, Chief-Counsel Cowger, & Waldock.

(17) At some point in 2022-2023, defendant Cowger was replaced by defendant Carter, & EDCF defendant Randolph was terminated for his corrupt coverup activities for staff wrongdoing, & EDCF defendant Walmsley quit because Matt Moore was promoted to deputy Warden instead of him & Lewis assigned Walmsley's position.

(18) Note between summer of 2020 up thru 2023, EDCF had 3 Wardens, 3 Majors, multiple deputy Wardens, Majors, Capts., & Lts. terminated because of (criminal) wrongdoings which had little to no effect on the entrenched culture of corrupt customs & practices perversely deemed "normal" at EDCF. And Laine Barnard replaced Joni Cole as EDCF Staff atty. & never once weighed-in on the unconstitutional abuses of authority routinely inflicted on Plaintiff & numerous other men unlawfully kept in segregation for years, including also assigned as "hold-over status" for release to gen. pop. & it is every KDOC atty.'s job to provide prison officials w/correct legal advice & to actively monitor & intervene in blatantly unlawful acts & conditions grieved /KAR 44-15-101 et seq. & Claims filed per KAR 44-16104 a & 105, or presented to the State & Federal Courts per KSA Ch. 60 &/or 42 USC §s 1983. See Exhibit #11, & take judicial notice of all prisoner litigated grievances, Claims, & State/Federal litigation constitutional issues filed since 1-1-20 relative to actionable prisoner abuses by arrogant prison officials & medical contract staff persons.

Pg. 17 / 8-13-24 Verified FAC - C/A #23-CV-3260-HLT

Section II. Subsection C. Statement of Actionable Facts:

19.) Plaintiff humbly declares that every KDOC defendant named herein, & all "somewhat reasonably intelligent & seasoned" (KDOC & medical/mental health contract persons staff, know exactly what the "hold-over status" cited (& routinely applied in reasonably swift fashion & the statistics to be procured via discovery should defendants dare deny the Plaintiff's factual truths) in IMPP 20-104, section I. B. at subsection 4.(a)(2), means.

And by any reasonable & rational interpretation, the very clearly unambiguous meaning that any prisoner held in segregation,

"shall not be held on holdover status for a period longer than reasonably necessary to accomplish the transfer to another facility". (emphasis added).

Let there be zero doubt in the presiding Judge's learned mind, that the discovery phase, to be had, will eviscerate & excoriate prison officials actionable evil intents & that instead of reasonably acting in a timely fashion — all while countless other prisoners held in "hold-over status" in the seg. units of HCF, LCF, & EDCF were routinely released to gen. pop. status at the holding facility or transferred to another prison's gen. pop. within 30 days of being placed on "hold-over status". And this Plaintiff dares to posit that when the racial statistics of non-whites vs. whites releases to gen. pop. or transferred are fairly produced & analyzed, this Court will readily take exceptions because non-whites such as this Plaintiff are hideously & criminally held in seg. "holdover status" in exponentially disproportionate numbers that can never be rationally defended.

And "we" only need examine these facts for the time frame of the 5 PLUS YRS. this Plaintiff was maliciously discriminated against / 3-15-19 to 4-24-24. Prison "transfer" records of HCF, LCF, EDCF for these time frames will righteously condemn these defendants & leave zero scintilla of doubt that he has:

(a) been massively retaliated by KDOC named defendants for exercising his 1st Amendment rights to seek/obtain redress from actionable wrongs, & that they acted conspiratorially & w/criminal intents & the elements of proofs necessary to prosecute them per 18 USC §§ 241, 242, 371 (or present to federal grand jury per 18 USC §§ 3332(a)) & KSA 21-5416 is offensively overwhelming.

(b) KDOC & both medical & mental health staff at HCF, LCF, EDCF, & respective KDOC Central Ofc. officials & Medical Providers' Regional Ofc. officials acted w/deliberate indifferences & utter incompetence in actionable collusion w/each other to his serious medical conditions & needs, & criminally erased medical record orders for use of "extended length "cuffs only" when need for handcuffs arises & denial of needed "treatments" for his serious medical conditions, all of which was in direct violation of his 8th & 14th Amendment rights under the U.S. Constitution.

Section II., Subsection C. Statement of Actionable Facts:

(19) Continued from Pg. 17:

(c) Defendants — & each of them — have acted unlawfully & w/a malicious intent, in arrogantly deliberate violation of applicable rules, regulations, policies of the KDOC, & uniquely applicable state & federal laws & court rulings. These colossal failures are in fact part & parcel of the entrenched culture of criminalities practiced by defendants & each of them, ON A DAILY BASIS thruout the KDOC, & for whatever training they were each provided & taught, they each consciously failed to understand what they were pro-vided & taught, & instead by virtue of their arrogant & pompous abuses of (misplaced) authority given them, by their direct actions & omissions, egregiously abdicated their legal, moral, & ethical duties they falsely swore oaths of allegiences to follow & uphold, & because of their raised perversities, subjected Plaintiff to over 5 yrs. of irreparable physical & psychological abuses imposed while fraudulently disguised under the "hold-over" flag & promises of release to gen. pop. &/or transfer to another prison facility (Larned med-custody facility, Elsworth or Winfield medium custody facilities).

And these specific malicious frauds & 5 yrs. plus of unlawful puni-tive segregation status & conditions undeniably violated Plaintiff's limited 4th Amendment rights in the prison context to be free from unlaw-ful seizure of his person & his legal/personal property (criminally destroyed by LCF defendant Holly Shaw & covered up by her LCF & HQ. defendants superiors -its epidemic), & unlawfully denied fundamentally legitimate due process & the equal protections of established law & the liberty interests entitlements uniquely created by prison rules, regulations, policies & state criminal statutes such as KSA 21-5416 & Levier/44 P.2d 265, syl-2 (Kan. S.Ct. 1972)

And in sum & substance, the checks & balances to compel strict enforce-ments of the rules of law (hereinafter elaborated upon) were consciously abandoned w/ criminal intents, & by virtue of these actionable facts & evidences at bar & to be further developed for precise clarity, constitute, separately & in combination, cruel & unusual punishment in violation of Plaintiff's 8th Amendment rights.

(20) The U.S. Constitution guarantees all citizens — including incarcerated citizens, protections applicable herein under the 1st, 4th, 8th & 14th Amendments.

(21) The defendant Gloria Geither was egregiously & nefariously "app-ointed" to replace defendant Hrabi as Deputy S.O.C., & she too con-sciously joined these named defendants & took a pivotal "leadership" position in maliciously targeting prisoners exercising their 1st Amendment legal rights to seek redress from state/federal government officials & courts w/ diabolical frenzy in maintaining the status quo of corrupt prison staff whose actionable wrongs faced zero accountabilities, & she was instrumental in the psycholical abuses injuries caused by lying to Plaintiff & unlawfully keeping him in punitive segregation for over 5 yrs. & she's got a proven history of arrogant criminality to this Plaintiff, Pat Lynn, & others, that must be fully & fairly addressed by the court, and gov. Kelly terminating her & criminally prosecuting her.

See also @ Exhibit # 11, 12

Pg. 19/ 8-13-24 Verified FAC - C/A #23-CV-3260-HLT
Section II. Subsection C. Statement of Actionable Facts:

(21) On 4-24-24 Plaintiff was finally removed from the preposterous "Hold-over - release to gen. pop. status" & released from EDCF segregation & placed in EDCF gen. pop. status, after having been maliciously subjected to over 5 yrs. of horribly traumatizing unconstitutional & criminal acts & omissions perversely perpetrated upon Plaintiff w/out any legitimate penological purpose.

(22) The actionable facts & evidence at bar herein, & to be developed via discovery, & presented to the triers of fact, aptly convinces beyond any iota of a scintilla of doubt, that these defendants could easily have released him back into gen. pop. status early on — such as on the expiration of his disciplinary sentence because if not for defendant Dyche's criminal conspiracy w/ the 2 imbecilic I/m's in opening his cell-door on 3-15-19 to steal his personal property. Defendant Dyche incurred zero consequences because of the corrupt culture of criminalities epidemic amongst KDOC staff everywhere cited herein & both the gov. & legislature loathe to hold corrupt KDOC "leadership" accountable.

(23) That the KDOC "EAI" defendants named herein are not impartial & it is S.O.P. to ignore actionable criminal & unconstitutional abuses, that sometimes include life threatening injuries or consequences, & life-long physical & psychological irreparable injuries, which prisoners & our outside advocates vigorously bring to their attentions, which aptly demonstrates systemic corrupt complicities.

(24) It is incumbent upon the presiding Judge to recognize the ugly & manifest injustices at bar & that such actionable constitutional acts & omissions cited & logically inferred, are entrenched & not isolated to only Plaintiff's horrible victimization w/out legit basis.

(25) It is incumbent on the Court to precisely clarify Plaintiff's constitutional rights in the acts & omissions raised herein & otherwise logically inferred in a sweeping declaratory judgment that also declares the defendants' duties & responsibilities to the actionable facts & evidences at bar, & that sets forth a strict boundary time limit for how long does a "hold-over status" period become "unreasonable" & set an unambiguous mandatory release/transfer time limit. A 21 days time limit is "reasonable" & if prison officials can't release a "hold-over" prisoner or transfer the prisoner w/in 30 days, serious repurcussions must be had — like making a citizen's arrest & effecuation of same w/ assistance from county sheriff per KSA 22-2403 (1) & (2) for criminal mistreatment of a confined person. See Exhibit 15
   And should any defendant's defense counsel attempt to "defend" these defendants indefensible actionable acts/omissions at bar, they fairly deserve the Court's wrath & vigorous minimum referral to the KS disciplinary administrator for atty. malpractice (see MRPC Rule 240/at Rules 8.4 (a)-(d), (f) & (g)).

(26) That it is incumbent on the Court to recognize that defendants' propensities to repeat their inherent retaliation proclivities are very much likely to repeat in one form or another, & he genuinely

Pg. 20 / 8-13-24 Verified FAC - 9/A #23-CV-3260-HLT

Section II, Subsection C, Statement of Actionable Facts :

(#26) Continued from Pg. 19 :

fears being victimized again by defendants, & these truths en-
title him to prayerfully request & recieve an all encompassing TRO
& Permanent Injunction protecting his interests & well-being from
such more likely than not retaliations proclivities. See also separate
motions for Declaratory Judgement, & a TRO / Permanent Injunction.

(27) Plaintiff alleges & adamantly believes the Court has the legal duty
to issue injunctive relief in this case / Compelling the defendant gov.
Kelly to forthwith appt. Special independant counsel (former KS U.S. Atty.
Barry Grissom would be ideally suitable) per KSA 75-116 to investigate/prosecute
defendants' actionable criminal acts & omissions spotlighted herein, because
under these concrete actionable facts & evidences, the abominable inactions
of the state's CEO of all state govt. agencies & the KDOC specifically, she
has infuriatingly abused the discretion entrusted to her. Allowing the
SOC & this Deputy SOC to run amok & deliberately refusing to comply w/
the statutory legal duties set out in KSA 75-5251 is akin to our USA govt's
utter stupidity in allowing shocking numbers of persons on the "Terror
Watch List" to enter our country ...

        Just maybe, hauling the governor defendant into Court w/ Knudtson to
answer why they are allowing corrupt prison officials to create "homegrown
terrorists" within the KDOC because of the rampant criminal "customs & prac-
tices" culture run amok, will put the general public's spotlight on her malfeas-
ances that is a no-brainer recipe for future disasters & its an urgent
public safety issue that no rational & reasonably intelligent person should
dare ignore.

Section III. Causes of Action Legal Claims

As a threshold qualifier, Plaintiff vigorously realleges & incorporates by reference, his preceding statements of Actionable Facts recited under oath & preliminarily exposed & contained in Section II Subsections A-C, at pages 2 & 10-21 above, & reminds these are triable issues for a jury or judge to determine at the trial stage:

Count I. :

(a) Plaintiff alleges that by virtue of defendant Dyche's unlawful acts & omissions at HCF in B-2 Cellhouse on the morning of 3-15-19 in knowingly opening his celldoor while he was away at breakfast to allow 2 prisoners to enter his cell & steal his electronics & other personal property, violated his 4th Amendment rights under the U.S. Constitution in the limited context of a prison environment, & violated his 8th Amendment rights under the U.S. Constitution by virtue of such knowing unlawful acts & what events took place because her deliberate acts & omissions, & her knowing acts deliberately violated his 14th Amendment rights of the U.S. Constitution to due process & the equal protections of the law;

and furtherstill, defendant Dyche's knowing acts & omissions including her conspiracy w/ the two prisoners, against Plaintiff being victimized, violated federal criminal laws (18 USC §§ 241, 242, 371, & 1512......) & these actions deserve presentation to the KS Federal grand jury per 18 USC §§ 3332(a);

and additionally, defendant Dyche's knowing acts & omissions, including her conspiracy w/ the 2 prisoners, against Plaintiff being victimized, violated Kansas' code of criminal laws (KSA 21-5202, 21-5210, 21-5416, 21-5801, 21-5813, 21-5905, 21-5909, 21-5919, 21-6102, & KSA 21-5105 is bedrock for victims of criminal acts, that "civil remedies are preserved"; & defendant Dyche's knowing acts & omissions violated KDOC IMPP's & HCF general Orders (& if not fully cited or attached in the actionable facts/Section II C. exhibits, will be provided after effective use of discovery). And respectfully reminds supplemental jurisdictions are invoked & her acts & omissions constitute the tort of criminal mistreatment per KSA 21-5416/5105...

(b) Supporting (Verified) Facts to Count I:

Plaintiff umbly reiterates as fully set forth & repeated here, his sworn facts stated at Section II, Subsection C. #1-#4/Pg.10-12, & exhibits cited in support.

That defendant Dyche knew the 2 prisoners asking her to open Plaintiff's cell did not reside in the cell & she knew who Plaintiff was & the cell being opened was Plaintiff's cell, & she knew from her training, rules & regs. that cellhouse staff were forbidden to open inmates' cells not residing in the cell being asked opened due to rampant thefts & extreme violence occurring this way. Defendant Dyches also signed a "Code of Ethics" Contract as a condition of employment, per IMPP 02-118 (Attachment A thereto), See Exhibit # 13. And she was deliberately derelict in her duties & responsibilities under Facility Post Orders/IMPP 12-102 & Staff Conduct Rules; & she was fully aware that the two prisoners who directed her to open Plaintiff's cell were in fact gang members of security threat groups (IMPP 12-105 D) & she had "Security Awareness training (IMPP 5-116D). Defendant Dyches apologized to Plaintiff after his discovery of cell property theft due to her complicity, & he needs to →

Pg. 22/8-13-24 Verified FAC -- C/A #23-CV-3260-HLT
Section III. Causes of Action Legal Claims:

Count I. (b) Supporting Facts Continued:

effectively utilize discovery rules to further develop & fully present his actionable claims & injuries to these subject matter constitutional violations, & will likely thereafter pursue a second Amended Complaint in the interests of justice. And if not for defendant Dyches actionable derelictions & complicities at bar, this suit & the proper losses, constitutional & criminal violations & over 5 yrs. of atrocities & irreparable injuries would not have occurred.

Count II:

(a) Plaintiff properly alleges that defendant Dykes superiors directly involved in not only properly investigating the causes of the "serious Incident Reports & Bd. Reviews" of the B-2 c/A thefts of Plaintiff's property & unlawful opening of his cell & the altercation therefrom (IMPP 12-118D), but also directly involved in the processing of his lost property claim (IMPP 01-118), being defendants Benford, Hackney, Nichols, Stiggins, Vanhoose, J. Doe #1, Marcus, Vieyra, Williams, & Schnurr at the HCF Institutional level, & at KDOC Central Ofc. directly involved, being Deputy S.O.C. Hrabi, S.O.C. Zmuda, EAI Director Woods, Deputy EAI Director Cannon, & the "designee" for Hrabi & Zmuda /defendant Holthaus, all — separately & collective combinations with each other, in covering up & "immunizing" defendant Dyche's unlawful, actionable acts & omissions against Plaintiff's legal rights & interest & corruptly sanctioning her egregious derelictions of duty & obligations to protect Plaintiff & his property from unlawful assault & thefts, likewise constitutes their complicities in violating Plaintiff's 4th Amendment rights under the U.S. Constitution in the limited context of a prison environment, & likewise constitutes their individual & joint complicities in violating Plaintiff's 8th Amendment rights, & by virtue of their individual & joint conspiratorial acts & omissions in covering up defendant Dyche's actionable derelictions of duties & denying me the compensation due to me for my stolen property set in motion by defendant Dyche, compounded the victimizations & injuries suffered & denied Plaintiff's rights to due process & the equal protections of the laws & remedies giving me liberty & property interests entitlements. Plaintiff needs to effectively utilize discovery rules to further develop & fully present his actionable claims & injuries to these subject matter constitutional violations, & will likely thereafter pursue a second Amended Complaint (SAC) in the interests of justice. Discovery Production of prison defendants memos & emails will provide their incriminating confirmations.

(b) Supporting (Verified) Facts to Count II:

Plaintiff humbly reiterates as if fully set forth & repeated here, his supporting (verified) facts recited at Section II. subsection C. #1 - #4 /Pg. 10-12, & his Count I Claim & Supporting Facts. And asserts that these defendants' acts & omissions constitute the torts of criminal mistreatments by them individually & jointly, per KSA 21-5416 & 21-5105...

Count III:

(a) Plaintiff asserts that the acts & omissions of the defendants Schnurr, Williams, Vieyra, Nichols, Bell, Vanhoose, Stiggins, Graff, & Lundry, & J. Doe #1 to provide for & accommodate the daily showers recommended by HCF medical staff for his serious medical condition, & maliciously & sadistically rescinding medical staff's daily showers to relieve his painful medical condition symptoms accommodations arranged w/defendant Benford, constituted deliberate indifference to his serious medical condition needs in violation of his 8th Amendment rights to the U.S. Constitution, & maliciously violated his 14th Amend-

Pg. 23/B-13-24 Verified FAC -- 5/A23-CV-3260- HLT

Section III. Causes of Action Legal Claims

Count III (a) Continued:

ment rights to due process & equal protection of the law of the U.S. Constitution, & separately & collectively constituted the tort of criminal mistreatment per KSA 21-5416/5105...

(b) Supporting (verified) Facts to Count III:

Plaintiff humbly reiterates & repeats as if fully recited here, his sworn facts stated at Section II Subsection C. #6, at pg. 18. Plaintiff further alleges there is ample logical reasons to believe that defendants emails between each other & others will produce windfalls of incriminating evidence to his facts & claims.

Count IV:

(a) The repeated failures of the defendants Williams, Schnurr, Vieyra, Vanhoose, at HCF, & their superiors at the Central Ofc. being Zmuda, Hrabik & his replacement Geither, Woods, & Cannon to take disciplinary actions against staff misconducts, & to enact simple measures to protect prisoners & their property from I/m on I/m assaults w/weapons (combination locks put into a sock is the favored weapon & sold on the prison canteen & the numbers of such assaults in the past 10 yrs. is uber staggering & the dining hall is the gladiator arena & no metal detectors in place - a no brainer safety measure) & cell property thefts by post officers apathy &/or corrupt complicity being rampant (all of which is relevant & admissible evidence & must be procured via discovery rules) required these defendants, separately & collectively, to take stern measures to curb the known patterns of rampant dangerous events & their corrupt apathy, individually & collectively constituted deliberate indifference to Plaintiff's, other prisoners, & staff persons safety (staff routinely assaulted too & these numbers over the past 10 yrs. are equally staggering & their assailants are subjected to new outside prosecutions while prisoners are not for I/m on I/m attacks as evidenced by the DIR's records, grievances, injury & property claims records, & HCF criminal cases referrals to local D.A. ofc.) & their acts & omissions created a palpable hostile atmosphere, & directly contributed to & caused these 8th Amendment violations & conditions. These failures also constitute violations of 18 USC § § 241, 242, 371, & violations of KSA 21-5416/criminal mistreatment tort claims per KSA 21-5105.

(b) Supporting (verified) Facts to Count IV:

Plaintiff humbly reiterates & repeats as if fully set forth here, his sworn facts stated above at sections II. A.-C. pages 10-20, & validated by the exhibits referenced thereto, & to be more fully supported & substantiated by the records at HCF & Central Ofc., & local D. Ct. Clerk & D.A.'s records re HCF prosecutions. Here again, defendants emails between each other & others will provide a windfall of validating proofs to his facts & claims at bar.

Count V:

(a) the acts, omissions, words & insinuations expressed to intimidate & retaliate against Plaintiff for his having complained verbally & in writing (via Form 9's, grievances, Injury Claims & via the Court in →

23 of 89

Pg. 24 /8-13-24 Verified FAC -- C/A #23-CV-3260-HLT

Section III. Causes of Action Legal Claims:

Count V (a) Continued:

C/A #20-CV-3163-JWB/ADM (see Ex's # 3-8, incited HCF defendants' hostilities & abuses of authority against Plaintiff, by defendants Bell, Stiggins, Vanhoose, Graff, Markus, McConaghy, Benford, Pettijohn, Dawes, Williams, & Schnurr, which violated his 1st, 8th, & 1A Amendment rights to petition for redress from their actionable wrongs & not be subjected to retaliations by rescinding medical directives to accommodate his serious medical needs, & being moved to a solid door cell notoriously known to have near zero air circulation/ventilation & was stifling hot by 10-20 degrees higher during hot weather months & egregiously exacerbated his dreadful eczema medical issues, & these events coincided with their constant lying that Plaintiff was being transferred to another prison's general population.

(b) Supporting (verified) Facts to Count V:

As a threshold matter, Plaintiff was always the victim thru-out each & every sequence of events contained in this suit, & all parties/their attys & the Court/factfinders must never lose sight of this glaring truth & all events at bar trace back to this pivotal truth: if not for defendant Dyche's egregious unlawful acts & omissions against Plaintiff w/the 2 inmate imbeciles, none of these other "thereafter actionable wrongs & injuries at bar" would have occurred, & the 2 inmate imbeciles who were conspiratorially allowed to enter Plaintiff's cell w/defendant Dyche's complicity, were transferred to EDCF gen. pop. status around 30 days later — & both thereafter got of prison & both incurred new criminal cases & returned to prison. Versus Plaintiff whose only D/R in the past 5 yrs. plus was having an infuriatingly too brief come to Jesus' prayer-meeting w/the 2 imbeciles & was insidiously targeted for excessive unconstitutional & criminal acts, omissions, & actionable injuries.

The Court & opposing counsels acutely know that the facts & evidence at hand & to be developed via discovery (& a Martinez Report), are rock-solid sufficient to support a jury (or trial by Judge — & that's making a very real leap of faith that Teeter will fairly level the field of battle & not tolerate any rote nonsense perjurous denials from defendants or their attys.) that defendants' conduct at bar, & each played an active & directly involved role in ignoring, defiling, or furthering the "willful & wanton disregard for Plaintiff's constitutional & statutory legal rights & personal safety & the disparities in treatment was exponentially adverse & "tinged w/racist motivations" by the "powers that be."

It is well-established in the KDOC, & nobody can rationally/legitimately deny, that the defendants in this suit dont give a ⓧ#$ about prisoner complaints, grievances, property/injury claims, medical entitlements, or lawsuits (knowing that infamous "enabler" Judges →

Pg. 25 / 8-13-25 Verified FAC -- c/A # 23-CV-3260-HLT

Section III. Legal Causes Of Action Legal Claims:

Count V (6) Supporting (Verified) Facts to Count V Continued:

in State (Federal Courts) & that "retaliation" is in fact "S.O.P." & absolutely more so if one is a "frequent-filer" like Plaintiff who will vigorously fight all comers for his legal rights & against actionable wrongs no matter which side of the fence the wrongdoer treads on. On multiple occasions at bar & attached herewith as evidentiary exhibits, Plaintiff's serious medical needs were mocked by those named (this is an entrenched "tradition" openly practiced by prison officials Statewide, see for example Exhibit # 11, 12 & the Court would honor her oaths by asking why those corrupt numbskulls weren't criminally prosecuted & apply the same "std." Q & A. to the criminal/unconstitutional acts & omissions at bar in this suit & likely numerous other pending suits in this Court) as defendants in the causes of action herein, & included perversely sarcastic comments as:

- "I've been sued a bunch of times & I'm still here undefeated";
- "Sue me too";
- "you'll never get a Judge to do anything to us"
- "we run things around here & we don't put up w/any motherfuckers suing us".
- "Haven't you yet learned that suing us is a dead-end?"
- "Suing my people has consequences asshole".

The facts & evidences at bar shows direct & close temporal/plausible acts & omissions that infer &/or logically confirm that the pompous abusers of authority (Bell, Vanhoose, etal) in fact punished Plaintiff for his protected 1st Amendment activities to "complain & obtain redress by erasing his serious medical condition records directives for extended handcuff chain length restraints (Defendant has a large body physique) & vindictively rescinding his (inconsequential "chore" upon staff to accommodate) daily medically required shower to somewhat relieve his dire escalating medical symptoms & suffering, & these named defendants in fact vindictively moved Plaintiff from A-3 c/H to A-2 c/H closed door cell as prompt retaliatory punishment for complaining/filing his grievances (Exhibit # 6   ). Defendants or anyone ludicrously denying these "tit-for-tat" acts & omissions are not directly intertwined as this Plaintiff says it is, is out of touch w/reality or corruptly obfuscating the truth. These are "jury issues" to discern.

And there was zero penological purpose to continue Plaintiff in segregation at HCF & continuously lying to him — even though their diabolical acts/omissions "unmasks" their true degenerate character traits — that he was being released back to gen. pop. at another prison, & must be exploited that the 2 imbecilic inmates in collusion w/defendant, were transferred to EDCF gen. pop. status about →

Pg. 26/8-13-24  Verified FAC -- C/A 23-CV-3260-HLT

Section III. Legal Causes of Action Legal Claims :

Count V (b) Supporting (Verified) Facts to Count V continued :

one month after the 3-15-19 conspiratorial fiasco & this is glaring facts/evidence to Plaintiff's claims of targeted retaliation & zero valid reason existed why he couldn't reside in gen. pop. status at HCF (or LCF, Larned, etc. w/in the same time frame of transferring the 2 imbeciles to EDCF gen. pop. — another "jury issue" to determine). Plaintiff confidently alleges & believes defendants emails between each other & other prison officials & outside officials will provide ample confirmations to his facts & claims.

Count VI :

(a) Plaintiff's Transfer from HCF to LCF on 6-2-21 was conspira-torily arranged between a combination of defendants at HCF & EDCF (EDCF was allegedly vehemently opposed to Plaintiff's return & extreme pressure was "organized" w/ central Ofc. defendants) & LCF defendants to place Plaintiff in the extremely punitive long-term designated "supermax" segregation         see section II C. # 8, 9    at Pg. 14 & Exhibits # 9, 10) in furtherance of HCF's defendants' criminally & unconstitutionally orches-trated retaliations discriminatorily targeted against him for his 1st Amend-ment activities via Form 9's, Sick call Requests, Memos & Letters, grievances Property & Injury Claims, & fed. Ct. lawsuit litigation, & these maliciously vindictive    unlawful acts & omissions violated Plaintiff's 1st, 4th, 8th & 14th Amendments to the U.S. Constitution, & constituted malicious & wanton violations of state & federal criminal laws (KSA 21-5416 & 18 USC §§ 241, 242, 371).

(b) Supporting (Verified) Facts to Count VI :

Plaintiff's confinement in segregation at HCF after having served his disciplinary sentence was plaintiff unjustified & prison officials/de-fendants "reasons" were meritless & vindictively concocted to satisfy their perverse personal penchants to break him psychologically & to ad-versely affect his physical health. There was zero valid reasons" to transfer him anywhere & he could have been returned to gen. pop. at HCF & should have been, if not for the defendants corrupt proclivities to rabidly abuse their authority & they enlisted their corrupt allies to magnify irrational retaliatory OCD's, as glaringly declared by LCF defen-dants after his arrival & placement w/ the "worst of the worst" I/m's in the KDOC's segregation units designated for ultra punitive "super-max" confinement at HCF. There is a seriously large faction w/in the KDOC who corruptly deem it to be their life's purpose to criminally punish certain prisoners who challenge their irrational & perverse abuses of authority w/in the KDOC processes allowed & in the courts, & he was explicitly told via LCF defendants Wildemuth, Hernandez, Ball Skidmore, Gift, Meyer, & now identified Wagner, that HCF defendants hierarchy & central Ofc. originally tried repeatedly to return him back to EDCF & created a firestorm of objections & because of the newly →

Pg. 27/8-13-24 Verified FAC--C/A#23-CV-3260-HLT
Section III. Legal Causes Of Action Legal Claims
Count VI (b) Supporting (Verified Facts Continued:

created "long-term 'Super-Max' unit at LCF w/ the most severe & un-
lawful conditions deliberately designed by repulsively deviant
& unprofessional minds, "those minds" chose to transfer Plaintiff
there in malicious & pompous contempt, & contradiction of the HCF
& other defendants repeated verbal & written declarations that he
was on "hold-over status for release to gen. pop. at another prison".
    These ugly & infuriating truths must be imbedded
    in the fact-finder's mind(s): that nothing defendants,
    & each of them individually or collectively, say in defense
    of their insidiously unconstitutional acts & omissions
    can be believed, & that their arrogant lies & abuses of
    authority against him for over 5 yrs, glaringly violates
    state & federal criminal laws, & Plaintiff was "victimized"
    exponentially & unconscionably.
Plaintiff is confident that the email trail of defendants' actionable
conspiratorial wrongs over the 5 years plus of atrocities inflicted on
on him w/ arrogant impunity, will be precedent setting for at least
the Kansas Courts to "wake up to". Every aspect of Plaintiff's confine-
ment at LCF aided & abetted the corrupt conspiratorial retaliation for his
1st Amendment activities vendetta instigated between HCF & Central Ofc.
defendants. Plaintiff's conditions of confinement at LCF "Supermax"
epitomized "atypical & significant hardships" in violation of his 4th,
8th & 14th Amendment rights & every "segregation review" at LCF
was also a corrupt sham & the LCF defendants-individually &
jointly w/ other defendants, continued the lies of releasing him from
hold-over status to gen. pop. status, & he could easily have been released
to gen. pop. status at LCF too.

Count VII
(a) Upon arrival to LCF, all of Plaintiff's legal & personal property was
corruptly ransacked & decimated w/ criminal intents by defendant
Shaw. She has been the primary property Rm. officer at LCF w/ at least
2 decades of criminal & unconstitutional abuses rabidly committed to
prisoners property w/ unconscionable impunity; & the complaints against
her expose her as the #1 most despised employee in the KDOC & the LCF
records of complaints to her perversities will fill a large U-haul truck.
    Plaintiff's irreplaceable criminal case documents he had assembled over
multiple years for a multi-prong wrongful conviction challenge & other legal
materials were maliciously destroyed. Defendant Shaw (& her superior de-
fendants who've insidiously refused to ever hold her accountable & are
in fact complicit) intended by her decimations & destructions of his legal
materials, to obstruct/impede/hinder/& deprive Plaintiff of his court
access rights to pursue exoneration from his wrongful convictions, & to
continue prosecuting his civil rights claims in the Courts.
    Defendant Shaw's actions maliciously violated Plaintiff's 1st, 4th, 8th &
14th Amendment rights & plainly constitute violations of state & federal
criminal laws (KSA 21-5416, 21-5905, 21-5813; & 18 USC§§ 241, 2A2, 371, 1512).
                        27 of 39

Pg. 28/ 8-13-24 Verified FAC -- 9/A #23-CV-3260-HLT

<u>Section III . Legal Causes of Action Legal Claims</u>

<u>Count VII</u> (b) Supporting (Verified) Facts to Count VII :

In light of the infuriating facts that defendant Shaw has been routinely decimating, confiscating unlawfully & criminally destroying prisoners (crucial) Legal & personal property, for <u>decades</u> w/ arrogant impunity, & both the LCF & Central Ofc. hierarchy (defendants & each of them individually & collectively) corrupt apathy to these devastating destructions & unlawful refusals to hold her accountable, demonstrates an established "custom & practice" of criminalities & unconstitutionalities, that defendants perversely deem normal.

Plaintiff's abilities to meaningfully seek Court redresses for actionable wrongs was as intended by Shaw & her codefendants, obliterated, & his distress psychologically traumatizing.

Plaintiff's grievance & Property/ Injury Claims were timely submitted & corruptly ignored by LCF & Central Ofc. defendants, thus denying him his 1st Amendment rights to seek redress, & to the equal protection & due process of law, & by any rational measure constitutes "atypical & signifi-cant hardships in violation of his 8th Amendment right, & demonstrates a malicious & wanton practice & custom of criminalities.

<u>Count VIII.</u>

(a) Plaintiff's transfer to EDCF Segregation on 3-22-22 was in dia-bolical furtherence of the criminal retaliation conspiracy instigated by the LCF defendants & participated in w/ malicious complicities from LCF Central Ofc. & EDCF defendants, to violate Plaintiff's 1st, 4th, 8th, & 14th Amendment rights & by virtue of such deliberate indifferences to his constitutional rights, constituted atypical & significant hardships & criminal acts & omissions in violation of State & federal criminal laws, as recited above & reiterated here.

(b) Supporting (verified) Facts to Count VIII :

Every seg. review was a predetermined fraud & psychological abuse of the worst sort. Plaintiff's complaints & Claims were exercises in futility & he reiterates the above actionable injuries in sections II & III.

Each of the named EDCF defendants were knowing & directly in-volved participants in the actionable wrongs at bar, & around Sept. 2023 the defendant Geither replaced Hrabi' & she too maliciously ignored Plaintiff's repeated written pleas for intervention & she was actively involved in the criminal / unconstitutional abuses suffered w/out any rational justification.

<u>Count IX</u>

(a) The so-called "Behaviorial Health Professionals" who worked for Centurion after Corizon was terminated as medical contract Providers (nothing changed / Centurion simply rehired the same inept & cowardly complicit mental health dept staff) at HCF, LCF, & EDCF →

28 of 39

Pg. 29/8-13-24 Verified FAC -- C/A #23 CV-3260 HLT

Section III, Legal Causes of Action Legal Claims

Count IX (a) Continued:

   segregations units were fully aware of how KDOC Defendants at these named prisons & Central Ofc. were unconstitutionally & criminally abusing their (misplaced) authority w/insidious arrogance & directly creating victims by their malicious discriminatory "targeting", like Plaintiff, to suffer irreparable & actionable psychological distresses that dramatically & permanently affects a man's physical health which is well-established under the umbrella of "atypical & significant hardships, & the duration of over 5 yrs. under the "holdover" flag is a no-brainer & their apathy & failures to intervene by all available means necessary reveals these mental health counselors cowardice & actionable complicities, & has directly contributed to Plaintiff's 8th Amendment violations for over 5 yrs., & makes them equally equally complicit & culpable for their individual & combined violations of both state & federal criminal laws (KSA 21-5416; 18 USC §§ 241, 242, 371).

(b) Supporting (Verified) Facts to Count IX:

   The named medical & mental health services contractors, Centurion & Corizon both had & have a custom & practice of unlawfully failing to report prison officials unconstitutional & criminal mistreatments as in this case, & it was their legal, moral, & ethical duty to not only report prison officials actionable abuses of authority to all echelons of the prison hierarchy who had the authority to act & impose accountabilities, & if such persons refuse to act & cease such wrongful abuses, to report such unlawful acts & omissions to local LEO's, state LEO's, &/or federal LEO's, & U.S. Atty.'s Ofc. Ofc., & the governors Ofc. & state/federal legislators. Failing to act constitutes deliberate indifference to the actionable constitutional wrongs & injuries inflicted, which in this case went unchecked for over 5 yrs., & these outrageous malfeasances constitute convincing evidence of corporate complicities in an entrenched custom or policy of refusing to act. And its employees who consciously refused to report such horrific psychological abuses of constitutional dimension causing physical suffering & injury, constitutes medical & psychological malpractice. It is res ipsa loquitor. And these insidious actionable wrongs are still being practiced & men are in fact egregiously deteriorating psychologically & physically from years & years of rote lying from these same defendants & their cohorts & subjected to sham monthly reviews (numerous prisoners in KDOC seg. units have been confined under punitive conditions for over a decade w/zero remedy for redress & subjected to breaches of contract by the diabolically corrupt "Legal Svcs. for Prisoners, Inc." who refuse to help such prisoners file habeas & injunctive relief petitions & is legal malpractice...

29 of 39

Pg. 30 / 8-13-24 Verified FAC -- C/A# 23-CV-3260-HLT

Section III. Legal Causes of Action Legal Claims:

Count X :

(a) The acts & omissions of the defendants Gov. Kelly & her Director of Constituency Services Dawn Knudtson, & Rep. Stephen Owens [the repulsively corrupt & astoundingly incompetent Chairman of the Kansas State Legislature's "Corrections Oversight Committee" (& its patently inept & likewise deliberately indifferent members)] in tragically refusing to investigate & act on Plaintiff's & numerous other prisoners' & their outside advocates' repeated protests (via email, telephone, & written letters via U.S. Mail Postal svc.) about prison officials & these specific defendants, persistent unconstitutional abuses & conditions w/ criminal intents, & causing irreparable serious injuries (& death) as reflected by Plaintiff's sworn oath claims herein, has violated Plaintiff's 1st 4th 8th & 14th Amendment rights under the U.S. Constitution, & makes them complicit in these atrocious actionable wrongs.

And it is their legal, moral, & ethical duty to investigate & act personally, & to order their subordinate state officials to investigate & send them detailed reports & impose interventions & serious accountabilities to include wholesale "house cleaning terminations" & where justified, appointing Special Counsel per KSA 75-116 to independently investigate & prosecute all criminal wrongdoings arrogantly imposed upon defenseless prisoners.

(b) Supporting (Verified) Facts to Count X :

This Plaintiff & his outside advocates (as well as numerous other prisoners & their outside advocates) just in the past 6 yrs. since Laura Kelly became Gov. of our beloved State of Kansas, reached out to her by letters to her State Capitol Bldg. ofc., & separately by letters directly to her so-called "Director of Constituency Services/Dawn Knudtson, & via phone calls to Knudtson & our outside advocates spoke directly to Knudtson, to protest: ① the rabidly perverse & arrogant unconstitutional medical treatment interferences by Security Staff at HCF to his serious medical conditions needs, & ② the apparent criminal deletion of his medical record orders in place for decades specifying the (common sense) directive for "extended length handcuff restraints or belly-chains only" whenever restraints were to be used, & HCF security knew this & because of their deliberate perversities to cause pain & serious injury to Plaintiff conspired w/ Laundry & other corrupt HCF medical staff to unlawfully delete his medical records. (Judicial notice given & it is imperative to the interests of justice that this Court reads the Complaint & pleadings in KS D. Ct. wrongful death of HCF prisoner... Walker v. Corizon, et al. & other civil rights suits originating from HCF's legendary criminal (unconst. "customs & practices); & ③ to protest at least every 6 mos. over a 5 yrs. plus time period, the egregious psychological abuses & affects to his physical health maliciously inflicted & experienced by near daily lies for over 5 yrs. that he was on the "hold-over" status list for release back to gen. pop. or transfer to another →

30 of 91

Pg. 31 /8-13-24 Verified FAC -- C/A #23-CV-3260-HLT

Section III. Legal Causes of Action Legal Claims:

Count X. Supporting (verified) Facts continued:

another prison's general population & instead intentionally & conspiratorily victimizing Plaintiff w/ actionable cruelities too numerous to recite here, which "glimpsed w/a measure of specificity in his" Statements of Actionable Facts/Section II above & preceding Counts above, constitute "atypical & significant hardships," requiring immediate intervention, & both meets & exceeds violations of his 1st, 4th, 8th & 14th Amendment rights & plainly discernible to any reasonable layperson.

Plaintiff repeatedly pleaded to these 3 defendants for an in-person audience to more fully explain these atrocities imposed upon him, to no avail & not once in over 5 yrs. did these 3 defendants respond to Plaintiff or delegate any subordinate to investigate & take actions which the facts & evidences demand under & according to the well-established rules of law & genuine interests of justice, & my outside advocates were always given the well-practiced "runaround nonsenses" just like exists at every KDOC facility & Central Ofc. & their voice mail used as a "firewall" to avoid talking to constituents.

Furtherstill, not once did this monsterously inept "Corrections Oversight Committee" membership, ever "tour" the KDOC Seg. Units at HCF, LCF, EDCF while Plaintiff was confined in such, revealed above, & their Chrmn. has never once responded in writing to Plaintiff, his outside advocates, nor ever taken a prepaid phone call from a prisoner or a prisoner's outside advocates.

These defendants corrupt apathy to their legal duties & obligations as key state officials w/the vast authority to remedy the actionable-horrors practiced by repulsively corrupt prison officials hideously abusing their authority w/ criminal & unconstitutional acts & omissions directly & via subordinates, w/impunity, against Plaintiff over the past 5 yrs. subject-matters at bar (& is despotically ongoing) makes them each liable to money damages in their individual capacities, & to both declaratory judgments, TRO's & Preliminary & Permanent Injunctive Relief w/costs & atty. fees in their official capacities.

Plaintiff humbly calls the Court's rapt attention to the facts that he called these 3 defendants attentions to the KS. Supreme Court's ruling in Jamerson, 304 Kan. 678 (2016) & how it applied to Plaintiff's circumstances, along w/multiple other "stare decis" doctrine cases uniquely applicable & on point.

Plaintiff suffers PTSD because of defendants acts & omissions, & fears w/good reason that defendants & their proxies will yet again find ways to retaliate for this litigation & thus we have the "continuing constitutional torts" doctrine at hand & justifiable need for a sweeping protective order Zoom or in-person hearing to develop the facts & parameters of what such relief should entail. Accord McClary v. Kelly, 4 F.Supp. 2d 195 (1998) & Wilkinson v. Austin, 545 U.S. 209 (2005),

31 of 39

<u>Pg. 32 /B-13 - 24 Verified FAC.- C/A #23-CV-3260-HLT</u>
<u>Section III. Legal Causes of Action Legal Claims:</u>

<u>(b) Supporting (Verified) Facts to Count IX. Continued:</u>

Plaintiff further asserts in good faith, that by virtue of these 3 defendants failures to act in any regard whatsoever to their legal duties as state officials w/ vast authority to remedy the actionable wrongs & irreparable injuries suffered because of the KDOC & Contract Medical Contract providers actionable wrongs & injuries inflicted on Plaintiff, makes each of these 3 defendants, individually & jointly, aiders & abetters to the actionable facts & claims herein, & complicitly liable for the state tort claims arising from the criminal mistreatments maliciously inflicted for over 5 yrs. as provided by the supplemental jurisdiction statutes invoked herein, & per KSA 21-5105/Civil Remedies Preserved (for victims of criminal acts); KSA 21-5202/culpable mental state & defining "intentionally, knowingly & recklessly", KSA 21-5210/Liabilities for Crimes By Another (Subordinate) KSA 21-5416/Criminal Mistreatment of a Confined Person; Theft/KSA 21-5801 (LCF defendant Holly Shaw); KSA 21-5813/Criminal Damage to Property; KSA 21-5905/Interference w/the Judicial Processes; KSA 21-5909/Agg. Intimidation of a Victim/Witness (Plaintiff); KSA 21-5919/Performances of Unauthorized Official Acts; KSA 21-5931/Destruction or Concealment of Medical Records; KSA 21-6002/Official Misconduct; KSA 21-6102/Denial of Civil Rights.  See also Exhibit # 11, 12, 14

Plaintiff has no other plain, adequate, or complete remedy at law to redress the wrongs described in sections II & III. Plaintiff has been & will continue to be irreparably injured from & by the egregiously unlawful acts & omissions of the defendants & each of them individually & jointly & unless this Court grants the narrowly tailored declaratory & injunctive relief which he seeks & is overwhelmingly entitled to as a matter of law & in the interests of justice, these defendants & their proxies & replacements are more likely than not, to subject him to additional insidiously unlawful & perversely unjustified retaliations which they preposterously & perjuriously defend & ludicrously deem "normal".
Plaintiff's PTSD psychological abuses distress injuries are far worse than experienced & on display in <u>Adam Young v. Mayer</u>, 2023 U.S. Dist. Lexis 218694

Section VII

Count XI

(a) The acts & omissions of the defendants Schnurr, Vieyra, Bell, Vanhoose, Williams, McConaghy, Marcus, Zmuda, Htabi, Geither, Geither, Waldock, Holthaus, Woods, Cannon, Meyer, Wildermuth, Hernandez, Wagner, Ball, Skidmore, Gift, Haehl, Lundry, J. Doe's #1 - #6, Shaw, Nichols, Stiggins, Graff, Stansbury, Keolavone, Bos, Matt Moore, Leonard Moore, O'Brien, McKeen, Reed, Austin, Randolph, Perkins, Walmsley, Buchanan, Shearburn, Lewis, Reeves, Snell, Madgwick, Mefford, Delano, Cole, Barnard, Cowger, Carter, & Jenson, in the unlaw-fully prolonged "atypical & significant hardships duration of over 5 yrs." & incessant malicious lies that were told to him on a near daily basis & which included Counts I thru X above, are alleged & believed to have been motivated by racial animus which are founded upon statements made to Plaintiff early on by Vanhoose, Bell, Stiggins, Graff, & reiterated by Vieyra, Austin, Randolph, Walmsley, Buchanan, Lewis, Leonard Moore, Reeves, Skidmore, Wildermuth, Hernandez, Ball, Haehl, Gift, & others plus that "if he (Plaintiff) were caucasian, he'd have been returned to gen. pop. status at HCF w/in days of finishing his dis. seg. sentence & patted on his shoulder w/a few "attaboy's" for standing for his zero tolerance to cowardly thefts of his property" or transferred to another prison's gen. pop. status w/in days of completing his Dis/Seq. sentence because the plethora of other similarly situated prisoners who were in fact causion, whether at HCF, CCF, or EDCF, were routinely released to gen. pop. promptly w/in days of being placed on the "holdover" status list which is the "kick-out of segregation & into gen. pop. list".

These accurate & reliable facts & evidences are readily validated by serious close scrutiny of the records — defendants will never admit to any racial animus short of being tortured like St. Peter was by the romans, & these facts & evidence reasonably & rationally constitute violations of Plaintiff's 8th & 14th Amendment rights under the U.S. Constitution, & substantiate violations of State & Federal criminal laws.

(b) Supporting (verified) Facts to Count XI :

No other prisoner ever confined in KDOC custody & placed in the "hold-over" status & designated for "release to gen. pop." can ever say nor can any defendant named in this suit can ever truthfully say, or produce concrete evidence that there's been a "similarly situated white prisoner" lied to on a near daily basis for over 5 yrs. & confined in terribly punitive isolation segregation awaiting "release to gen. pop." & instead retaliatorily transferred between 3 prisons seq. units for 5 yrs. These facts amply support Plaintiff's equal protection violation claims that assure all persons similarly situated should be treated alike & based on Plaintiff's shocking actionable facts & evidence, & the further concrete evidence procured via discovery, Plaintiff has established that based on defendant's racial animus & his being a mixed race prisoner, plus a →

Pg. 34/8 73-24 Verified FAC -- C/A #23-CV-3260-HLT
    Section III.

Count XI (b) Supporting (Verified) Facts Continued:


pro se litigant righteously challenging these defendants' corrupt "customs & practices", he has been provably treated differently & told early on by defendant Vanhoose that "he is the redneck ringleader of KDOC's redneck faction & that he & his rednecks will make Plaintiff wish he was dead"... & this "redneck ringleader of the KDOC redneck faction" was revered thru-out the KDOC & feared as a man who was capable of murdering non-whites & getting away w/it & covering up for his vicious acolytes w/proveable histories of terribly violent attacks on defenseless prisoners. (Stephen Hill is one of many) (& at LCF, SST Christopher Trapp is a known acolyte of Vanhoose's "redneck faction" & he got away w/murdering a black prisoner in restraints also in a closed off no camera area & this Plaintiff had a few "face-offs" at LCF after transfering there from HCF & his telling Plaintiff that "Major Vanhoose asked him to look after you" in a sinister exchange.

    The facts & evidences aptly support a jury verdict that Plaintiff was subjected to racial animus motivation & that defendants in the central ofc. were acutely aware & by their inactions & arbitrary refusals to act on Plaintiff's numerous complaints, claims, protests & requests for legitimate investigations & accountabilities to defendants Zmuda, Hrabi, Geither, Woods, Cannon, etal., & to gov. Kelly, Dawn Knudson, & Rep. Owens, demonstrate their unlawful acquiesence, actionable complicity, & widespread hypocrisy. KSA 75-5201 re "rehabilitation, KSA 75-5210(a) re "humane treatment" KSA 75-5251 re " shall investigate all complaints of staff misconduct" means absolutely nothing to any named defendant & are applicable foremost to Plaintiff the same as IMPP's 01-0000 & 02-418 ..., etc.

    Plaintiff was maliciously discriminated against & denied equal protection of established laws & his 8th & 14th Amendment rights & he suffered horrible & ongoing psychological abuses that has dramatically affected his physical health. Accord Levier v. State, 497 P.2d 265, syl. 2 (Kan. 1972)...

Pg. 35 / 8-13-24 Verified FAC -- C/A # 23-CV-3260- HLT

Section IV. Previous Lawsuits & Administrative Relief

Subsection 1.)(2) Continued

Plaintiff has pro se initiated  previous "otherwise relating to the conditions of his imprisonment" civil rights suit in the past 20 yrs. & these were:

(i) See Grissom v. Werholtz, et al., 524 F. App'x 467 (10th Cir. 2013) & note all documents thereto were criminally destroyed by defendant Holly Shaw at LCF, after his corruptly unlawful retaliation transfer to LCF from HCF on 6.2.21, & involved "like claims" as at bar in this instant FAC case.

(ii) Case No. 5-15-CV-3221-JTM/DJW, Grissom v. Ray Roberts S.O.C.; Johnnie Goddard/Dep. S.O.C.; James Heimgartner/EDCF Warden; Gary Wilson/EDCF Classif. Administrator; Susan Gibreal/EDCF Dep. Warden; Paul Snyder/EDCF Dep. Warden; Fred Early/EDCF Dep. Warden; Dale Call/ EDCF Policy Compliance Officer; Mary Wilson/EDCF Dep. Warden; Deane Donkey/ EDCF Classif. Administrator; Maria Bos/EDCF Compliance Officer; Program Management Committee/EDCF; EDCF Admin. Seg. Review Bd. Members; Timothy Randa/EDCF Seg. Lt.; Connie Zabel/EDCF M/H Counselor; Roland Buchanan/EDCF Seg. Lt.; Matthew Moore/EDCF CCII; Kathrine Clouser/EDCF M/H Counselor; Brandon Walmsley/EDCF UTM; Billie Grey/EDCF CCI; KDOC. Allison Austin/EDCF CCII; Charles Miller/EDCF CC II; Tammy Martin/EDCF UTM.

This case was appealed to the 10th Cir. Ct. of Appeals & Plaintiff was superbly represented by attys. Susan Razzano, Brian Chang, & Daniel Greenfield under the flag of the Northwestern University's Pritzker School of Law - Roderick & Solange MacArthur Justice Ctr. & Bluhm Legal Clinic. And Brief of Former Corrections Directors As Amici Curiae In Support of Plaintiff-Appellant And Motion For Rehearing En Banc filed by attys. & Law Students at the Univ. of Denver College of Law-Civil Rights Clinic in Denver, Colo. — which sadly was unsuccessful & has resulted in a terribly compounded manifest injustice perpetuating. See 10th Cir. Case No. 17-3185.

(iii) Case No. 5:20-cv-3163-JWB/ADM, Grissom v. Jordan Bell & Daniel Schnurr (HCF Defendants).

The filing dates & disposition dates, etc. were also criminally de-stroyed by LCF defendant Holly Shaw w/ intent to interfere w/ judicial processes in the future & as retaliation for past 1st Amendment activities & all grievances, property/injury claims rotely ignored & her superiors' at LCF & Central ofc., by their corrupt inactions. & knowledge other criminal acts ongoing for probably the past 2 decades shows it is an epidemic criminal/unconstitutional "custom & practice" & Central ofc. defendants complicit — its horribly epidemic & deserves intensive development, TRO's & both Preliminary & Permanent Injunctive relief, & comprehensive Declaratory Judgments.  of

Pg 36/ 8-13-24 Verified PAC -- C/A #23-CV-3260-HLT

Section

## CLAIMS FOR RELIEF

Plaintiff humbly requests the Court enter judgments on all such subject matter actionable facts at bar that he is entitled to & owed as a matter of law, & he further respectfully requests the Court to grant him the following entitled to & owed relief, without fear or favor:

A. Issuence of a sweeping common-sense declaratory judgment stating that:

(1) That acts & omissions of the defendants named & stated herein, & inflicted separately as individuals &/or in tandem, & in their official capacities, violated Plaintiff's constitutional rights under the U.S. Constitution, under the 1st, 4th, 8th & 14th Amendments, & also egregiously constituted conscious violations of the Kansas Code of Criminal laws as specifically claimed, & further constituted conscious violations of the U.S. Code of Criminal laws as specifically claimed, as well as consciously & arrogantly violated KDOC rules, regulations, policies, & general orders, & other relevant nondiscretionary laws of the state of Kansas (KSA 75-5201, 5210(a), 5251) & of the U.S.

And that these acts & omissions directly caused, w/ conscious unlaw intents, Plaintiff's unconscienable pain, suffering, physical injuries, & debilitating emotional distresses & ongoing irreparable PTSD, & declare his holdover release to gen. pop. status & transfers were unlawful shams & directly caused him irreparable & actionable injuries.

(2) That the defendants, & each of them individually & in tandem, failures to take any timely action to curb or cease the incessant physical & psychological abuses & overwhelming indignities, & instead consciously sustaining their actionable constitutional & criminal abuses & orchestrated the criminal deletions of his medical records exemptions requiring extended length handcuff restraints or belly-chains, & interfering w/ medical treatment daily showers, were in fact retaliation motivated by retaliations taken against Plaintiff for exercising his 1st Amendment rights to seek / obtain redress for actionable wrongs & separately & in combination w/ taking actions & omissions that they intended to be 8th Amendment violations & denials of his 14th Amendment rights to fundamental due process & the equal protections of established laws, rules & regulations, & their acts & omissions transgressed KDOC rules, regulations, & policies.

(3) Declare what Plaintiff's legal rights are in the facts at bar.

B. Issue a TRO & injunctive relief ordering defendants or their agents, replacements & proxies to adhear to the plain meanings of that which the "holdover" policy was intended & to forthwith release any such "holdover" prisoner w/in 7 days of such designated placement unless bonafide emergency conditions exist. And for additionally

Pg 37/8-13-24 Verified FAC--C/A #23-CV-3260-HLT
  section

## Claims for Relief Continued:

### B. Continued

Issuing a comprehensive Protection Order requiring defendants to cease their retaliatory & discriminatory acts & omissions against Plaintiff & to create anew, an independent Ombudsman Ofc. as previously existed as a "checks & balances" to the rampant abuses of authority that exist w/ arrogant impunity & strict enforcement of KAR 44-15-104, & that these defendants, & specifically defendants Kelly, Owens, State of Kansas, the KDOC, & S.O.C. reissue KAR 44-15-203 as previously existed w/ regular reports issued to the defendants Gov. Kelly & KS Legislative Corrections Oversight Chrmn. (Owens) & the Committee members.
And an Injunction compelling Gov. Kelly to appt. an independent special Counsel to investigate thoroughly all criminal acts of defendants & prosecute per KSA 75-116.

C. Award compensatory damages as follows:

(1) In excess of $50,000. jointly & severally against the HCF/KDOC defendants for their acts & omissions stated in Plaintiff's actionable Facts/Section

(2) In excess of $50,000. jointly & severally against the defendants Lundry, Corizon, & Centurion, & such other medical contract providers to be determined (Mental Health staff).

(3) In excess of $50,000 jointly & severally against the defendants KDOC LCF Staff's acts & omissions stated in Plaintiff's actionable Facts/Section

(4) In excess of $50,000, jointly & severally against the Centurion Medical Provider & M/H staff directly involved in Plaintiff's actionable Facts/Section

(5) In excess of $50,000. jointly & severally against the EDCF/KDOC defendants for their acts & omissions stated in Plaintiff's actionable Facts/Section

(6) In excess of $50,000. jointly & severally against the EDCF/Centurion Medical Provider & M/H staff directly involved in Plaintiff's actionable Facts/Section

(7) In excess of $50,000. jointly & severally against the defendants, Kelly, Knudtson, & Owens for their acts & omissions stated in Plaintiff's actionable Facts/Section

(8) Award $100,000. jointly & severally against defendants Schnurr, Bell, Vanhoose, Mcgonaghy, Marcus, Woods, Cannon, Nichols, Stiggins, Vieyra, Williams, Graff, Jensen, Zmuda, Hrabi, Geither, Holthaus, Cowger, Carter, Waldock, Meyer, Wildermuth, Gift, Haehl, Hernandez, Wagner, Ball, Walmsley, Buchanan, Reeves, OBrien, Matt Moore, Leonard Moore, Bos, Cole, Barnard, Randolph, Kelly, Knudtson, Owens,

for the unlawful duration on holdover status in punitive conditions, including deprivation of liberty & amenities that exist in gen. pop. & the emotional injuries affecting his physical health, & egregious indignities that resulted from their 1st Amendment retaliations, denials of medical orders →

Pg 38/8-13-24 Verified FAC -- C/A #23-CV-3260-HLT
Section

## Claims For Relief Continued :

#C. (B) Continued :

& treatments for his serious medical condition needs, & unlawful deletions of his medical record exemptions requiring extended length restaints or belly-chains restraints, sham segregation reviews & holdover status for over 5 yrs. & lying, & the cruel & unusual punishments maliciously inflicted in viola-tion of his 8th Amendment rights, & their apathy & malicious denials of legiti-mate due process & deprivations of his rights to equal protections of the law in being selective discriminated as compared to similarily situated prisoners & such discriminateons being racially motivated.

D. Award punitive damages in the following amounts :

(1) $250,000. against the HCF defendants jointly & severally for their acts & omissions claimed at bar.

(2) $250,000. against the LCF defendants jointly & severally for their acts & omissions claimed at bar.

(3) $250,000 against the EDCF defendants jointly & severally for their acts & omissions claimed at bar.

(4) $500,000. against the KDOC Central Ofc. defendants jointly & severally for their acts & omissions at bar.

(5) $500,000. against the defendants Kelly, Knudtson, & Owens, jointly & severally for their acts & omissions claimed at bar.


E. Trial by Judge on all triable issues.

F. Award all costs of suit

G. Appt. counsel for Plaintiff for all phases of litigation hereinafter.

H. Order a Martinez Report filing by defendants' counsel.

I. Award Atty. Fees.

J. Grant all such other relief as it may appear Plaintiff is entitled to as a matter of law, equity, & in the interests of justice.


Executed on 8-13-24

Respectfully Submitted,

s/ [signature]

Richard Grissom — Pro Se
#33720, EDCF, P.O. Box 311
El Dorado, KS 67042

Pg. 39/8-13-24  FAC - C/A # 23-CV-3260-HLT

## Certificate of Service

I, Richard Grissom, herewith certify delivering to EDCF E-1 Unit Team staff, the below stated pleadings for efiling to the Kansas U.S. District Court's Clerk's Ofc. at 444 S.E. Quincy in Topeka, KS, 66683, & simultaneously served on opposing counsels for defendants:

- Plaintiff's Local Rule 15.1(a)(1)-(3) Motion For Leave To File & Prosecute His First Amended Complaint In The Interests Of Justice
- Plaintiff's Verified First Amended Complaint

On this _13th_ day of August, 2024.

S/ _(signature)_
Richard Grissom — #
EDCF, P.O. Box 311
El Dorado, KS 67042

# EXHIBITS

#1    3/19/19   Grievance Against COI Louann Dyche - Opening Cell Door While Offender Was Not Present

#2    3/15/19   Disciplinary Report - Fighting And Dangerous Contraband

#3    3/26/19   Property Claim
     pg. 3   6/10/19 Form 9 To Major Vanhoose To Review Video Footage

#4    9/10/19   Seg Review Report HCF
     pg. 2-6   Form 9's CCI Bonford Germane To Transfer   Status
     pg. 7     Form 9   UTS Hurt Germane To Transfer Status
     pg. 8     Form 9   UTS Graff   Germane To Transfer Status
     pg. 9     Form 9   UTM Bell   Germane To Transfer Status
     pg. 10    180 Day Seg Review Unanimous Recommendation For Release
     pg. 11    360 Day Seg Review Deputy SOC Atrabe Recommends Release

#5    6/10/20   Grievance Against Major Vanhoose and UTM Bell Revoking Showers Recommended by APRN Kingsley Ngamedura

#6    6/21/20   Grievance Against UTM Bell For Intentional Placing Plaintiff Behind Slam Cell With No Air Circulation Retaliating For filing Grievance The Day Before

#7    4/20/20   Grievance Response Germane To Staff Not Complying With Medical Orders Issued Prior to 5/24/18

#8    7/23/20   Grievance Against Medical Treatment Of Misdiagnosed Lupus

#9    9/6/22   Seg Review Placement Facts Stating "Grissom Was Placed On Other Security Risk Status To prevent Further Disruption For Both His And Other Staff Members Safety

#10    7/7/21   Form 9 UTM Wildermuth Advocating Release - Appeal To The Warden
     12/22/21   Form 9 UTM Wildermuth "Waiting On Topeka (Central Office) To Agree To Release"
     7/7/21   9/8/21 Seg Review LCF

#11    Articles Condemning Prison Officials In Kansas

#12    KSA 75-116  Governor's Responsibilities And Power
       Article - Colorado Supreme Court Holds Governor Is Appropriate Defendant

#13    KDOC  Code Of Ethics

#14    Article  KDOC  Health Care Substandard

#15    3/23/22  Seg Review - EDCF - Plaintiff Request Release To EDCF Gen Pop
       3/21/23  Seg Review - HO Status Waiting To Be Transferred - Release To GenPop
       3/19/24  Seg Review - HO Status - Release To Gen Pop
       3/25/22  Plaintiff's Letter To Warden Williams
       4/18/22  Warden Williams Response To Letter
       4/01/22  CMII Walmsley Response Germane To Release
       6/13/22  Form 9 Receipt To UTM Shearburn Germane To Release
       6/5/23   Form 9 CM II Shearburn Custody Exception
       7/4/23   Electronic Email CMII Shearburn Germane To Transfer
       8/22/22  Classification M. Waldock Electronic Email Germane To Transfer

2 of 2

# Grievance-Response on Appeal

**FACILITY:**        **Hutchinson Correctional Facility**

**INMATE:**          **0033728 GRISSOM, RICHARD**    A3-138

**GRIEVANCE NO.:**   **BA00018290**

**DATE:**            **July 1, 2019**

## FINDINGS OF FACT

The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response.

On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong.

## CONCLUSIONS MADE

The response rendered to the inmate by staff at the facility is appropriate.

## ACTION TAKEN

None further.

**Douglas W. Burris**
**SECRETARY OF CORRECTIONS DESIGNEE**

cc:    Warden Schnurr
Image: SOCRESP w/attachments

The original response on appeal and all attached documents were mailed to the inmate by way of United States Mail on 07/03/19

*Received  7/17/19 @ 6:28 am*

2019

# APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

Inmate Name: _GRISSOM, R,_     Facility: _H.C.F._

Inmate Number: _33728_     Grievance Serial No. _#BA00018290_

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.)

MAIL TO:    Secretary of Corrections      Date Mailed: _6/25/19_
           Landon State Office Building
           900 Jackson, 4th Floor
           Topeka, Kansas 66612

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take. (Use extra paper as needed.)

_(see attached)_

_[signature]_
Signature of Inmate

---

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned within 20 days)

If applicable - Confidential File No. _____

Date Received in Office of Secretary of Corrections: _____

Date of Final Answer: _____     Date Sent to Inmate: _____

Finding of Fact:

Conclusions Made:

Action Taken:

RECEIVED
JUL 01 2019
DOC Facility Management Area

_____
Signature of Secretary of Corrections

---

**For D.O.C. Staff Use Only**

Type of Response (Item 6b:  Code   Ø1,   Ø2,   Ø8   or   Ø9)   __ __

DC Ø9Ø, Effective May 1, 1988

P-157a

## Grievance Appeal BA00018290

1.) The warden failed to address that COI Loyann Dyche can be seen on video intentionally open-ing Plaintiffs celldoor when he was not present and afforded inmates to enter his cell and steal his electronics.

2) The warden failed to address that COI Loyann Dyche exhibited gross negligence by opening Plaintiffs celldoor for a 6'7" plus skinny black inmate with an afro that she knows by name and a second black inmate that she knows by name when she was aware they lived on the opposite side of the cellhouse and video would show that there were no other inmates on the tier so she had clear visibility that Plaintiff was not present.

3.) The warden failed to address that COI Loyann Dyche's actions created a hostile fearful environ-ment which resulted in a violent altercation between Plaintiff and the two thieves who had entered his cell and stole his property.

4.) The warden failed to address that thefts of this kind where the officers open celldoors and allow inmates to enter the cells and steal others property is a common occurrence, specifically targeting inmates who are "not" gang affiliated and older, yet he failed to establish any policy or procedures to prevent these thefts from occurring and the frequency has increased.

5.) The aforementioned failure has no bearing on what the outcome of a property claim maybe. This incident encountered by Plaintiff can be tracked to identifiable group of non gang affiliated inmates who are under a constant threat or pervasive risk of harm and victims of threat which violates the Personal Safety and constitution of the 8th and 14th Amendment. There have been over 20 such thefts this year yet there has been no change in policy and the supervisors failed to provide adequate training to prevent or reduce these inmates from being targeted. The warden has exhibited deliberate in-difference by ignoring these numerous thefts and doing nothing about it, in violation of Plaintiffs liberty interests.

6) The warden could have easily reviewed the security video footage of the incidents and simply watched where Plaintiff's property was stashed but intentional chose not to because it would be detrimental evidence against them and they only preserve video when it benefits them. This violates Plaintiffs 1st Amendment rights and liberty interest.

7) Plaintiff afforded UTS Robert Hurt an opportunity to address the aforementioned issues but he failed to provide any relief to date.

Richard Grissom



**Kansas**
Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS  67504-1568

Phone: (620) 728-3338
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE:       4/23/2019

TO:         Grissom, Richard #33728
            A3-138

SUBJECT:    Grievance #BA00018290

FROM:       Dan Schnurr, Warden
            HUTCHINSON CORRECTIONAL FACILITY


**FINDING OF FACT:**  In your grievance you allege COI Dyche intentionally opened your cell door so other inmates could steal your property.

**CONCLUSIONS:**   I have reviewed your grievance and the response provided by CCI Benford. CCI Benford is correct when she stated the grievance procedure shall not be used as a substitute or as part of the property claim procedure. You have submitted a property claim in this matter and it will be investigated. If it is determined to be staff negligence then corrective action will be taken.

**ACTION TAKEN:**  None warranted.  This is my final answer to you on this matter.  Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

DS/MAN/eks


cc:  Unit Team Manager

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

## INMATE COMPLAINT

Inmate's Name _Richard Grissom_     Number _33728_

Facility _HCF_    Housing Unit _A3 - 138_    Work Detail _N/A_

### NATURE OF COMPLAINT
BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

( see attached (2) pages )

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _3/19/19_

### UNIT TEAM RESPONSE (Complete and return to inmate within 10 calendar days.)

See attached

Unit Team Signature _____ Date _3/29/19_

### INMATE RESPONSE (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__✓__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

Inmate Signature _____ Date _3/30/19_

### WARDEN RESPONSE (Complete, attach response and return within 10 Working days.)

Date Received _4-16-19_   Date of Final Answer _4-23-19_   Date Returned to Inmate _____

Inmate's Signature _____ Date _____ Unit Team Signature _____ Date _____

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

### TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number _BA0018290_

| | | |
|---|---|---|
| Type of Complaint (Item 4: Code 01-75) | 5 | 4 |
| Cause of Complaint (Item 5: Code 01-30) | 0 | 1 |
| Type of Response (Item 6a: Code 01,02,08 or 09) | 0 | 8 |

On 3/14/19, Plaintiff Richard Grissom went to breakfast at approximately 5:30am and was let out of his cell B2-246 by COI Louann Dyche. It must be noted that Plaintiff was housed at the end of the tier and cells adjacent to his are both occupied by "white" inmates, B2-244 and B2-248. Thus there are no black inmates in the immediate area and even B2-242 was occupied by a hispanic inmate.

Upon Plaintiff's return from breakfast there were no other inmates on the tier at this time which is common because not many inmates attend breakfast. When Plaintiff reached his cell he realized that his TV, table radio, alarm clock, JVC extra bass earbuds, and numerous extension cords/headphone cords had been stolen.

Inmate witnesses immediately informed Plaintiff that COI Dyche had opened his celldoor while he was at breakfast and allowed several inmates to enter his cell and steal his property as she stood by and "watched."

COI Dyche knows Plaintiff by name and due to his physical stature and mixed heritage, he is easily distinguishable from different inmates, especially black, and is identifiable. Plaintiff is 5'10" tall, bald headed, very muscular and light skinned plus he's 58 years old. The individuals who allegedly robbed Plaintiff all had thick afros, dark skinned, skinny, over 6'5" tall and young. Thus, COI Dyche was clearly aware that she opened the celldoor for inmates that was "not" Plaintiff and this action "must" be construed as "intentional," which constitutes deliberate indifference in violation of the constitution and his liberty interest.

It must also be noted that due to the lack of inmates on the tier, COI Dyche had clear visibility of what was taken place, and allowed it as well as facilitated it. Also, when a celldoor is "not" fully closed and secure, there are lights in the door control panel that alerts the officer of this fact, thus she was aware of it all.

COI Louann Dyche individually and in her official capacity was acting under the color of state law, knowingly, willfully and intentionally exhibited gross negligence and deliberate indifference by allowing and facilitating Plaintiff's property to be stolen by gang members from different sects which instantly created a "hostile and fearful environment" for Plaintiff in violation of IMPP 02-118 D IV 3(e), by making him a target of subsequent gang violence creating an atypical significant hardship in violation of his constitutional rights, and liberty interests.

Additionally, due to the failure of Warden Daniel Schnurr to address these "numerous" thefts from occuring, such as Love, Godfrey, Harris (inmates first name and number is unknown) he as well as the Kansas Department Of Corrections are liable for failing to establish policy and failure to train and supervise officers to prevent future thefts in violation of Plaintiff's constitutional rights and liberty interests.

Plaintiff is a 58 year old inmate who has less than 20 years to live if possible. He is "not" affiliated with any gang or security threat group. COI Dyche's intentional act of gross negligence and deliberate indifference to Plaintiff's personal safety and property only

2.

plaintiff a beige illuminated neon target on his back, as being vulnerable to attack with nobody willing to help him. COI Dyche intentional gross negligence forced Plaintiff to defend his property, his survival, from future attacks and assaults plus his respect amongst his peers, which "must" now be considered as "hostile and fearful," especially since he is a force of one going up against a gang of 50 plus members, from different sects. Plaintiff lived in peace and was respected prior to this incident caused by COI Dyche and KDOC.

Subsequent to the theft Plaintiff had no other recourse but to defend himself and fought two different people simultaneously from two different gangs. Plaintiff survived the melee and only received a few stab wounds against attackers half his age. Prior to this incident, Plaintiff's record is devoid of any alterations with any inmates. Now Plaintiff is forced to defend himself due to COI Dyche's actions and violations.

Here at HCF and EDCF gangs rule and govern the facility and "older" inmates as well as inmates "not" affiliated with any gangs or sects such as Plaintiff, are forced to defend themselves against thefts and attacks. KDOC and Warden Schnurr are well aware of this fact and have failed to develop and train staff to prevent such acts from occurring. The Warden, KDOC, administration possess "Knowledge" of these facts as well as Plaintiff is now a target of gang violence and future possible attacks. This grievance by itself puts KDOC, Warden Schnurr and other administration on notice and "Knowledge." U.S. Supreme Court held "inmates who are under constant threat of violence and a pervasive risk of harm"... "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk"..."Knowledge" that an excessive risk to inmate health or safety concerns (Plaintiff's), "or believe harm will actually occur, as long as they have Knowledge of the risk" prison officials are liable... Farmer v. Brennan 511 U.S. 825, 843, 114 S.Ct. 1970 (1994).

"Failure to protect prisoners targeted by gangs is deliberate indifference"... Walsh v. Mellas 837, F.2d 789, 797 (7th Cir. 1988). "Prison officials may be held liable if they fail to act on a specific warning of danger"... Case v. Ahitow, 301 F.3d 605 (7th Cir. 2002).

On 3/15/19 during seg review, Plaintiff informed the Board of the aforementioned facts, and requested to be transferred to a different facility where the threat of gang affiliated violence is suppressed and if possible where inmates 55 years of age and older are housed peacefully. Plaintiff is old and wants to live out the remaining years of his life in "general population" peacefully, without trepidation of being forced to fight to defend himself or property. KDOC, Warden Schnurr, SOC Norwood for failing to develop policy and train staff to prevent such "numerous" acts from occurring and COI Dyche for knowingly, willingly, intentionally and with gross negligence facilitated, created and are liable for Plaintiff's current situation and should grant his request, and transfer, to a non-gang facility.

Cellhouse security video preservation requested:                    3/19/19  [signature] Richard Grissom
for 3/14/19, 5:00am - 6:30am, B2-246

cc: Ms. Dianna Weber (mother)          cc: Daniel Greenfield, Attorney At Law
    11601 Crest Brook Place                 375 East Chicago Ave
    Riverview, FL 33569                      Chicago, IL 60611-3069

3.

8 of 9



# Kansas

**Department of Corrections**
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS  67504-1568

Phone: (620) 625-7238
Fax: (620) 662-7646
HCFI@ks.gov
www.doc.ks.gov

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE:        03/29/2019

TO:          Dan Schnurr
             HCF Warden

SUBJECT:     Grissom, Richard #33728 – Officer Opening Cell Door While Offender was not present.

FROM:        R. Benford CCI

             HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACTS:**  On 03/19/19, Mr. Grissom submitted a grievance stating on 03/14/19 as he went to breakfast, Cpl. Dyche opened his cell for other offenders to enter and steal his personal property. Mr. Grissom states Cpl. Dyche knows Grissom by name and due to his physical stature, age, and mixed heritage he is easily distinguishable. Mr. Grissom also states the individuals who stole his personal items from his cell were darker and taller than him. He states due to there being a lack of offenders on the cell run Cpl. Dyche had clear visibility of what was taking place. Mr. Grissom states Cpl. Dyche was acting under the color of the law, knowingly, willfully, and intentionally exhibited gross negligence and deliberate indifference by allowing his property to be stolen by Security Threat Group Members, which created a hostile and fearful environment. Mr. Grissom also states due to the failure of Warden Schnurr to address these numerous thefts, he as well as KDOC are liable for failure to establish policy and failure to train/supervise officers to prevent future theft in violation of his constitutional rights.

**CONCLUSIONS MADE:** Mr. Grissom submitted a property claim on 3/14/19 stating Cpl. Dyche opened his cell door when he was not present for other offenders to steal his personal property. **PER KAR 44-15-101a Section B2 "The grievance procedure shall not be used in any way as a substitute for, or as part of,** the inmate disciplinary procedure, the classification decision-making process, **the property loss or personal injury claims procedure,** or the procedure for censorship of publications specified in the secretary's internal management policy and procedure."

**ACTION TAKEN: NONE WARRANTED.**

R. Benford CCI
A3-R.H.U
Hutchinson Correctional Facility
cc:  Unit Team Manager

w/th 11-7 PG. 141
1 of 3

# DISCIPLINARY REPORT

HCF - CR
(FACILITY)

| | | |
|---|---|---|
| Case No. 19-03-190 | Date of Alleged Violation: 03/15/19 | Time: 0619 ◯ A.M. / ◯ P.M. |
| Date This Report Written: | 03/16/19 | Time: 0215 ◯ A.M. / ◯ P.M. |

Name of Inmate: Grisson   Richard          No. 33728   Cell No: A3-138
              LAST        FIRST       MI

Duty Assignment: PHD

**Alleged Violation of Law or Rule** (Identify by Code No., Short Title, and Class) 44-12-1002 VFO 60
QT 122 Presumed Dangerous contraband class I, 44-1b-901
Dangerous Contraband Class I, 44-12-301 Fighting class I

FACTS: On the above date and approximent time of 0619 I
CpL. Leeper called for a Level A Response to B-2 cell
House. Which Inmate Grisson 33728 was involved in. During
the incident 3 homemade weapons where recovered. (see attached photo)
Weapons where turned in as evedens.

PLC  901) 30 DSeg  60 Res (CC)
EOR      301) 15 DSeg  30 Ros (CC)

(Attach Additional Sheet(s) if necessary)
Staff Witnesses:                    (Signature)  J. Leeper CPL.
                                              J. Leeper  C O I
                                    Printed Name and Title of Employee Writing Report

                        Approved by: C. Bellyn CSI
                                    (Shift Supervisor, Unit Team Manager & Title)

I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.
Executed on 03/16/19          Signature  J. Leeper  C O I

I received a copy of this report on 3/18/19, 1022, XC_____
                              (Date)   (Time)      (Inmate Signature & No)
I served a copy of this report 3/18/19  1022  CS-2
                              (Date)   (Time)    (Signature of Officer or Unit Team Manager & Title)

Technical and clerical errors in the writing and / or processing of the Disciplinary report shall not be grounds for dismissal, unless there is substantial
prejudice to the inmate, which is the burden of the inmate to provide. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.

3/21

2of3

A3-138

# DISPOSITION AND HEARING RECORD

**INMATE NAME & NO:** GRISSOM, RICHARD #33728

Exhibit #

**FACILITY:** HCF          **CASE NO:** 19-03-190          **HEARING: DATE:** 3/18/19

**CHARGING**   HCF          **TIME:** 1022

**HEARING**    HCF

| Violation | Class | Amended Violation | Amended Class | Plea | Finding |
|---|---|---|---|---|---|
| 44-12-901 | I | ____ | ____ | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |
| **Reason:** INMATE PLED GUILTY TO THE CHARGE. | | | | | |
| 44-12-301 | I | ____ | ____ | ☒G ☐N/G ☐NC | ☒G ☐N/G ☐ DISM. |
| **Reason:** INMATE PLED GUILTY TO THE CHARGE. | | | | | |
| ____ | - | ____ | ____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| **Reason:** _____ | | | | | |
| ____ | - | ____ | ____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| **Reason:** _____ | | | | | |
| ____ | - | ____ | ____ | ☐G ☐N/G ☐NC | ☐G ☐N/G ☐ DISM. |
| **Reason:** _____ | | | | | |

☐ **Reporting Officer Sworn In / Affirmed**          ☒ **Notarized Testimony Read into the Record**

**Staff Testimony / Cross Examination (Attach Testimony)**

☒ **Inmate Sworn In / Affirmed**

☐ **Hearing held Inabsentia**     **Reason** _____

**Staff Assistant Assigned:** _____

☐ **Inmate Not Sworn In/Affirmed**     **Explain** _____

_____

**Inmate Testimony / Cross Examination (Attach Testimony)**

**INMATE NAME & NUMBER:** GRISSOM, RICHARD #33728

☐ Witness(es) Sworn In/Affirmed     _____     _____

_____     _____     Exhibit
                                              #

**Witness(es) Testimony / Cross Examination  (Attach Testimony)**

**Closing Statement(s):  (Attach Arguments)**
**If applicable include inmate's testimony/ arguments on restitution**

**Sanction(s):** 44-12-901 30 DSEG 60 RES (CC)  44-12-301 15 DSEG 30 RES (CC)
_____

**Reason for Sanctions:**  AS PER 44-12-1301
_____

**Disposition of Evidence:** HOMEMADE STABBING DEVICES
DESTROY EVIDENCE AFTER APPEAL/TIME EXPIRATIONS

☐   Inmate advised of right to Appeal,   Have Inmate Initial  _____

**HEARING OFFICER SIGNATURE** CSI  M. Simon                    **DATE**  3/18/19

**FINAL ACTION BY FACILITY WARDEN:**
☒ **APPROVED**
☐ **REINSTATE DISMISSED CHARGES; REMAND NEW HEARING**      ☐ **REDUCE TO SUMMARY JUDGMENT**
☐ **AMEND THE CHARGE**                                        - restriction from privileges up to 10 days
☐ **DISAPPROVE/DISMISS**                                      - fine not exceed $10.00
☐ **REDUCE THE PENALTY**                                      - extra work w/o incentive pay for no more than
☐ **SUSPEND ALL OR PART OF SENTENCE**                           2 hrs/day no more than 5 days
☐ **REMAND NEW HEARING**                                      - work w/o incentive pay not to exceed 5 days
☐ **CLARIFICATION OF RECORD**                                 - restitution not less than $3.00
                                                                or more than $20.00
**Comments:** _____

_____ J. Williams _____            _____ 3/27/19 _____
**WARDEN/DESIGNEE SIGNATURE**              **DATE**

**I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.**
_____            4/1/19
**INMATE SIGNATURE**                          **DATE**
**I served a copy of the Hearing Record**
_____            4/1/19
**STAFF SIGNATURE**                           **DATE**

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.

8241

1 of 3

Page 1 of 2, Attachment A, IMPP 01-118D
Effective 03-20-16
P-0590

## PROPERTY DAMAGE/LOSS OR PERSONAL INJURY CLAIM FORM

| DEPUTY WARDEN | Section I | |
|---|---|---|

| Filed **AT** Facility No.: 02 | Facility Initials: HCF |
|---|---|
| Filed **AGAINST** Facility No.: 02 | Facility Initials: HCF |

(Refer to PLC coding manual for facility no. & initials)

| Name of Claimant (Last, First, MI): GRISSOM, RICHARD | KDOC Number 33728 |
|---|---|

Type of Claim (circle one): **(Lost Property)**   Damaged Property   Injury

Amount of Claim: $180.00    Date of Loss Damage, or Injury (MO/DAY/YR): 3/14/19

Where Loss, Damage, or Injury Occurred:

If occurred in cellhouse, enter cellhouse/room number: B2-246

Otherwise, circle one of the following:   Mailroom   R&D   Central Property
Laundry   Gym   Dining Room
Other Location

NATURE OF CLAIM (Set forth detailed facts, including date of loss, damage or injury, how it occurred, place of occurrence, how you claim institution or employee was negligent, and amount of the claim.): On 3/14/19 COI Breuann Dyche during breakfast meal line opened B2-246 when Grissom was not present and facilitated several inmates to enter his cell and steal his personal property. Items that still have not been recovered include: Sangean WR-1 table radio, JVC extra bass ear-buds, 2 headphone extension cords, 1 male to male 3.5mm extension cord, 2-AAA Rayovac rechargeable batteries, 1 electric extension cord, and 1 surge protector. Alarm clock
Resubmitted: 3/26/19 R. Grissom A3-138

I am aware that presenting a false claim may result in penalties (under K.S.A. 75-7501 et seq., K.A.R. 44-12-101 et seq., etc.), and I declare (or verify, certify or state) that the foregoing is true and correct to the best of my knowledge, understanding, and belief.

Claimant Signature: R.D. Grissom    Date: 3/26/19

Subscribed and sworn to before me this 1ST day of APRIL, 2019.

Notary Public

ROBERT J. HURT
Notary Public - State of Kansas
My Appt. Expires 7-27-2021

RECEIVED MAY 13 2019 DOC Facility Management Area

My Commission Expires:

Received from Offender/Claimant:   Date: 4/1/19   Time: 1230

UT Name (print): Benecra   | UT Signature: Bent   | Claimant Initials: RDG

### Section II

Received by Warden/Superintendent on (MO/DAY/YR): 04-09-19   Facility Log No. Assigned: BA0008241

Investigation Report:   SEE ATTACHED

| Date (MO/DAY/YR): 5/3/19 | Investigator Name (print): Lloyd Jensen IV UTM | UT Member or Investigator Signature: L.D. Jensen UTM |
|---|---|---|

Form #01-118D-001

*20 of 3*



# Kansas

**Department of Corrections**
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 728-3338
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Roger Werholtz, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE    04/24/2019

TO:     Dan Schnurr, HCF Warden

FROM:   B. Ruiz, CCII

RE:     Property claim from inmate #0033728 Grissom, Richard #BA0008241

Inmate #0033728 Grissom, Richard has filed a property claim for $180.00. He is requesting compensation for a Sangean radio, JVC earbuds, 2x headphone extension cords, a 3.5 extension cord, 2x AAA Rayovac rechargeable batteries, an extension cord, a surge protector, and an alarm clock. He claims that COII Dyche facilitated the loss of his items by opening his door in his absence and allowing several other offenders to steal his items.

Grissom provided no other documentation with this claim. A search of OMIS and his property file confirmed he purchased all of the aforementioned items. The footage from that date was no longer available. I spoke with COII Dyche and she had no recollection of letting anyone into his cell.

Per KAR 44-16-105, all property is owned at the inmate's own risk and loss of property does not provide a basis for recovery of a claim unless the loss was a direct result of negligent duty on a staff member's part. Grissom has failed to show negligence of staff and there is no way to determine possession of the items. It is just as likely the items were handed off, stolen, or sold.

Therefore, I do not recommend payment of this claim.

_____
B. Ruiz, CC II

*3 of 3*

INMATE REQUEST TO STAFF MEMBER

To: *Major Vanhoose - review security video 3/14/19*                    Date: *June 10, 2019*
        (Name and Title of Officer or Department)

*R. Pittbec col*
        Unit Team, Detail, or Cellhouse Officer's Signature                    **To be retained by Inmate**

---

Form 9
For Cellhouse Transfer
Work Assignment _____                              *GRISSOM*
Interview Requests                                                    Last Name Only

KANSAS DEPARTMENT OF CORRECTIONS

                                                                     *33728*
                                                                     Number

INMATE REQUEST TO STAFF MEMBER

To: *Major Vanhoose* _____ Date: *June 10, 2019*
        (Name and Title of Officer or Department)
        State completely but briefly the problem on which you desire assistance. (Be specific.)

*On 3/15/19 during seg review, you stated that you were going to pull the security video*
*recording of col Dyche opening my celldoor B2-246 on 3/14/19 during breakfast time*
*when I was not present, and review it to determine when my electronics was stolen from*
*my cell. Please tell me if you reviewed it and your assessment.*

                                                                     *thank you*

Work Assignment: _____     Living Unit Assignment: *A3-13B*
Comment: _____             Detail or C.H. Officer: *R. Pittbec col*

Disposition: _____
_____
_____
_____
_____

To: _____     Date: _____
        (Name & Number)

Disposition: _____
_____
_____
_____

Employee's Signature                                  **To be returned to inmate.**
P-0009

*1 of 11*

KANSAS DEPARTMENT OF CORRECTIONS

ADMINISTRATIVE SEGREGATION REVIEW (PURSUANT TO IMPP 20-104)

Review type: <u>Monthly</u>          Report #:               Location: <u>A3138</u>

NAME: GRISSOM,RICHARD          KDOC#: <u>33728</u>          DATE: <u>9/10/2019</u>

DATE PLACED IN SEGREGATION: <u>3/15/2019</u>     REC. DATE OF RELEASE: _____

DID OFFENDER APPEAR BEFORE BOARD? <u>REFUSED</u> _____

1. Present Status: IMPP 20-104 I B 13 OTHER SECURITY RISK
   Change in status:   ☐ Yes  ☒ No

2. Return to General Population?
   ☐ Yes  ☒ No

3. Transfer to other Kansas facility or another state or federal facility?
   No

4. Medical or psychological intervention?
   No

5. Continue or modify program or treatment status?
   No

6. Offender informed of right to submit written request for release to Board?
   Yes

7. While in segregation unit, offender's behavior has been satisfactory?
   Yes

8. Board Comments: Offender: GRISSOM,RICHARD          KDOC# 33728
   Placed in Administrative Segregation on: 3/15/2019
   Physically Assaulted a leader of the STG Crips as well as STG "Bloods" due to them stealing his property. He can no longer live in General Population due to these issues.

APPROVED ✓    DISAPPROVED ___    _____
                                    Clinical Staff Member

APPROVED ✓    DISAPPROVED ___    _____
                                    Security Staff Member

APPROVED ✓    DISAPPROVED ___    _____
                                    Classification Staff Chair

APPROVED ___    DISAPPROVED ___    _____
                                    Warden

G-49

*2 of 11*

Form 9
For Cellhouse Transfer
Work Assignment _____

*GRISSOM*

**Last Name Only**

Interview Requests

## KANSAS DEPARTMENT OF CORRECTIONS

*33728*

**Number**

### INMATE REQUEST TO STAFF MEMBER

To: *CCI Benford*                          Date: *April 1, 2019*

(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

*You informed me that I'm waiting to be transferred to gen pop at a different facility. Please tell me which facility I can transfer to because I have a central monitor at EDCF and I was transferred from there due to reprisal possibilities from "staff"?*

*Thank You*

Work Assignment: _____    Living Unit Assignment: *A3-138*

Comment: _____    Detail or C.H. Officer: _____

Disposition: _____

_____

_____

_____

To: _____*Grissom 33728*_____                          Date: _____*4/2/19*_____

(Name & Number)

Disposition: *Lansing, and Larned are your two options. Which do you prefer? Although you do have a C/M at Lansing, so a one for one trade may be difficult.*

_____
Employee's Signature

**To be returned to inmate.**

P-0009

*3 of 11*

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

GRISSOM

_____

Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

33728

_____

Number

**INMATE REQUEST TO STAFF MEMBER**

To: _CCI Benford_                                    Date: _4/3/19_
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

_Please submit me for Larned, first choice, and at the moment, my only choice._

_Thank you._

Work Assignment: _____  Living Unit Assignment: _A3 - 138_

Comment: _____  Detail or C.H. Officer: _____

Disposition: _____

To: _____ Grissom  33728 _____                    Date: _____ 4/3/19 _____
(Name & Number)

Disposition: _Yes sir. Will Do._

_____
Employee's Signature

P-0009

4 of 11

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

_GRISSOM_
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

_33728_
Number

**OFFENDER REQUEST TO STAFF MEMBER**

To: _CCI Benford_     Date: _June 25, 2019_
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

Last week you stated that I'm being housed on ad seg awaiting transfer to another facility. I just want to reconfirm that this is my status?... and that I'm not under long term segregation but simply OSR status waiting to be transferred and released to general population? Secondly, how long do you think it will take to be transferred? and did you submit me for earned last month, April, like you stated?

thank You

Work Assignment: _____    Living Unit Assignment: _A3-138_
Comment: _Grissom_    Detail or C.H. Officer: _____

Disposition: _____

To: _Grissom 33728_     Date: _6/25/19_
(Name & Number)

Disposition: 1) yes sir, you are currently in restrictive Housing on OSR status (seg) currently waiting to be Transferred. Transfer request has been submitted, it can take months to be Transferred. 

_____
Employee's Signature

**To be returned to offender.**

P-0009

*5 of 11*

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

_GRISSOM_
Last Name Only

### KANSAS DEPARTMENT OF CORRECTIONS

_33728_
Number

### OFFENDER REQUEST TO STAFF MEMBER

To: _CCI  Benford_ _____     Date: _July 12, 2019_ _____
   (Name and Title of Officer or Department)
   State completely but briefly the problem on which you desire assistance. (Be specific.)

_Please check to see where I am on the list to be transferred to general population_
_to Larned or Lansing._

_Thank You_

Work Assignment: _____     Living Unit Assignment: _A3-138_

Comment: _____     Detail or C.H. Officer: _____

Disposition: _____

To: _Grissem  33728_ _____     Date: _7/15/19_
   (Name & Number)

Disposition: _Email sent. I will update you as_
_soon as I receive a response_

Employee's Signature

P-0009

## INFORMAL RESOLUTION

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

GRISSOM
Last Name Only

### KANSAS DEPARTMENT OF CORRECTIONS

33728
Number

### OFFENDER REQUEST TO STAFF MEMBER

To: CCI Benford                          Date: January 27, 2020
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

I have been housed in ad seg for over 10 months waiting to be transferred to general population in a different facility to no avail. You informed me that due to a central monitor in Lansing that Lansed was the only facility available but I have yet to be transferred. My physical health is declining and the inability to move around in this small cell and hot summers exasperates my condition. *IMPP 20-104 (14)(2) An individual "shall not" be held... longer than reasonably necessary to accomplish the transfer to another facility.*                          thank you

Work Assignment: _____   Living Unit Assignment: A3-138
Comment: _____   Detail or C.H. Officer: _____

Disposition: _____
_____
_____
_____

To: Grissom 33728                          Date: 1-27-2020
(Name & Number)

Disposition: Bo There are many inmates who have not been awarded a transfer, and have been here longer than you.#3 I am saying this because KDOC doesn't have the bed space right now to facilitate transfers as quickly as we would like. I've sent an email to the transfer coordinator to see if there is anything we can do to speed it up before summer.#

_____
Employee's Signature                          To be returned to offender.

P-0009

7 of 11

INMATE REQUEST TO STAFF MEMBER

To: _UTS HURT - Suspend ad. exhaustion for 90 days_        Date: _April 3, 2019_
       (Name and Title of Officer or Department)

_____
       Unit Team, Detail, or Cellhouse Officer's Signature        **To be retained by Inmate**
                        11:11 pm

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Form 9**
For Cellhouse Transfer                                          _GRISSOM_
Work Assignment _____          Last Name Only
Interview Requests

**KANSAS DEPARTMENT OF CORRECTIONS**
                                                              _33728_
                                                               Number
**INMATE REQUEST TO STAFF MEMBER**

To: _UTS Hurt_                         Date: _April 3, 2019_
      (Name and Title of Officer or Department)
      State completely but briefly the problem on which you desire assistance. (Be specific.)

_Today you asked if I would hold off exhausting my remedies and give you an opportunity to resolve it._
_Once my grievance is returned from the Warden, I agree to suspend exhaustion until July 4, 2019. CCI_
_Benford informed me that due to a central monitor in Lansing, which I believe a victims family member is_
_being housed, that Larned is the only facility I can transfer to. Please resolve my issue and assist me_
_by transferring me to Larned, general population and I will refrain from exhaustion and filing a 1983_
_federal complaint or Tort claim._                         _thank you for your assistance_

Work Assignment: _____        Living Unit Assignment: _A3-138_
Comment: _____                 Detail or C.H. Officer: _____

Disposition: _____
_____
_____
_____

To: _GRISSON # 33728_                         Date: _4-4-2019_
      (Name & Number)

Disposition: _THANK YOU FOR THE OPPORTUNITY, BENFORD AND I WILL BE_
_WORKING ON TRANSFER OPTIONS. PLEASE UNDERSTAND WE CANNOT FORCE_
_LARNED TO TAKE YOU._

_____
       Employee's Signature                         **To be returned to inmate.**

P-0009

*8 of 11*

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

*GRISSOM*
**Last Name Only**

## KANSAS DEPARTMENT OF CORRECTIONS

*03728*
**Number**

### INMATE REQUEST TO STAFF MEMBER

To: *UTS Graff* _____   Date: *July 16, 2020* _____
**(Name and Title of Officer or Department)**
State completely but briefly the problem on which you desire assistance. (Be specific.)

*I was informed by CCI Benford that I'm on the list to be transferred to general population at Larned. I have been waiting for over a year and since you're my unit team now, how long before I am transferred out?*

*Thanks*

Work Assignment: _____   Living Unit Assignment: *A2-221*

Comment: _____   Detail or C.H. Officer: _____

Disposition: _____

To: ( ) _____   Date: *7/20/2020*
**(Name & Number)**

Disposition: *A time frame for transfer is unknown at this time. You are still on the list to transfer when possible.*

*B A Otis*
Employee's Signature

**To be returned to offender.**

P-0009

*9 of 11*

*INFORMAL RESOLUTION*

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

(A2-129)

*GRISSOM*
Last Name Only

## KANSAS DEPARTMENT OF CORRECTIONS

*33728*
Number

## OFFENDER REQUEST TO STAFF MEMBER

To: *UTM Bell* _____   Date: *November 1, 2020*
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

*In April 1, 2019 CCI Banford informed me on my Form 9 that I was on the list to be transferred to a different facility, that I had central monitors in Lansing and EDCF so horned was my best option. That was over 19 months ago and I still have not been transferred. On my Restrictive Housing 360 Day Review in May, the Seg Review Board, Deputy Warden, Warden Schnurr and Deputy Secretary of Corrections "all" recommended release upon transfer to a different facility, yet here I sit. ✱ IMPP 20-104 (14)(2) An individual "shall not" be held... longer than reasonably necessary to accomplish the transfer to another facility. ✱ Federal law "Tate vs Carlson" mandates no longer than 90*

Work Assignment: _____   Living Unit Assignment: *A2-129*
Comment: *Lee Grissom) #33728*   Detail or C.H. Officer: _____

Disposition: *days max. The two inmates involved in my incident were both transferred "last year." I'm aware that Covid 19 has limited the amount of transfers but they're still being conducted to date. I'm 60 years old with worsening medical issues and continued ad seg confinement especially when approved by the Deputy Secretary of Corrections creates an atypical and significant hardship which violates my 8th Amendment and liberties.*

To: *Grissom  #33728* _____   Date: *11/3/2020*
(Name & Number)

Disposition: *You are scheduled to be transferred once transfers are allowed to occur due to the COVID pandemic.*

*[signature]*
Employee's Signature

**To be returned to offender.**

P-0009

*10 of 11*

# RESTRICTIVE HOUSING 180 DAY REVIEW

**Offender: GRISSOM,RICHARD**
**KDOC# 33728**

**Location: HCF A3 138**
**PRD: 10/6/2093**

**Placement Date: 3/15/2019**          **Today's Date: 9/9/2019**    **Total days in RH: 178**

Segregation Review Board recommends release: Yes ☑ No ☐ Reason for Recommendation: _Attached_
_(2) all I/m's that stole property from him. Unable to stay at_
_CSP @ HCF due to this (STG - crip). Will need transfer to another facility_

UTM: _____                     Date: _9/27/2019_
See attached Segregation Review Board notes.

The above listed inmate has been continuously housed in restrictive housing for a period of 180 days. Per IMPP 20-106, III, A: The Program Management Committee of each facility housing restrictive housing inmates shall review those inmates maintained continuously in Administrative Segregation at least every 180 days.

Recommend Retention: _____
Recommend Release: ___✓___            _____    _10-8-20_
                                        Deputy Warden – Programs                Date

Reason for Recommendation: _To Transfer Only_

Recommend Retention: _____
Recommend Release: __X__              _____    _10/11/19_
                                        Deputy Warden – Operations              Date

Reason for Recommendation: _____

Recommend Retention: _____
Recommend Release: __X__              _____    _10-17-19_
                                        Warden                                  Date

Reason for Recommendation: _____

The above listed inmate has been continuously housed in restrictive housing for a period of 180 days. Per IMPP 20-106, IV, A: The warden of each facility housing restrictive housing inmates shall annually submit a report to the Deputy Secretary for Facilities Management for all inmates continuously held in administrative segregation for a year or longer, and on each anniversary thereafter.

Recommend Retention: _____
Recommend Release: _____             _____    _____
                                        Deputy Secretary of Corrections         Date

Reason for Recommendation: _____
_____

Return completed forms to: HCF, Classifications & Records Office.

G-50

# RESTRICTIVE HOUSING 360 DAY REVIEW

RECEIVED

APR 13 2020

Offender: **GRISSOM,RICHARD**                 Location: HCF A3 138
KDOC# **33728**                                        PRD: **10/6/2093**

DOC Facility Management Area

Placement Date: **3/15/2019**          Today's Date: **3/13/2020**    Total days in RH: **364**

Segregation Review Board recommends release: Yes ☑ No ☐ Reason for Recommendation: _Attached two inmates_
_that still properly from him. Claims he is unable to return to GP @ HCF due to this_
_so involved no STG (wipes). Request transfer cm @ LCF/EDCF.   Minimum custody_
_transfer will be difficult._
UTM: _____                       Date: __3 / 16 / 2020__
See attached Segregation Review Board notes.

The above listed inmate has been continuously housed in restrictive housing for a period of 360 days. Per IMPP 20-106, III, A: The Program Management Committee of each facility housing restrictive housing inmates shall review those inmates maintained continuously in Administrative Segregation at least every 180 days.

Recommend Retention: _____/✗
Recommend Release: _____✓_____                   _(signature)_                    __3-31-2020__
                                          Deputy Warden – Programs                        Date

Reason for Recommendation: _✗ rel upon direct trnsf to anthr facig_

Recommend Retention: _☒_
Recommend Release: _____                   _(signature)_                    __4/7/20__
                                          Deputy Warden – Operations                      Date

Reason for Recommendation: _Max custody transfer unlikely._

Recommend Retention: _☒_
Recommend Release: _____                   _(signature)_                    __4-7-20__
                                          Warden                                          Date

Reason for Recommendation: _____

The above listed inmate has been continuously housed in restrictive housing for a period of 360 days. Per IMPP 20-106, IV, A: The warden of each facility housing restrictive housing inmates shall annually submit a report to the Deputy Secretary for Facilities Management for all inmates continuously held in administrative segregation for a year or longer, and on each anniversary thereafter.

Recommend Retention: _____
Recommend Release: ____✓_____                   _(signature)_                    __4/16/20__
                                          Deputy Secretary of Corrections                Date

Reason for Recommendation: _____

Return completed forms to: HCF, Classifications & Records Office.

G-36

*1 of 5*

HCF# BA-000-18559
Re grievance dated 6-10-20
medical showers retal.
responding by Bell &
Van hoose ...



# Kansas
**Department of Corrections**
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS  67504-1568

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

*exh 5*

DATE:     7/8/2020

TO:       Grissom, Richard #33728
          A2-221

SUBJECT:  Grievance #BA000⅛8559

FROM:     Dan Schnurr, Warden
          HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACTS:**  In your grievance, you claim that you are in disagreement with your treatment for skin issues associated with Lupus.

**CONCLUSIONS MADE:**  I have reviewed your grievance and Health Services Administrator, D. Lundry's response.  I agree with her response.

HCP's have submitted a new request for a different medication to help address your skin issues, as the previous medication was most likely not effective.  Your request for additional showers was not ordered, as it provided no benefit.

I would encourage you to continue to address your medical concerns with medical staff and follow their medical guidance to address your concerns.

**ACTION TAKEN:** None warranted. Again, this will be my final answer to you on this matter. Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

DS/JB
cc:  Unit Team Manager

2 of 5

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

| INMATE COMPLAINT | JUN 1 1 2020 | |
|---|---|---|
| Inmate's Name _GRISSOM  R_ | | Number _33728_ |
| Facility _HCF_ | Housing Unit _A3-138_ | Work Detail _____ |

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

(see attached)

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _6/10/20_

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

Unit Team Signature        _6/22/2020_
                                Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__✓__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _6/24/2020_

_(signature)_ _6/23/20_
Inmate Signature                              Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received _7-1-20_   Date of Final Answer _7-8-20_   Date Returned to Inmate _____

_____        _____        _____
Inmate's Signature        Date        Unit Team Signature        Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

## TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number  _BA00018554_

Type of Complaint (Item 4: Code 01-75)  _0  2_

Cause of Complaint (Item 5: Code 01-30)  _0  4_

Type of Response (Item 6a: Code 01,02,08 or 09)  _0  8_

I have lupus, a long-term autoimmune disease where my body's immune system becomes hyperactive and attacks normal healthy tissue. Asian, African American and Native American have the highest pre-disposition of possessing lupus, thus it's largely a minority disease. I have late-onset lupus and the mortality rate is highest in African American men so my life expectancy is short. I have extremely painful rashes and lesions over 80% of my legs, buttocks, arms, hands, chest, back and face. These rashes itch incessantly to the point it's maddening. Medical has failed to treat my symptoms effectively with any real success and provide nothing to abate the pain. The only reprieve I receive is when I take a shower and the hot water abates my pain and symptoms.

I have received the recommendation by medical staff that I need to receive daily showers three separate times. I was informed by APRN Carmen Baynham that they cannot issue a medical "order" for me to receive daily showers, regardless of any benefits, because it causes a conflict between the administration and medical so the best that medical can do is "recommend" and it's up to the administration after that but she refused to make any recommendation officially because she did not want to be caught in the middle.

On 6/8/20 I saw APRN Kingsley Ngameduru germane to my painful rashes and "without" me asking recommended that I receive daily showers to abate the pain. He stated that my symptoms were the worst that he's seen and looked painful. It must be noted that I did receive (6) showers per week from 10/17/19 to 3/5/20 before UTM Bell revoked the approval. I received no explanation. On 6/8/20 I had unit team approval once again, "without" me directly requesting it, and I received a shower. But the very next day, I was informed that my approval to shower daily had been revoked by Major Clay Vanhoose and UTM Jordan Bell once again.

It must be noted that the Major and UTM Bell on 3/3/20 issued an order revoking my medically approved order to be restrained with "large" size double cuff and mandated that only "regular" sized extra length cuffs be utilized regardless of the pain it caused me. After filing a second grievance over the exact 5/23/18 issue, the Warden reiterated his first response and overruled the Major and UTM Bell's order by mandating that I be restrained with "large" sized

7 of 9

double cuffs. Interestingly, two days later on 3/5/20 the Major and UTM Bell revoked my 10/17/19 approval for daily showers and it appeared to me that these two individuals want to cause me pain or discomfort due to their actions. The fact that their actions of revoking approval of a fellow unit team member and even the Warden clearly exhibits intentional abuse of discretion for no legitimate penological interest other than to punish and retaliate against me, which also supports racist motives. My unit team is black, has seen the progression of my painful rashes, talked to mental health and medical about my condition and has genuinely attempted to help me, yet UTM Bell has thwarted her approvals. I have an ethnic disease with a high mortality rate and it appears that this white administration, specifically the Major and UTM Bell are attempting to make life difficult for me, and painful. We are only afforded a (5) minute shower so to deny me relief from pain over a (5) minute shower is absurd. Clearly there are underlying factors, such as retaliation, racism, or personal abhorrence on behalf of Major Vanhoose and UTM Bell, with the need to inflict punishment that's beyond the order of the Courts which violates the 1st Amendment to redress grievances, the 8th Amendment against cruel and unusual punishment, the 14th Amendment on equal protection and my liberty interests. In gen pop I would automatically receive daily showers but I'm in ad seg just waiting to be transferred to gen pop for over a year. Another example of discrimination is At the bottom of the attached Form 9 written in red CC1 Benford stated "The Doctor is no longer recommending daily showers." This supports my claim that there's a conflict between the administration and medical over showers. Clearly the pressure from UTM Bell, Major, etc. made the Doctor rescind his recommendation, regardless of the abatement of pain and relief that showers provide, this occurred despite the obvious medical benefits witnessed by staff who viewed my rash. I was informed that they revoked all the medical orders and recommendations made by APRN Kingsley Ngameduru who genuinely tried to help me and he is "black", this violates the 8th and 14th Amendment and exhibits deliberate indifference to my serious medical needs.

Respectfully Submitted

Ben Grissom

5 of 5

# KANSAS DEPARTMENT OF CORRECTIONS
# HUTCHINSON CORRECTIONAL FACILITY

## INTERDEPARTMENTAL MEMORANDUM

**GRISSOM, RICHARD J. # 33728**    A2 - 221          **DATE: 6/15/2020**
Correctional Facility – Unit Team

**SUBJECT:**  Grievance received on 6/11/2020          **FROM:**  Debra Lundry RN,
                                                        Health Services Administrator

**FINDING OF FACT:** I have received your grievance regarding your TREATMENT FOR SKIN ISSUES ASSOCIATED WITH LUPUS.

Mr. Grissom your case was discussed on 6/9/2020 among the HCPs.  History of your symptoms indicate that you have been suffering more than 6 months.  With prednisone you have good response but when the med is decreased to below 40mg daily your symptoms re-appear.  They did not feel a renewal of your prednisone was not in your best interest for side effects.  It will most likely not be effective.   They have submitted a new request for an off formulary oral medication called Plaqunel which was approved and ordered today.  Your shower request was never ordered by medical department and consultation with the team indicates it is of no benefit to you to allow extra showers or shower time for your condition.

Debra Lundry RN, HSA

*Received 6/23/20*

*1 of 16*

BA·000·18574
re Medical Condition

# Grievance-Response on Appeal

**FACILITY:**      **Hutchinson Correctional Facility**

**INMATE:**      **0033728 GRISSOM, RICHARD**   *A2-129*

**GRIEVANCE NO.:**   **BA00018574**

**DATE:**      **August 10, 2020**

## FINDINGS OF FACT

The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response.

On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong.

## CONCLUSIONS MADE

The response rendered to the inmate by staff at the facility is appropriate.

## ACTION TAKEN

None further.

**Douglas W. Burris**
**SECRETARY OF CORRECTIONS DESIGNEE**

cc:     Warden Schnurr
Image: SOCRESP w/attachments

The original response on appeal and all attached documents were mailed to the inmate by way of United States Mail on _____.

*2 of 16*

## APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

Inmate Name: _GRISSOM,   R_          Facility: _HCF_

Inmate Number: _33728_          Grievance Serial No.: _BA 000 18574_

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.)

MAIL TO:    Kansas Department of Corrections          Date Mailed: _7/31/20_
            714 SW Jackson
            Suite 300
            Topeka, KS  66603

---

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take.  (Use extra paper as needed.)

*( one  attached )*

_____
Signature of Inmate

---

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned with 20 days)

If applicable – Confidential File No. _____

Date Received in Office of Secretary of Corrections: _____

Date of Final Answer: _____          Date Sent to Inmate: _____

Finding of Fact:

Conclusions Made:

Action Taken:

RECEIVED
AUG 10 2020
DOC Facility Management Area

_____
Signature of Secretary of Corrections

---

**For D.O.C. Staff Use Only**

Type of Response (Item 6b:  Code      01, 02, 08 or 09) _____

DC 090, Effective May 1, 1988

3 of 16

while in A3 cellhouse, the major thing that I complained about was germane to my medical care which has been ineffective. I have been suffering for over 16 months with maddening incessant itching 24 hours a day due to a very painful rash that has my skin inflamed with the surface temperature of 106°. I complain to unit team and mental health to help me receive effective medical treatment because I'm "miserable." To even suggest that this is manipulative is absurd because it is my constitutional right to have my serious medical needs treated. I was diagnosed with lupus last year and my symptoms have worsened exponentially. Fourteen years ago I suffered a heat stroke here at HCF when I was in excellent health so for the Unit Team to place me behind a solid door where the cell temperatures are extremely hot during these summer months was intentional because he was well aware of my inflamed lupus skin rash which is exasperated by heat. UTM Bell could have easily moved me behind one of the many cells with bars when they became vacant but he refused to do so even after I filed a grievance which vividly exhibits his state of mind that he was deliberately indifferent to my serious medical needs and well-being, in violation of the 8th Amendment.

As Unit Team Manager, Bell has the authority to move me within minutes of making his decision, especially within his own cellhouse. Usually he submits a move to be made the day before it's to be executed unless he deems it to be an emergency at which time he'll act immediately. To suggest that UTM Bell had decided to move me days before I filed the grievance against him is absurd especially since he believed I was allegedly acting inappropriately. He would have acted immediately. The close proximity to filing my grievance against UTM Bell the day before I was moved is direct evidence of retaliation in violation of my First Amendment and one must consider the fact that my A3 Unit Team, cu Benford, had no idea that I was to be moved or why. I assert that she was black and trying to help me with my medical issues plus I am black so the racial discrimination manifests itself and must be scrutinized as it violates the equal protection clause and my liberty interests.

I have followed medical guidance to the fullest. I've not once failed to comply or follow their recommendations. I requested to see a specialist numerous times but to no avail over a year ago. I requested blood tests to determine exactly what type of lupus do I have to no avail, back in November 2019. Medical have made recommendations that I shower daily because it abates the pain and my inflammation but because there's been a disagreement between the HCF administration and medical, my showers were rescinded. Daily showers would not be an issue if I had been transferred last year to gen pop at a different facility. I am not on long term ad seg and according to Form 9's in April 2019, I'm simply waiting to be transferred. (see attached Form 9's attesting this). Last month I was told that due to the coronavirus, transfers are limited. Thus, I have no other alternative but to file these grievances and to redress them in state or federal court. I am incessantly itching, my rash covers 90% of my body, I'm miserable, it's painful and now I was told that I may not even have lupus. Medical care here is ineffective and staff like UTM Bell are callous and abuse their discretion exhibiting deliberate indifference to my medical needs, and constitutional rights, in violation of the 1st, 8th and 14th Amendments with no legitimate penological interests.

7/31/20

*4 of 16*

*#BA-000-18574*
*HCF griev. 6-21-20*



# Kansas

AD ASTRA PER ASPERA

**Department of Corrections**
**Hutchinson Correctional Facility**

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

P.O. Box 1568
Hutchinson, KS 67504-1568

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE:      7/17/2020

TO:        Grissom, Richard #33728
           A2-221

SUBJECT:   Grievance #BA00018574

FROM:      Dan Schnurr, Warden
           HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACTS:**  In your grievance, you claim that your movement within RHU was retaliatory and racial discrimination.

**CONCLUSIONS MADE:**  I have reviewed your grievance and UTS Graff's response.  I agree with his response.

The move within Restrictive Housing was due to your continued attempts to manipulate staff member(s) within A3 cell house.  The move within Restrictive Housing was decided well before the grievance you filed the day before you were moved to A2 cell house.

I would encourage you to continue to address your medical concerns with medical staff and follow their medical guidance to address your concerns.

**ACTION TAKEN:**  None warranted. Again, this will be my final answer to you on this matter. Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

DS/JB
cc:  Unit Team Manager

76 of 76

## KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

### INMATE COMPLAINT

Inmate's Name _GRISSOM , R_     Number _33728_

Facility _HCF_     Housing Unit _A2-221_     Work Detail _____

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

*(see attached)*

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _6/31/2020_

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

See attached.

B. 4 ///  UT     7/1/2020
Unit Team Signature       Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__✓__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _7/6/2020_

_Ryan Grissom 7/2/20_
Inmate Signature       Date

**`WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received _7-13-20_    Date of Final Answer _7-17-20_    Date Returned to Inmate _____

R
D

Inmate's Signature       Date    Unit Team Signature       Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

### TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number _BA00018574_

Type of Complaint (Item 4: Code 01-75) _3_      _3_

Cause of Complaint (Item 5: Code 01-30) _0_      _3_

Type of Response (Item 6a: Code 01,02,08 or 09) _0_      _8_

At approximately 8:00 am on 6/10/20 I submitted a grievance against UTM Bell and the Major for re-taliatory conduct and racial discrimination to the unit team. Since April 2019 I have suffered from lupus symptoms which consists of painful rashes and lesions thats exasperated by sunlight and hot summer temperatures. Corizon is not providing me with medication that has been effective and the only relief I was receiving is from daily showers that UTM Bell revoked on 6/9/20 so I filed a grievance which is my constitutionally protected right.

At approximately 11:00am on 6/11/20 the very next day after I submitted the grievance against UTM Bell, I was informed that UTM Bell ordered that I be moved from A3 to A2 cellhouse. A3 unit team stated they had no idea why I was being moved and no warning that I was being moved, that it was abrupt and sudden. I assert this is directly causal connected to my filing of a grievance against UTM Bell the day before, and must be construed as retaliatory conduct in violation of the 1st Amendment and my liberty interest.

In the Restrictive Housing Units (RHU) they have basically two types of cells. On the first tier the celldoors have bars across the front which allow for maximum airflow, especially desired on the hot summer months, and the best behaved inmates are housed in these cells. On the second tier the cell-doors are constructed of solid steel doors across the front that prohibits airflow, designed for dis-ruptive inmates, to provide extra security and where long term ad seg inmates are normally hous-ed. In fact, once an inmate has been removed from long term ad seg status he is moved from the second tier to the first. In A3 cellhouse, I was housed on the first tier and I was not on long-term ad seg status, plus there was a window in front of my cell that provided maximum airflow.

A2 cellhouse is below A3 cellhouse, and due to the high influx of inmates coming and going, it is loud, rowdy, inmates constantly banging on the celldoors, whereas in A3 it is extremely quiet and nobody bangs on the doors. In A2, the cells are filthy with writing/graffiti all over the walls, tiers dirty and trashed, whereas in A3 my cell and floor was painted, it was clean and the tiers are clean, waxed and buffed. Inmates are afforded additional property and privileges in A3. The best behaved, non disruptive inmates are moved from A2 to

2.

Form 9
For Cellhouse Transfer
Work Assignment _____   *Informal Resolution*

GRISSOM
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

33728
Number

**OFFENDER REQUEST TO STAFF MEMBER**

To: *UTS Graft*                          Date: *June 17, 2020*
(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

I filed a grievance against UTM Bell on 6/10/20. I was housed in A3 behind the "bars," not disruptive and not on long term ad seg. On 6/11/20 I was moved to A2 behind the door designated for trouble makers and for reasons unbeknownst to my A3 unit team. Due to the lack of airflow, higher cell temperatures than bar cell, it exasperates my lupus, which has worsen, and 14 years ago I suffered a heat stroke at HCF. It is my assertion that UTM Bell is punishing me for submitting the grievance against

Work Assignment: _____   (J. Grissom) 6/17/20         Living Unit Assignment: A2-221

Comment: _____                                        Detail or C.H. Officer: Weber

---

Disposition: him the day before and for no legitimate penological interest, in violation of my 1st and 8th Amendment. There's also a racial disparity of Black inmates being housed in A3 (lack thereof) and a white inmate took my old cell from A2. UTM Bell is also liable for the worsening of my symptoms and future ill health. Why was I moved?

To: _____                       Date: 6/19/2020
(Name & Number)

Disposition: The decision to move you was made prior to you filing a grievance on UTM Bell. Any RHU offender can be housed in Any RHU cell. Your race, health, or filing of grievances have no factor in your placement. Your access to medical services has not changed with your movement. Your movement is not being used as a punishment or a retaliation as you suggest.

B. A. Mox
Employee's Signature                                    To be returned to offender.

P-0009

*8 of 10*



*grien. # BA-000-18574*
*submitted 6-21-20*
*medical cond. exacerbated*
*by solid door conditions &*
*medical showers overruled by*
*Bell/Vanhoose*

# Kansas

**AD ASTRA PER ASPERA**

Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE:      7/17/2020

TO:        Grissom, Richard #33728
           A2-221

SUBJECT:   Grievance #BA00018574

FROM:      Dan Schnurr, Warden
           HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACTS:**  In your grievance, you claim that your movement within RHU was retaliatory and racial discrimination.

**CONCLUSIONS MADE:**  I have reviewed your grievance and UTS Graff's response.  I agree with his response.

The move within Restrictive Housing was due to your continued attempts to manipulate staff member(s) within A3 cell house.  The move within Restrictive Housing was decided well before the grievance you filed the day before you were moved to A2 cell house.

I would encourage you to continue to address your medical concerns with medical staff and follow their medical guidance to address your concerns.

**ACTION TAKEN:**  None warranted. Again, this will be my final answer to you on this matter. Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

DS/JB
cc:  Unit Team Manager

## KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

### INMATE COMPLAINT

Inmate's Name _GRISSOM, R_     Number _33728_

Facility _HCF_     Housing Unit _A2-221_     Work Detail _____

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

_(see attached)_

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _6/21/20_

### UNIT TEAM RESPONSE (Complete and return to inmate within 10 calendar days.)

See attached.

_B. A_ UTS     _7/1/2020_
Unit Team Signature        Date

### INMATE RESPONSE (Complete and return to Unit Team within 3 calendar days)

____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

_✓_ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _7/6/2020_

_Ryan Grissom_ _7/2/20_ _____
Inmate Signature        Date

### `WARDEN RESPONSE (Complete, attach response and return within 10 Working days.)

Date Received _7-13-20_    Date of Final Answer _7-17-20_    Date Returned to Inmate _____

_____     _____
Inmate's Signature     Date     Unit Team Signature     Date
If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

### TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number     _BA00018574_

Type of Complaint (Item 4: Code 01-75)     _3_     _3_

Cause of Complaint (Item 5: Code 01-30)     _0_     _B_

Type of Response (Item 6a: Code 01,02,08 or 09)     _0_     _8_

70 of 76

At approximately 8:00am on 6/10/20 I submitted a grievance against UTM Bell and the Major for re-taliatory conduct and racial discrimination to the unit team. Since April 2019 I have suffered from lupus symptoms which consists of painful rashes and lesions that's exasperated by sunlight and hot summer temperatures. Corizon is not providing me with medication that has been effective and the only relief I was receiving is from daily showers that UTM Bell revoked on 6/9/20 so I filed a grievance which is my constitutionally protected right.

At approximately 11:00am on 6/11/20 the very next day after I submitted the grievance against UTM Bell, I was informed that UTM Bell ordered that I be moved from A3 to A2 cellhouse. A3 unit team stated they had no idea why I was being moved and no warning that I was being moved, that it was abrupt and sudden. I assert this is directly causal connected to my filing of a grievance against UTM Bell the day before and must be construed as retaliatory conduct in violation of the 1st Amendment and my liberty interest.

In the Restrictive Housing Units (RHU) they have basically two types of cells. On the first tier the celldoors have bars across the front which allow for maximum airflow, especially desired in the hot summer months, and the best behaved inmates are housed in these cells. On the second tier the cell-doors are constructed of solid steel doors across the front that prohibits airflow, designed for dis-ruptive inmates, to provide extra security and where long term ad seg inmates are normally hous-ed. In fact, once an inmate has been removed from long term ad seg status he is moved from the second tier to the first. In A3 cellhouse, I was housed on the first tier and I was not on long-term ad seg status, plus there was a window in front of my cell that provided maximum airflow.

A2 cellhouse is below A3 cellhouse, and due to the high influx of inmates coming and going, it is loud, rowdy, inmates constantly banging on the celldoors, whereas in A3 it is extremely quiet and nobody bangs on the doors. In A2, the cells are filthy with writing/graffito all over the walls, tiers dirty and trashed, whereas in A3 my cell and floor was painted, it was clean and the tiers are clean, waxed and buffed. Inmates are afforded additional property and privileges in A3. The best behaved, non disruptive inmates are moved from A2 to

2.

A3. When an inmate in A3 is disruptive, threatens staff or inmates, or is convicted of several disciplinary infractions, he is immediately moved back down to A2 which is considered regressing.

I have been housed in A3 for over 14 months, not being disruptive, not receiving any disciplinary infractions. My A3 unit team had no idea I was moving or as to the reason, when I inquired. I have only complained about my medical treatment and lack of concern they have over my worsening lupus condition and deliberate indifference. I've asked unit team and mental health daily to assist me with receiving effective medical treatment and my worsening symptoms are obvious when they look at me. The hot summer temperatures exasperates my symptoms and I've been enduring this for over a year with no effective treatment as my condition worsens UTM Bell moved me from a cell where bars allowed for maximum airflow during these 95° to 105° summer temperatures and deliberately placed me behind a solid steel door that has very little airflow knowing this exasperates my lupus, causing my rash to spread worsening my pain as sweat burns my skin and this must be construed as cruel and unusual punishment in violation of the 8th Amendment and my liberty interests. As Unit Team Manager, Bell could have easily moved an inmate in A2 that had a cell with bars and given me their cell but he chose to place me behind the door which must be construed as retaliatory.

In A3 there were only (4) black inmates on the entire tier of 25 cells. The racial disparity in A3 to A2 is great with there being more blacks housed on my A2 tier than compared to the entire cellhouse in A3. I was replaced with a white inmate in A3 so there are only (3) black inmates on the entire tier, and the discrimination is obvious. I am dying and suffering from an autoimmune disease that's prevalent in African American and other minorities and UTM Bell housed me in the worst possible cell that exasperates my lupus painful rash and has gone out of his way to inflict adverse conditions upon my physical well-being. Systemic racism clearly exists here and UTM Bell's treatment of blacks must be scrutinized. I have less than 8 disciplinary infractions in over 30 years yet UTM Bell refuses to remove me from high profile status and not one white inmate is under the same scrutiny or status. In A3 I had a black unit team who tried to genuinely help me with my medical ineffectiveness and talked to me at least

3.

three times a week to check on me but UTM Bell has a white unit team assigned to me now who refuses to stop at my cell unless I submit a Form 9 the day before. My black unit team approved me for showers albeit I did "not" request it and UTM Bell denied it and I can't get a sample pillow in A2. These actions by UTM Bell violates the equal protection of the 14th Amendment. The fact they refused to answer my Form 9 as to why I was moved proves there's unscrupulous motives behind it. Also, several cells with bars have been vacated and filled, like 108 in A2 by a white inmate, and the fact UTM Bell knowing my medical condition still refuses to move me from behind the solid door exhibits deliberate indifference to my medical needs and supports my claim that his actions are retaliatory, and filled with vitriol in violation of the 1st and 8th Amendment.

UTM Bell's adverse action occurred one day after filing a grievance against him and "temporal proximity alone may be significant enough to constitute direct evidence of retaliatory motive. Muhammad v. Close 379 F.3d 413, 417 (6th Cir. 2004). "Circumstantial evidence of retaliatory motive is sufficient." Smith v. Maschner, 899 F.2d 840, 947 (10th Cir. 1990); Bennett v. Goord 343 F.3d 133, 138 (2d Cir. 2003)

UTM Bell's abuse of discretion to house me in worsening conditions instead of progressing me toward or upgrading my classification status supports a retaliation claim. Mackwell v. Roberts, 909 F.2d 1203, 1204 (8th Cir. 1990) held "unfavorable classifications, worsening living conditions supports a retaliation claim." Price v. Wall 428 F. Supp. 2d 52,56 (D.R.I. 2006) held "allegation of retaliatory refusal to upgrade classification stated a claim."

"Whether the retaliation takes the form of property or privileges does not matter." DeTomaso v. McGinnis, 970 F.2d 211, 214 (7th Cir. 1992). UTM Bell's denial and interference of medical recommendations for daily showers supports a retaliation claim, Davis v. Goord 320 F.3d 346, 353 (2d Cir. 2003).

It must be noted that the Warden on 4/20/20 overrode the Major and UTM Bell's orders to have me restrained in regular extra length cuffs contrary to medical orders which I had to endure again on 6/14/20 in A2 once again and the causal connection is apparent supports retaliation claim.

 Erickson 6/21/20

*13 of 16*



**Kansas**
Department of Corrections
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS  67504-1568

Phone: (620) 625-7265
Fax: (620) 728-3476
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

Date:       07/01/2020

To:          Grissom, Richard #33728 (A2-221)

Subject:   Grievance

From:       B. Graff UTS

Hutchinson Correctional Facility

**FINDING OF FACTS:**  You submitted a grievance concerning what you believe to be retaliatory conduct and racial discrimination in regards to your movement within RHU.

**CONCLUSIONS MADE:**  I have reviewed your grievance and the attached form-9.  As stated in the original response, the decision to move your housing assignment was made well before you filed a grievance on UTM Bell and the Major, and was not done so as a retaliatory measure.  As has been stated, any RHU offender can be housed in a cell with either style door.  The cell you were placed into was the available cell at the time of your movement, and you are able to request consideration for movement to another type of cell through your unit team.  You are incorrect in your belief that there are any additional property or privilege restrictions due to your move as all RHU units fall under the same allowable property and unit housing rules.  As has been stated, your ability to address your medical conditions and your access to medical services has not changed with this move.  Any offender's race has no bearing or impact on movement or housing placement, nor is it a factor that is considered by unit team in making classification decisions. UTM Bell did not dictate your specific placement within A2 as has been indicated as you were placed into a cell that was available, therefore making your claim invalid that he was attempting to inflict adverse conditions upon you.  The race of your previous or current unit team does not matter as both will fulfill the duties of their position.  You were not moved due to any retaliatory conduct or racial discrimination, but rather due to your actions of continued attempts to manipulate facility staff members.

**ACTION TAKEN:** None warranted.  If you are unsatisfied by the Unit Team's response, you may forward this grievance to the Warden's office within three calendar days of your receipt of it.

**KANSAS DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST TO STAFF MEMBER**

Form 9
For Cellhouse Transfer
Work Assignment
Interview Requests

Last Name Only: GRUBBM

JUL 07 2020

Number: 33728

To: Debra Lundry RN - Medical Administrator   Date: July 5, 2020
(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.) *I have Frankitin (?) Manica Pedalli recommends flagnenil but if now that "month later" it improves lunas symptoms. I have been taking Flagnenil for 3 weeks and my condition continues to worsen. I've turned in numerous sick calls about the pain furnish skula dizziness iressant machening itching and eruptions of rashes that resembles alligator skin but medical does nothing. (When the next for medical treatment is obvious medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference – Ancena v Oahs 44 F3d 675 (7th Cir 2015) Medical has openly admitted they don't know which to do yet despite my repeated request to see a specialist I've been denied (Denial access to medical personnel with the necessary specialized expertise constitutes deliberate indifference – Mata v Saiz, #27*

Work Assignment: _____   Living Unit Assignment: A2-221

Comment: _____   Detail or C.H. Officer: _____

Disposition: *§ 3d 745 (10th Cir 2005). Meanwhile I've been forced to suffer the painful symptoms without any relief to effective treatment (Unnecessary prolonged pain and suffering satisfies the deliberate and serious standard – Kikumura v Osagie, 161 F 8d 1269 (10th Cir 2006) the extreme heat of my cell and hot summer temperatures exasperates my condition and now over 80% of my body is covered in scares of inflamed skin and scaring. Medical, mental health, unit team and staff have all visually seen the worsening progression of my symptoms up close and despite*

To: _____
(Name & Number)

Date: _____

Disposition: *my numerous complaints to them I am ignored or told they'll pass it on but nothing is being done this violates the 8th Amendment against cruel and unusual punishment and my Liberty interests. I suffer 24 hours a day in pain and itching with no relief or effective treatment.*    [signature] GRUBBM 7/5/20

P-0009

_____
Employee's Signature

To be returned to inmate.

# Rapid Memo

To: Gnsson, Richard

Gnsson 33728, A3-129

Date: 9/2/20

Subject: Showers

○ Confidential  ○ High Priority  ○ Proprietary  ○ Shred

You will get showers as DOC schedules them. Medical will not order a daily shower

CRYUM

Form 9

For Cellhouse Transfer _____
Work Assignment _____ Informal Resolution
Interview Requests _____

**KANSAS DEPARTMENT OF CORRECTIONS**

**OFFENDER REQUEST TO STAFF MEMBER**

Last Name Only  GRISSOM

Number  33728

To: CCI Benford
(Name and Title of Officer or Department)
Date: June 1, 2020

State completely but briefly the problem on which you desire assistance. (Be specific.)

Over 11 days ago I was informed by HCF they had run out of options and knowledge on how to effective-ly treat my lypus and would consult with doctors. My rash and lesions have multiplied exponentially across my face, buttocks, chest, arms, hands, back, neck and face. The increase in temperatures has exasperated my symptoms and the incessant itching is maddening making sleeping difficult. The only brief relief I get is when I shower three times per week. I have not been administered any medical relief for over 18 plus days and counting. I have requested to be seen by a specialist

Work Assignment: _____    Living Unit Assignment: A3,138

Comment: _____ [signature] 6/1/20   Detail or C.H. Officer: [signature]

Disposition: Several times in the past to no avail. I have been suffering for 18 days and counting without reprieve and exhibits deliberate indifference to my serious medical needs in violation of the 8th Amendment and my liberty interests by Corizon. This also effects my psychological health as well as physical well being.

To: Grissom 33728
(Name & Number)
Date: 6-5-2020

Disposition: Okay, 11-7 I will conduct your daily shower as well as your request. To be seen by a specialist as well as your transfer will be reviewed soon. (showers will start 6/7/2020) [crossed out] the officers have been notified [crossed out]

[signature]
Employee's Signature

update: I [crossed out] was informed the doctor is not

P-0009                                    To be returned to offender.



# Kansas

Department of Corrections
Hutchinson Correctional Facility



Phone: (620) 625-7238
Fax: (620) 728-3473
HCF@ks.gov
www.doc.ks.gov

P.O. Box 1568
Hutchinson, KS 67504-1568

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

DATE:       4/20/2020

TO:         Grissom, Richard #33728
            A3-138

SUBJECT:    Grievance #BA00018497

FROM:       Dan Schnurr, Warden
            HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACTS:**  In your grievance forwarded from Central Office to my office, you claim that facility staff is not following medical orders requiring large double cuffs with double cuffing.

**CONCLUSIONS MADE:**  The directive to security staff was to eliminate all double cuffing in Restrictive Housing, as it was not necessary due to the new restraints.  The new restraints issued in Restrictive Housing had extra links to eliminate double cuffing.  Due to your double cuffing order, the officers followed this directive.

When looking into your concern, it was determined that the new restraints issued in Restrictive Housing had extra links to eliminate double cuffing, however, the larger cuffs do not have the extra links.

Communication has been sent out to Restrictive Housing staff to clarify the new restraints.  It has been communicated that you should be double cuffed when restrained, using the larger cuffs around the wrist.  UTM Bell has informed you of this information.

Continue to work with your current counselor, CCI Benford and/or UTM Bell to address your issues within the cell house, as they are more than capable in addressing your concerns.

**ACTION TAKEN:**  None warranted. Again, this will be my final answer to you on this matter. Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

DS/JB
cc:  Unit Team Manager

*2 of 5*

## APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

Inmate Name: _GRISSOM, R_                     Facility: _HCF_

Inmate Number: _33728_            Grievance Serial No.: _BA 000 18497_

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator is bypassed.)

MAIL TO:   Kansas Department of Corrections          Date Mailed: _4/30/20_
           714 SW Jackson
           Suite 300
           Topeka, KS  66603

*DOC Facility Management Area*
*RECEIVED*
*MAY 07 2020*

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you believe the Secretary should take.  (Use extra paper as needed.)

*(see attached)*

_____ 4/30/20
Signature of Inmate

---

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned with 20 days)

If applicable – Confidential File No. _____

Date Received in Office of Secretary of Corrections: _____

Date of Final Answer: _____     Date Sent to Inmate: _____

Finding of Fact:

Conclusions Made:

Action Taken:

_____
Signature of Secretary of Corrections

---

**For D.O.C. Staff Use Only**

Type of Response (Item 6b:  Code     01, 02, 08 or 09) _____

DC 090, Effective May 1, 1988

The Warden ignored the fact that I repeatedly complained that I was medically approved for "large" sized cuffs to UTS Roach who attempted to have UTM Bell come talk to me in person but he refused to do so even after perusing my 5/23/18 grievance over the same issue. The Warden also ignored the fact that CSI Ashford even brought the "large" and the regular sized cuffs with extra links to my cell on 3/5/20 and he still refused to use "large" sized cuffs. Clearly they were aware that I required "large" sized cuffs yet they intentionally and knowingly forced regular sized cuffs on me. Every officer who attempted to place me in the regular sized cuffs with extra length had extreme difficulty in doing so and it was obvious that I required larger cuffs.

CSI Ashford and UTM Bell refused to listen to officers and unit team subordinates germane to my medical approval for large sized cuffs and numerous complaints issued by me. Common sense was ignored and their abuse of discretion to ignore my pain resulted in a pulled shoulder muscle and wanton pain (3x) separate times. I attempted to resolve the issue before I was restrained (2) days prior to the first incident of excessive force. CSI Ashford and UTM Bell were well aware of the fact that the larger cuffs are at least 3/4"-1" bigger in diameter than regular cuffs and that the larger cuffs did not have extra links so it's absurd for them to justify placing me in smaller, regular sized cuffs. CSI Ashford and UTM Bell should have been reprimanded for being so obdurate and this could have all been avoided if they would not have abused their discretion, refused to talk to me, or ignored my medical orders. Thus, their actions of deliberate indifference must be construed as intentional, malicious and violates the 8th Amendment and my liberty interest.

Respectfully Submitted 4/30/20

Richard Grissom  #33728

4 of 5

Actual Dimensions



Large Cuffs

2 ¾"

Inner Circumference

4"

Regular Cuffs

2"

2 ⅞"



Excessive Pain To Tendon Here

Tight Circumference

Regular Cuffs

exhibit 1.

Case 5:23-cv-03260-HLT-ADM   Document 31-1   Filed 08/14/24   Page 92 of 127

Inmate:    0033728 A  GRISSOM,RICHARD,JR          Current Loc: A 02 AA3202
Classification Date: **05 10 2018**

(230) .. Smoker X Nonsmoker

(231) Living unit assignment:
         N Bottom bunk

         N No stair climbing
         N Wheelchair accessible
         .. Other:
             Needs double cuffing and larger cuff size..................

                                                                  **Bottom**

F3=Exit   F12=Previous Screen



*10 of 11*

*BA-000-18595*
*re Medical*
*condition*
*& Lupus Misdiagnosis*

**KANSAS**
Department of Corrections

AD ASTRA PER ASPERA

714 S.W. Jackson St., Suite 300
Topeka, KS 66603

Phone: (785) 296-3317
Fax: (785) 296-0014
kdocpub@doc.ks.gov
doc.ks.gov

Jeff Zmuda, Secretary

Laura Kelly, Governor

*Exh*

## Grievance-Response on Appeal

**FACILITY:** Hutchinson Correctional Facility

*A2-129*

**OFFENDER:** Grissom, Richard #33728

**GRIEVANCE NO:** BA00018595

**DATE:** 9/14/2020

### COMPLAINT:
The concerns regard a rash.

### FINDINGS OF FACTS BY CLINICAL REVIEWER:
The Kansas Department of Corrections Medical Health Authorities reviewed the correspondence, site response, and EHR. The offender had a telemedicine visit with a dermatologist who recommended a serum protein and a rheumatology appointment. The dermatologist was concerned that there might be scleromyxedema associated with connective tissue disease. Tests on specific proteins were completed and results varied.

### CONCLUSIONS MADE BY CLINICAL REVIEWER:
Recommend the health care team refer the offender to rheumatology and hematology.

### ACTION TAKEN:
Recommendations have been forwarded to Centurion's Regional Medical Director.

**Doug Burris**
**Secretary of Corrections Designee**

CC:    Warden
       Centurion's Regional Medical Director
       Site H.S.A.
       GRISSOM, RICHARD #33728
       File
The original response on appeal and all attached documents were mailed by way of United States Mail on _____.

The information provided in the response above concerning the grievant's medical and/or mental health condition and treatment is confidential and private in nature, and is not intended for re-disclosure or sharing with third parties. That statement, however, does not apply to exercise of any other administrative remedies provided by the Kansas Department of Corrections, nor to pursuit of other administrative relief connected with medical and/or mental health condition and treatment, such as, for example, application for disability benefits under state or federal law, or to pursuit of litigation concerning the adequacy or propriety of medical and/or mental health care diagnosis and treatment furnished to the grievant.





# Kansas

**Department of Corrections**
Hutchinson Correctional Facility

P.O. Box 1568
Hutchinson, KS 67504-1568

Phone: (620) 625-7238
Fax: (620) 728-3473
HCFI@ks.gov
www.doc.ks.gov

Jeff Zmuda, Secretary
Dan Schnurr, Warden

Laura Kelly, Governor

*RECEIVED*
*AUG 26 2020*
*DOC Facility Management Area*

DATE:       8/14/2020

TO:         Grissom, Richard #33728
            A2-129

SUBJECT:    Grievance #BA00018595

FROM:       Dan Schnurr, Warden
            HUTCHINSON CORRECTIONAL FACILITY

**FINDING OF FACTS:** In your grievance, you claim that your treatment for skin issues is not being handled properly.

**CONCLUSIONS MADE:** I have reviewed your grievance and Health Services Administrator, D. Lundry's response. I agree with her response.

You have been submitted for a dermatology consult and will be scheduled at the first available appointment pending approval.

I would encourage you to continue to address your medical concerns with medical staff and follow their medical guidance to address your concerns.

**ACTION TAKEN:** None warranted. Again, this will be my final answer to you on this matter. Any subsequent grievances received from you concerning this subject will be returned to you with no further response. You may appeal this decision to the Secretary of Corrections in accordance with applicable regulations that may be found in your Inmate Rule Book.

Dan Schnurr
HCF, Warden

DS/JB
cc: Unit Team Manager

*3 of 11*

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM  3.7.20

## INMATE COMPLAINT

Inmate's Name __GRISSOM, R__    JUN 2 4 2020    Number __33728__

Facility __HCF__    Housing Unit __A2-221__    Work Detail _____

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).

*(see attached)*

Date this report was given to Unit Team for informal resolution (to be completed by inmate). __7/29/20__ *RDr.G.*

## UNIT TEAM RESPONSE (Complete and return to inmate within 10 calendar days.)

See attached from medical.

__B.A.__ _____    __8/3/2020__
Unit Team Signature    Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__✓__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). __8/6/2020__

__R.D. Grissom__ 8/5/20 _____    _____
Inmate Signature    Date

## WARDEN RESPONSE (Complete, attach response and return within 10 Working days.)

Date Received __8-10-20__    Date of Final Answer __8-14-20__    Date Returned to Inmate _____

_____    _____    _____    _____
Inmate's Signature    Date    Unit Team Signature    Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

## TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number __BA00018595__

| | | |
|---|---|---|
| Type of Complaint (Item 4: Code 01-75) | O | 2 |
| Cause of Complaint (Item 5: Code 01-30) | O | 4 |
| Type of Response (Item 6a: Code 01,02,08 or 09) | O | 8 |

In April 2019 I began suffering from a rash across my face, back and neck. The only thing that would reduce the swelling and pain was hot water or hot compress. It was later determined that I had lupus. In November 2019 I requested blood and urine tests because I knew that biomarkers would pinpoint exactly which antibody was causing my symptoms but no blood tests were taken.

I was prescribed prednisone but as soon as my prescription ended, the rash returned. I got shingles and was prescribed prednisone again. I was later prescribed prednisone a third time and when my rash returned the HCP stated that she did not know what to do. I requested to see a specialist numerous times to no avail. I have not been seen by HCP since.

I have been repeatedly told that my case is being discussed with Dr. Monir but nothing is prescribed to treat my painful symptoms. Over a month ago I was prescribed hydroxychoroquine but it's been ineffective as my symptoms worsen. Ten days ago my body was 80% covered in a rash and now it's 90% plus and getting worse.

Lupus can cause death. For the past couple of months I've had to endure incessant itching from painful rashes spreading all over my body that's maddening and makes sleeping difficult. I also have joint pain. I have been suffering with no effective treatment and I'm miserable.

Deliberate indifference to a serious medical need constitutes cruel and unusual punishment in violation of the 8th Amendment. I've repeatedly talked to mental health to the point they no longer stop by. I've been told for months medical is working on it but I'm not receiving any effective treatment as I suffer and my condition worsens. I need effective medical treatment.

Respectfully Submitted

5 of 11                    Clinic
                           AZ-129

## KANSAS DEPARTMENT OF CORRECTIONS

## HUTCHINSON CORRECTIONAL FACILITY

## INTERDEPARTMENTAL MEMORANDUM

**GRISSOM, RICHARD  # 33728**              **DATE: 7/30/2020**

**SUBJECT:** Grievance received 7/24/2020        **FROM:** Debra Lundry RN,HSA

**FINDING OF FACT:**  I have received your grievance with complaints regarding your TREATMENT FOR YOUR SKIN AND LUPUS ISSUES.

Mr. Grissom you have been submitted for a dermatology consult.  Pending approval it will be scheduled first available appointment.  Results of the labs testing DNA for determination of lupus was negative.  So in one test was positive one neg.  I can sympathize with you the time it has taken to come to a resolution of your condition.  Your case is being reviewed by the Regional office and they will help determine where to proceed from here.  I have also responded to your Central Office Grievance with 17 page report that will list all past treatment and the results of that treatment along with all Medication logs and Lab testing.

Debra Lundry RN HSA

*6 of 11*

## APPEAL OF GRIEVANCE TO SECRETARY OF CORRECTIONS

Inmate Name: _GRISSOM,   R_                    Facility: _HCF_

Inmate Number: _33728_          Grievance Serial No.: _BA0001B595_

(Attach grievance report with Principal Administrator's response or explanation why Principal Administrator
is bypassed.)

MAIL TO:     Kansas Department of Corrections          Date Mailed: _8/21/20_
             714 SW Jackson
             Suite 300
             Topeka, KS  66603

---

Tell the Secretary what you feel the Principal Administrator should have done, and state what action you
believe the Secretary should take.  (Use extra paper as needed.)

*(see attached)*

_____
Signature of Inmate

---

**DECISION BY SECRETARY OF CORRECTIONS** (to be completed and returned with 20 days)

If applicable – Confidential File No. _____

Date Received in Office of Secretary of Corrections: _____

Date of Final Answer: _____       Date Sent to Inmate: _____

Finding of Fact:


Conclusions Made:


Action Taken:




_____
Signature of Secretary of Corrections

---

**For D.O.C. Staff Use Only**

Type of Response (Item 6b:  Code     01, 02, 08 or 09) _____

DC 090, Effective May 1, 1988

The Warden completely ignored the fact that in 2019 I was "misdiagnosed" by HCF medical as having lupus, so all treatments were ineffective and actually exasperated my symptoms. Recently medical finally performed blood tests that I'd requested in November 2019 and discovered that I do "not" have lupus and medical has no idea what is wrong with me or how to treat my symptoms.

For over a year plus I have endured painful rashes and incessant itching that's maddening... and I continue to suffer with no reprieve. For over a year plus I have requested to see a specialist repeatedly to no avail... and now I must wait months for approval and an appointment. For over a year plus I have received medical treatment that was ineffective... and now medical provides "no" treatment as I continue to suffer painful rashes and incessant itching with no reprieve.

Clearly HCF medical staff are incompetent and exhibiting deliberate indifference to my serious medical needs. The Secretary needs to expedite my transfer to a different facility where I will receive proper medical treatment, and an accurate diagnosis. IMPP 10-122D provides: "Health care services shall be provided to offenders from admissions to the Department through discharge from incarceration to meet their serious medical, dental and behavioral health needs." Thus, KDOC is responsible and liable for any adverse effects caused by the delay or misdiagnosis in treatment by medical that's could have been prevented by competent medical staff, and violates the 8th Amendment protection against cruel and unusual punishment and my Liberty interests.

_R. Gholston_  8/21/20

In April 2019 I began suffering from a rash across my face, back and neck. The only thing that could reduce the swelling and pain was hot water or hot compress. It was later determined that I had lupus. In November 2019 I requested blood and urine tests because I knew that biomarkers could pinpoint exactly which antibody was causing my symptoms but no blood tests were taken.

I was prescribed prednisone but as soon as my prescription ended, the rash returned. I got shingles and was prescribed prednisone again. I was later prescribed prednisone a third time and when my rash returned the HCP stated that she did not know what to do. I requested to see a specialist numerous times to no avail. I have not been seen by HCP since.

I have been repeatedly told that my case is being discussed with Dr. Monir but nothing is prescribed to treat my painful symptoms. Over a month ago I was prescribed hydroxychloroquine but it's been ineffective as my symptoms worsen. Ten days ago my body was 80% covered in a rash and now it's 90% plus and getting worse.

Lupus can cause death. For the past couple of months I've had to endure incessant itching from painful rashes spreading all over my body that's maddening and makes sleeping difficult. I also have joint pain. I have been suffering with no effective treatment and I'm miserable.

Deliberate indifference to a serious medical need constitutes cruel and unusual punishment in violation of the 8th Amendment. I've repeatedly talked to mental health to the point they no longer stop by. I've been told for months medical is working on it but I'm not receiving any effective treatment as I suffer and my condition worsens. I need effective medical treatment.

Respectfully Submitted

_____ Grissom

*// of //*     *Clinic*

*A2-129*

## KANSAS DEPARTMENT OF CORRECTIONS

## HUTCHINSON CORRECTIONAL FACILITY

## INTERDEPARTMENTAL MEMORANDUM

**GRISSOM, RICHARD  # 33728**            **DATE: 7/30/2020**

**SUBJECT:** Grievance received 7/24/2020      **FROM:** Debra Lundry RN,HSA

**FINDING OF FACT:**  I have received your grievance with complaints regarding your TREATMENT FOR YOUR SKIN AND LUPUS ISSUES.

Mr. Grissom you have been submitted for a dermatology consult.  Pending approval it will be scheduled first available appointment.  Results of the labs testing DNA for determination of lupus was negative.  So in one test was positive one neg.  I can sympathize with you the time it has taken to come to a resolution of your condition.  Your case is being reviewed by the Regional office and they will help determine where to proceed from here.  I have also responded to your Central Office Grievance with 17 page report that will list all past treatment and the results of that treatment along with all Medication logs and Lab testing.

Debra Lundry RN HSA

## KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW

| ☐ INITIAL | ☐ WEEKLY | ☒ MONTHLY | ☒ 180 DAY | ☐ YEARLY | ☐ BMU |
|---|---|---|---|---|---|

| Name: Grissom, Richard | DOC# 33728 | Date: 9-6-2022 |
|---|---|---|

| Date of placement: 3/18/2019 | Location: EDCF ACH | Current Cell Location: A1-134 |
|---|---|---|

| IMPP Segregation Status: | IMPP 20-104 IB () OSR | Inmate Appeared?  Yes ☒   No ☐ |
|---|---|---|

## SEGREGATION PLACEMENT/RETENTION FACTS:

| Date | Facts | Source | Location |
|---|---|---|---|
| 1-18-18 | Facts: Offender Grissom, Richard (KDOC#33728) while housed as general population in A1-264 at EDCF-C was involved in a physical altercation with CSI Palm. During the process of CSI Palm searching offender Grissom's Native American materials in his medicine bag, offender Grissom refused his directives and his resulting orders to be restrained. Offender Grissom then exited the cell grabbed CSI Palm's upper body with one hand and began striking several him with a closed fist in the stomach. After striking the officer, Grissom then physically picked the officer up under by the legs as if considering throwing over him over the 200 run hand railing. Due this incident, another offender attempting to aide Grissom which resulted in his commission of four additional staff batteries. Offender Grissom was placed on Other Security Risk status to prevent further disruption and for both his and other staff member's safety. Due to the amount of injury inflicted in this incident and the disruption created to facility operations, offender Grissom is recommended for transfer to HCF for long term Seg Placement. This placement is to maintain the safe and secure operation of the El Dorado Correctional Facility. | | |
| 3-15-2019 | DR for Fighting DR#19-03-109 and Dangerous Contrand (3 homemade weapons) | OMIS | EDCF |
| | | | |

## SUMMARY OF CURRENT BEHAVIOR:

| Date | Summary | Location |
|---|---|---|
| 3/23/22 | Offender chose to attend RHRB | EDCF B |
| 4/14/2022 | Resident chose to attend RHRB | EDCF B |
| 5/13/2022 | Resident chose to attend monthly RHRB | EDCF C |
| 6/28/2022 | Resident chose to attend monthly RHRB | EDCF A |
| 7/12/2022 | Resident chose to attend RHRB | EDCF A |
| 9-6-2022 | Resident chose to attend monthly RHRB | EDCF A |

**INMATE'S COMMENTS:** Resident does request to move to A2 and become a porter.  He did request a transfer to LCMHF.  Resident did talk about a custody exception that we will review with Administration.

| Return to General Population? | Transfer to other facility? | Programs recommended? | Change in status? |
|---|---|---|---|
| Yes ☐   No ☒ | Yes ☐   No ☒ | Yes ☐   No ☒ | Yes ☐   No ☒ |

**REASONS FOR RECOMMENDATIONS:** RHRB would like to request an unrestrained custodial job for this resident at this time.   He will maintain AS/OSR placement. .

| BHP Clinical Staff (Retain ☒ Release ☐) Comments: | CSII C Austin Security Staff ( Retain ☒ Release ☐) Comments: | UTM Buchanan Classification Staff (Retain ☒ Release ☐) Comments: . |
|---|---|---|

## PMC REVIEW/SIGNATURES

| PMC Member  (Retain ☐ Release ☐) Comments: _____ | PMC Member (Retain ☐ Release ☐) Comments: _____ | PMC Member (Retain ☐ Release ☐) Comments: _____ |
|---|---|---|

## DEPUTY SECRETARY REVIEW

Deputy Secretary, Facility Management          Retain ☐     Release ☐   Date_____

*l of 5*



**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

*APPEAL TO THE WARDEN*

GRISSOM
**Last Name Only**

### KANSAS DEPARTMENT OF CORRECTIONS

33728
**Number**

### INMATE REQUEST TO STAFF MEMBER

To: UTM Wildermuth                     Date: July 7, 2021
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

Plaintiff is appealing HCF's Classification Administrator Bell's decision to transfer him to LCF's long term segregation instead of general population. On 5/28/21 a lawsuit was executed against CA Bell and the following week Plaintiff was transferred to LCF on 6/2/21 and must be construed as retaliation. Plaintiff was recommended for release to gen pop unanimously by RHU Board, HCF Deputy Warden, Warden and the Deputy Secretary of Corrections in 2019 and 2020 respectively. Now Plaintiff is being housed where the worst of the worst are confined. This violates the 8th and 14th Amendment and his liberty interest and is retaliatory.

Work Assignment: _____    Living Unit Assignment: A2-105

Comment: _____    Detail or C.H. Officer: _____

Disposition: _____

To: Grissom #33728                     Date: 7.8.2021
(Name & Number)

Disposition: Not sure what you are wanting me to do w/this paperwork. Per our discussion in Seg review. You will be in A2 a minimum of 4 months, however, we (Major Ball myself & EAI) will advocate for your release to GP when you reach that 4 month mark. We cannot do anything until then.
                              —UTM Wildermuth
Employee's Signature

P-0009                                **To be returned to inmate.**

*Informal Resolution*

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

GRISSOM
**Last Name Only**

**KANSAS DEPARTMENT OF CORRECTIONS**

33728
**Number**

**INMATE REQUEST TO STAFF MEMBER**

To: *UTM Wildermuth*                    Date: *12/22/21*
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

*I have been housed in ad seg for over 1000 days and counting. The Kansas Supreme Court in Jamerson v. Heimgartner ruled that 1000 days in ad seg can constitute an atypical significant hardship, which is my assertion. Plus, I was approved for release over a year ago from ad seg by the Deputy Secretary, Warden and seg review board but instead I was sent to long term without a hearing violating due process protection under the 14th Amendment. I'm requesting release from ad seg due to violation of cruel and unusual punishment (8th) atypical significant hardship and the (14th) due process and my liberty interests.*

Work Assignment: _____    Living Unit Assignment: *A2 - 105*
Comment: _____            Detail or C.H. Officer: _____

Disposition: _____

To: *Grissom #33728*                    Date: *12-23-2021*
(Name & Number)

Disposition: *We are just waiting on Topeka (Central Office) to agree to release you to general population. It is looking promising.*

*Wildermuth UTM*
Employee's Signature                    **To be returned to inmate.**

P-0009

3 of 5

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

*GRISSOM*
**Last Name Only**

### KANSAS DEPARTMENT OF CORRECTIONS

*33728*
**Number**

### INMATE REQUEST TO STAFF MEMBER

To: *USM Wildermuth* _____ Date: *12/22/21* _____
**(Name and Title of Officer or Department)**
**State completely but briefly the problem on which you desire assistance. (Be specific.)**

*Please tell me the full names of the following KDOC administration:*

*Secretary Of Corrections ~ Jeff Zmuda*
*Deputy Secretary Of Corrections ~ Joel Hrabe*
*Seg Review Board EAI ~ ~~Tommie~~ David Haehl ~~David~~ Haehl*

Work Assignment: _____    Living Unit Assignment: *A2-105*

Comment: _____    Detail or C.H. Officer: _____

Disposition: _____

_____

_____

_____

Date: _____

To: _____
**(Name & Number)**

Disposition: _____

_____

_____

_____

**Employee's Signature**

**To be returned to inmate.**

R-0009

4 of 5

KANSAS DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE  SEGREGATION REVIEW (PURSUANT TO IMPP 20-105/106)

C-SEG

XXInitial                    Weekly                    Monthly

Name: Grissom, Richard                    Number: 33728        Date: 7-7-2021

Date placed in segregation: 6-2-2021                    Recommended date of release: N/A

Did inmate appear before board? YES

1.   Present Status: __IMPP 20-104 1, B, (13) Other Security Risk (OSR)__

2.   Return to General Population?
              Yes            XXNo

3.   Transfer to another Kansas facility or another State or Federal facility?
              Yes            XXNo

4.   Medical or Psychological intervention?
              Yes            XXNo

5.   Continue  XX            Modify          program or treatment status?

6.   Inmate informed of right to submit written request for release to board?
              XXYes          No

7.   While in segregation inmate's behavior has been satisfactory?
              XXYes          No

8.   The placement was legal and proper?
              XXYes          No

9.   A pre-segregation placement hearing was held?
              XXYes          No

10.  Board Comments: Inmate Grissom # 33728 was approved by the Deputy Secretary of Corrections,
     Security/Emergency Manager, HCF Warden, and the Director of EAI for Long Term Restrictive
     Housing at Lansing Correctional Facility. Inmate Grissom was admitted on 6-2-2021. Since his
     admission, Inmate Grissom has not received any Disciplinary Infractions or Unstafisfactory Behavior
     marks in his 486 forms. The Segregation Review Board agrees to continue Inmate Grissom on OSR
     status for Long Term Restrictive Housing.

Approved: ___ / Disapproved: _____

Approved: ___ / Disapproved: _____          EAI

Approved: ___ / Disapproved: _____          Security Staff
                                            Chairperson

Approved: ___ / Disapproved: _____          Warden

Inmate acknowledgement
I received a copy of this review on: _____ 20____ At _____

_____
Inmate signature and number

_____
Signature and Title of Staff

5 of 5

KANSAS DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE SEGREGATION REVIEW (PURSUANT TO IMPP 20-105/106)

C-SEG

XXInitial                     Weekly                    Monthly

Name:  Grissom, Richard                    Number: 33728          Date: 9-8-2021

Date placed in segregation:  6-2-2021              Recommended date of release:  N/A

Did inmate appear before board? YES

1.      Present Status:  __IMPP 20-104 1. B. (13) Other Security Risk (OSR)__

2.      Return to General Population?
              Yes              XXNo

3.      Transfer to another Kansas facility or another State or Federal facility?
              Yes              XXNo

4.      Medical or Psychological intervention?
              Yes              XXNo

5.      Continue  XX          Modify          program or treatment status?

6.      Inmate informed of right to submit written request for release to board?
              XXYes              No

7.      While in segregation inmate's behavior has been satisfactory?
              XXYes              No

8.      The placement was legal and proper?
              XXYes              No

9.      A pre-segregation placement hearing was held?
              XXYes              No

10.    Board Comments: Inmate Grissom # 33728 was approved by the Deputy Secretary of Corrections,
        Security/Emergency Manager, HCF Warden, and the Director of EAI for Long Term Restrictive
        Housing at Lansing Correctional Facility. Inmate Grissom was admitted on 6-2-2021. Since his
        admission, Inmate Grissom has not received any Disciplinary Infractions or Unstafisfactory Behavior
        marks in his 486 forms. The Segregation Review Board agrees to continue Inmate Grissom on OSR
        status for Long Term Restrictive Housing.

Approved: _____          Disapproved: _____
                                                                    EAI
Approved: _____          Disapproved: _____
                                                                    Security Staff
Approved: _____          Disapproved: _____
                                                                    Chairperson
Approved: _____          Disapproved: _____
                                                                 for Warden

Inmate acknowledgement
I received a copy of this review on: _____  20 ____  At _____

                                                    _____
                                                    Inmate signature and number

                                                    _____
                                                    Signature and Title of Staff

1 of 3

Then Warden Heimgartner @ EDCF was fired as Warden

Contact/subpoena Sen. Kelly...
get "Board" Members names
contact to attend hear. Co. It was
hearings...

# State auditors will
# review disturbances
# at El Dorado prison

BY Allison Kite
akite@cjonline.com

10-7-17

State auditors will look into what went wrong leading up to an hours-long uprising this summer at El Dorado Correctional Facility after legislators approved an audit Friday.

Sen. Laura Kelly, a Topeka Democrat, said she requested the audit following the multiple reported disturbances at the state prison in El Dorado because she was concerned the Kansas Department of Corrections wasn't being transparent about problems at its facilities. She said she also planned to request an audit of the uprising at Norton Correctional Facility that led to fires and violence and had guards prepared to use lethal force

if necessary.

"Obviously, something went wrong, and that's what I would like post audit to figure out is what went wrong," Kelly said. "Was it staffing issues? What was it that stimulated these incidents?"

Kelly requested the El Dorado audit in July to look at the May and June uprisings at El Dorado. The facility struggles with staffing shortages and high turnover. Gov. Sam Brownback boosted officers' pay by 10 percent to help alleviate the situation. He raised pay at other facilities by 5 percent.

The uprisings have also come as KDOC transfers inmates between facilities.

Kelly said she didn't think KDOC was upfront about the extent of the El Dorado uprising.

"There was no transparency,

**AUDITORS** continues on 14A

---

## Auditors: Norton trouble reported

Continued from 1A

10-7-17

initially, so I just want to verify that when they finally became transparent, that we were getting the whole story and nothing but the story," Kelly said.

Kansas Department of Corrections spokesman Samir Arif said in a statement the department operates a board to review incidents like that at El Dorado.

"The board conducts interviews with inmates and staff who were present during the incident, in order to develop an official record based on facts, rather than conjecture," Arif said. "The department once it is complete and will enthusiastically comply with any information requests from the Legislature."



TIM HRENCHIR/THE CAPITAL-JOURNAL

Kansas Gov. Sam Brownback, right, answers questions along with Corrections Secretary Joe Norwood on Aug. 17 after announcing pay increases for the state's correctional officers.

## Norton trouble reported

Since Kelly's initial request, Norton Correctional Facility became the site of a late-night disturbance that included a fire, smashed windows and injuries to two of officers. KDOC moved 100 inmates out of the facility following the uprising. Kelly said she intended to ask for another audit aimed at that disturbance.

Kansas prisons have been roiled this summer by uprisings amid overcrowding and KDOC's struggle to staff them. El Dorado has the highest turnover rate of any Kansas prison. Norton had been relatively quiet before the September uprising.

Robert Choromanski, executive director of the Kansas Organization of State Employees, has repeatedly called for a special legislative session to further boost officers' pay.

*2 of 3*

*Cline was HCF Warden at time*

*May 2019 PLN*

# Kansas Federal Court Awards Prisoner $250,000 for Guard's Excessive Force *at HCF*

*Exhibit #D*

### by Matt Clarke

On December 7, 2018, a federal district court awarded a Kansas Department of Corrections (DOC) prisoner $250,000 in a lawsuit over a guard's excessive use of force.

Wesley L. Adkins filed a *pro se* civil rights action after he was assaulted by DOC guard Marshal Manning. Manning failed to answer the complaint or otherwise defend himself. The district court granted Adkins' motion for default judgment on the issue of liability and held a hearing on damages. Following the hearing, Adkins was awarded $250,000 in compensatory damages.

In its memorandum and order, the court wrote that Adkins was held in a segregation unit at the Hutchinson Correctional Facility on March 27, 2015 when he went to the morning exercise yard. Prisoners in segregation were allowed to shower each day, but had to sign up on a list. An exception existed for prisoners who went to recreation, who received a mandatory shower after recreation time.

When Adkins finished recreating, the duty officer told him he would be placed on the afternoon shower list. Manning worked the afternoon shift and called out for the showers, but, when Adkins told him he was supposed to be on the list, Manning said he wasn't and refused to let him shower or listen to his attempts to clarify the issue.

Later, Adkins explained the situation to another guard who handcuffed him and led him to the showers. There he encountered Manning, who was argumentative and irritated that Adkins had been allowed to take a shower.

Once Adkins had showered and while he was dressed only in his underwear, the other guard handcuffed him and began escorting him back to his cell. They encountered Manning, a large man known as a mixed martial arts fighter. Surveillance video captured Adkins saying something to Manning, who punched Adkins in the face. Manning then pushed Adkins to the concrete floor, continued punching him, spit on him and placed him in a chokehold. Manning put his foot on a railing to gain leverage and pin Adkins down while choking him.

The other guard ordered Manning to stop, but was ignored. Finally, two more guards arrived and pried Manning off Adkins.

The attack, while brief, caused both physical and emotional injuries. Adkins received medical treatment for abrasions on his face and lip, as well as an ankle injury. Photos taken after the incident showed a thick stream of blood flowing down the side of his face and ear. Adkins was denied an X-ray of his ankle, which was swollen for two days after the attack and, years later, still caused him pain.

Adkins said he also suffered from fear, anguish and anxiety caused by the assault. He submitted a grievance over the incident and was subsequently charged with insubordination and battery in a disciplinary report filed by Manning. He was ultimately acquitted of the disciplinary charges, but spent months housed in a cell with greater restrictions than segregation and had his stay in segregation lengthened due to the charges. Adkins sought mental health treatment for depression, stress and confusion resulting from his being assaulted and then punished despite having done nothing wrong.

Chief U.S. District Court Judge Julie A. Robinson found that the physical and mental injuries caused by Manning's attack when Adkins was "in a truly helpless position" justified an award of the full amount of damages that Adkins requested – $250,000. A bill of costs in the case remains pending. See: *Adkins v. Manning*, U.S.D.C. (D. Kan.), Case No. 5:15-cv-03215-JAR-KGG.

*See also Jackson v. A...
241 F.Supp. 2d 1313 (D. Kan. 2...
See also Speer v. Beardsley, et al.
KS. D. Ct. 9/A #20-CV-3075-SAC*

3 of 3

# Two Kansas Prison Guards Fired, Six Disciplined for Mocking Injured Prisoner and Refusing Her Help

PLN.
April 2024
Pg. 35

On October 17, 2023, a month after a Topeka Correctional Facility prisoner fell and had to crawl back to her cell because guards refused to help her, the Kansas Department of Corrections (DOC) fired two high-ranking guards at the prison and disciplined six others for neglecting her medical needs. No one disciplined was named.

The incident unfolded on September 7, 2023, when Elizabeth Wince fell on the sidewalk before 9 p.m. headcount, according to a fellow prisoner, who mentioned three guards by their last names—White, Crone, and Williams—and said they mocked Wince, calling her fat and lazy. Watching Wince crawl back to her cell, a journey which took a painful two hours, one guard allegedly patted her own knee and called out, "Come on, you can do it."

Between her fall and that crawl, Wince had been denied treatment in the medical clinic. The following day, on September 8, 2023, she was hospitalized after her foot turned black. She then spent several weeks recovering from multiple broken bones in her foot. Meanwhile the guards reportedly attempted to justify their behavior by saying they thought Wince was faking her symptoms. After DOC fired or disciplined those involved, it characterized the guards' behavior as an isolated lapse in judgement. The agency also denied any systemic issues with the prison or its medical care provider, Centurion Health.

DOC tapped Centurion to replace Corizon Health, saying it hoped to improve a poor quality of care that prisoners have long complained about. However, current and former Kansas prisoners say "their medical care threatens their health," as *PLN* reported. [See: *PLN*, Dec. 2023, p.1.]

Wince's fellow prisoners said they were not allowed to help her and would have been disciplined if they had tried, though that didn't stop guards from reprimanding them anyway. Many prisoner complaints allege that guards call prisoners "bitches" and say their mistreatment does not matter because they will "die in here"—prompting at least one prisoner to worry aloud: "Was that intended as a threat?"

Sources: *CBS News, KCUR*

The biggest "in your face problem" is that (in KS) everytime medical care services provider corporations are replaced, is that the new incoming medical care services provider corporation simply rehires the same wretchedly corrupt, inept & arrogantly deliberately indifferent crumbums.

Explore that ugly truth!!

K S A 75-116   1 of 2   Pursue w/ Writ of Mandamus

FOCUS™ Terms cite(75-116)          Search Within Original Results (1 - 1)          Go   Advanced...   View Tutorial

View: TOC | KWIC | Full | Custom
⇦ 1 of 1 ⇨
Book Browse | *Shepardize*®
K.S.A. § 75-116 (Copy w/ Cite)
K.S.A. § 75-116

LexisNexis (R) KANSAS ANNOTATED STATUTES

*** THIS DOCUMENT IS CURRENT THROUGH THE 2010 SUPPLEMENT ***
*** ANNOTATIONS CURRENT THROUGH APRIL 1, 2011 ***

CHAPTER 75. STATE DEPARTMENTS; PUBLIC OFFICERS AND EMPLOYEES
ARTICLE 1. GOVERNOR

⬇ Case Notes

⬇ History

GO TO KANSAS STATUTES ARCHIVE DIRECTORY

K.S.A. §75-116 (2011)

75-116 Employment by the governor of special attorneys and investigators to enforce criminal laws.

The governor of the state of Kansas, is hereby authorized and empowered to employ special attorneys with the powers of assistant attorneys general and such other persons as may be deemed necessary, to fix and determine the compensations of all such persons, to make investigations and to secure evidence relative to violations of the liquor and other criminal laws of the state, and assist in the prosecution thereof, to cause to be made a complete and thorough investigation, in a way and manner and at such times as the governor may deem advisable concerning such violations, a record of the name and post-office address of each person so employed, and the nature and character of his or her employment to be kept by the governor; and each such special attorney so employed is hereby authorized and empowered, as is now provided by law, to summon witnesses, take testimony and perform all acts as may be deemed necessary and advisable in order that a complete and thorough investigation and prosecution may be made.

⬇ History:

L. 1929, ch. 265, § 1; Jan. 26.

NOTES:
RESEARCH AND PRACTICE AIDS:

States 67.

C.J.S. States §§ 58, 66.

LexisNexis (R) Notes:

USA Today 6 23 11

> DALLAS — Texas Gov. Rick Perry signed a law giving $1.4 million to Anthony Graves, 45, who served 18 years for killing six people before a special prosecutor declared him innocent.

⬇ Case Notes:

⬇ Education Law > Funding > Bonds & Other Indebtedness
⬇ Governments > Public Improvements > Financing

⬇ Education Law > Funding > Bonds & Other Indebtedness

1. Kan. Stat. Ann. § 75-116 relates to refunding of bonds by agreement with the owner of the bonds, to whom the refunding bonds, issued in compliance with the general bond law, are to be delivered. State ex rel. Griffith v. Davis, 116 Kan. 211, 225 P. 1064, 1924 Kan. LEXIS 49 (1924).

⬇ Governments > Public Improvements > Financing

2. Kan. Stat. Ann. § 75-116 relates to refunding of bonds by agreement with the owner of the bonds, to whom the refunding bonds, issued in compliance with the general bond law, are to be delivered. State ex rel. Griffith v. Davis, 116 Kan. 211, 225 P. 1064, 1924 Kan. LEXIS 49 (1924).

2 of 2

# Colorado Supreme Court Holds Governor Is Appropriate Defendant in Cases Involving State Constitutional Responsibility

PLN
Jan. 2022  Pg. 50-51

Bing?

THE COLORADO SUPREME COURT HAS decided "that the Governor is an appropriate defendant in cases involving 'his constitutional responsibility to uphold laws of the state and to oversee Colorado's executive agencies.'"

The Court's February 1, 2021, *en banc* opinion was issued in an appeal filed by Gov. Jared Polis (D) to a class action lawsuit that challenged the treatment of transgender women held by the Colorado Department of Corrections (DOC). The named plaintiffs representing the class are seven transgender women currently confined in DOC prisons.

The lawsuit named the governor, DOC, its Executive Director, as well as multiple current and former DOC employees, alleging that the agency's policies discriminate against transgender women by refusing to recognize them as women and thus subjecting them to unreasonable risks of violence, as well as failing to provide necessary accommodations and offering inadequate medical and mental health care.

The governor moved to be dismissed from the suit, arguing he was improperly named as a defendant. The district court denied the motion, concluding that the governor is always an appropriate defendant in a suit challenging implementation of statutes or regulations by Colorado's executive agencies.

51

The governor petitioned for relief under C.A.R. 21. After concluding it had original jurisdiction over the matter, the Colorado Supreme Court analyzed the issue of whether the governor was a proper defendant.

The governor cited *Development Pathways v. Ritter*, 178 P.3d 524 (Colo. 2008) and argued it held the governor may not be sued if some other agency, official, or employee is specifically charged with administration of or compliance with the challenged state law.

The Court found the governor took out of context the statement from *Development Pathways* that "[t]he evaluation of whether a person or entity is a proper party in a lawsuit must be determined in light of relevant facts and circumstances." In that case, it was essential that such a determination be made because it concerned a state commission that was not under the authority of the governor once its members were appointed.

"The circumstances presented by this case are quite different," the Court wrote.

"Here, we are faced with lawsuit challenging the actions of an executive agency that is explicitly under the control of the Governor as the state's 'supreme executive.' As the Governor has final authority over executive directors of state agencies to commence or cease any action on behalf of the state, the Governor was properly named as a defendant." Diff right.

Therefore, the district court's order was affirmed. See: *Raven v. Polis*, 2021 CO 8, 479 P.3d 918 (CO 2021).

Pg. 4 of 5



Attachment A, IMPP 02-118D
Effective 07-01-15

## KANSAS DEPARTMENT OF CORRECTIONS

## CODE OF ETHICS

As an employee, contract personnel or volunteer of the Kansas Department of Corrections, I will value and maintain the highest ideals of professionalism and public service in carrying out my duties and responsibilities.

I will respect the dignity of individuals, the rights of all members of society and the potential for human growth, development and behavioral change. I accept that it is my fundamental duty to serve the public; to safeguard lives and property; and to maintain an environment free of deception, oppression or intimidation, violence or disorder. I will exercise power and authority prudently and within the limits of the law.

I will recognize the fact that I have power over the lives of offenders, and will not abuse that power in any way, including by attempting to establish any form of personal relationship with an offender, or take any other action toward or concerning an offender which advances a personal interest or cause of my own.

I will not sexually abuse or engage in undue familiarity of an offender or an offender on post-incarceration supervision.

I will be constantly mindful of the welfare of others. To the best of my ability, I will remain calm in the face of danger and maintain self-restraint in the face of provocation.

I will treat all persons with respect and dignity, and will not mistreat any person based on that person's race, ethnicity, gender, nationality or religious beliefs. I will not engage in any conduct that results in hostility or offence on the basis of sex, nor in any way improperly introduce any sexual material or activity into the workplace.

I will be honest and truthful. I will be exemplary in obeying the law and following the rules and regulations of the Department. I will promote honesty and ethical behavior over loyalty to individuals. I will immediately report dishonest or unethical conduct or any violation or apparent violation of the Department's rules and regulations.

I will use public funds in a fiscally responsible manner. I acknowledge that I have been selected for a position of public trust. I will constantly strive to be worthy of that trust and to be true to the mission and values of the Department of Corrections.

Signature: _____  Date: _____

Printed Name: _____

Witness: _____

*1 of 2*

*14 exh*

# Neither Fines Nor Lawsuits Deter Corizon From Delivering Substandard Health Care

*March 2020*
*PLN / Pg 24-25 by Matt Clarke*

IN 2018, CORIZON HEALTH WAS THE largest for-profit provider of prisoner health care in the country. It contracted with 534 correctional facilities in 27 states holding about 15 percent of the nation's prisoners. According to the American Civil Liberties Union, Corizon was sued for malpractice 660 times within five years. It was also subject to millions of dollars in fines and penalties by the governmental entities it contracted with — usually for inadequate staffing. Yet the understaffing and substandard health care continues unabated and prisoner deaths continue to mount while Corizon treats fines, penalties, settlements and jury awards as merely a cost of doing business — not as a catalyst for change to providing adequate health care.

Corizon provides prisoner health care for the Kansas Department of Corrections (DOC). Unlike most entities contracting with Corizon, Kansas provided for oversight of Corizon's performance by a third party. The University of Kansas Medical Center (UKMC) reviews a sample of health-care records at DOC prisons each year. Perhaps that is why Kansas has assessed Corizon penalties of $1 million for underperformance and $6.4 million for short staffing between July 2015 and December 2018.

When asked for records about its provision of health-care services, Corizon nearly always refuses to produce them, citing medical privacy issues. However, the records obtained by UKMC are public records that are available with the patient identifiers redacted. That is how the *Kansas City Star* was able to investigate Corizon's health-care services in the DOC.

The *Star* found that the short-staffing penalties were mostly for lack of psychiatrists. Despite almost 20 percent of DOC

prisoners being prescribed psychotropic medications, several prisons went months without reporting any hours worked by a psychiatrist — the person who oversees psychotropic medication and adjusts dosages. Further, prisoners often complained of the same ailment three or four times without being allowed to see a physician or mid-level health-care provider such as a physician's assistant or advanced practice nurse — a violation of the contract that requires an appointment with a health-care provider be scheduled if a prisoner complains of the same ailment twice. The most common type of noncompliance with the contract was referrals to health-care providers taking more than seven days. Often the referrals took weeks or months. The delays in treatment sometimes had deadly consequences.

DOC prisoner Marques Davis, 27, complained for months about growing weakness and numbness in his legs only to have his complaints ignored by Corizon staff. Then he said it felt like something was eating his brain.

Davis was right, but Corizon staff at the DOC's Hutchinson Correctional Facility continued in their belief that he was faking illness as a fungal growth in his brain progressed, causing his vision to blur, his speech to slur, and his cognition to become so disoriented that he drank his own urine. Finally, on April 12, 2017, Davis suffered a heart attack and was taken to the Hutchinson Regional Medical Center. There, a CT scan revealed "dramatic swelling of the brain sufficient to force the upper part of the brain down into the lower part of the brain." The next day he was declared brain dead.

The UKMC records and what happened to Davis show "a clear and consistent pattern of [Corizon] delaying, postponing

or not providing necessary medical treatment," according to Kansas City attorney Leland Dempsey, who is representing the mother of Davis, Shermaine Walker, in a lawsuit against Corizon. "That's what this is showing (and) that's what our lawsuit is all about."

Corizon is paid between $70 million and $80 million to provide health care services to the DOC's approximately 10,000 prisoners. Thus far, fines, penalties, and court awards have not taken a large enough bite out of Corizon's bottom line to cause it to fulfill the terms of its DOC contract.

"Corizon is simply writing off the liquidated damages they're having to pay as the cost of doing business in this state without doing anything meaningful to improve," said Eric Balaban, a senior staff attorney with the American Civil Liberties Union's National Prison Project.

Meanwhile, the *Star*'s review of 42 months' worth of medical documents from the prison where Davis died showed 251 of the 452 charts did not meet the standards of the contract with Corizon. That 29.5 percent rate of noncompliance is similar to the statewide rate the *Star* found. Throughout the DOC, 1,062 of 3,695 charts (28.7 percent) were deficient.

The UKMC documents showed other serious flaws in Corizon's provision of health care. An El Dorado Correctional Center prisoner was given an antibiotic after reporting to the prison infirmary with an infected insect bite on his arm but there was no follow up. A week later, he returned to the infirmary with a severely swollen arm and suspected antibiotic-resistant staph (MRSA), but was not fully assessed. He was sent away without treatment that night. Later that night, he was admitted into the infirmary where he remained for six days due to "complications from MRSA."

A prisoner at Hutchinson had a tooth extracted, but the dentist left part of the tooth in the jaw. He went to the prison infirmary with an infected and badly swollen jaw, but was told that was normal and merely given Ibuprofen. A week later, he had to be taken to an outside hospital for medical care.

An Oregon federal judge recently awarded $10 million to the family of a young women who died of heroin withdrawal after Corizon employees ignored her pleas for medical attention. The Southern Poverty Law Center has a lawsuit pending against Corizon over inadequate medical care in Alabama prisons.

Corizon was formed in a 2011 merger of Correctional Medical Services and Prison Health Services (PHS).

In 2012, a federal court of appeals upheld a jury verdict that PHS had a policy of not sending prisoners outside of prison for medical care except in emergencies without clearly defining what constituted an emergency.

In 2018, an Arizona federal court held Arizona prison officials in contempt because, despite their having fined Corizon $1.4 million, it continued to provide substandard health care in the state's prisons. This is the type of performance that caused Tennessee, Pennsylvania, Maine, Maryland, Minnesota, New Mexico, and New York City to stop having Corizon provide health care for their prisoners. It also is what led to thousands of lawsuits being filed against Corizon, including 660 between 2012 and 2017.

*Sources: kansascity.com, legalreader.com, kansas.com*

## KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW

| ☐ INITIAL | ☐ WEEKLY | ☐ MONTHLY | ☐ 180 DAY | ☒ YEARLY | ☐ BMU |
|---|---|---|---|---|---|

| Name: Grissom, Richard | | DOC# 33728 | Date: 3/23/2022 |
|---|---|---|---|

| Date of placement: 3/18/2019 | Location: EDCF B | Current Cell Location: B2 211 |
|---|---|---|

| IMPP Segregation Status: | IMPP 20-104 IB () OSR | Inmate Appeared?  Yes ☒    ☐ No |
|---|---|---|

### SEGREGATION PLACEMENT/RETENTION FACTS:

| Date | Facts | Source | Location |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

### SUMMARY OF CURRENT BEHAVIOR:

| Date | Summary | Location |
|---|---|---|
| 3/23/22 | Offender chose to attend RHRB | EDCF B |
| | | |
| | | |
| | | |

**INMATE'S COMMENTS: Can I go out to GP here at EDCF?**

| Return to General Population? | Transfer to other facility? | Programs recommended? | Change in status? |
|---|---|---|---|
| Yes ☐    No ☒ | Yes ☐    No ☒ | Yes ☐   No ☒ | Yes ☐   No ☒ |

**REASONS FOR RECOMMENDATIONS:**

| BHP Reed | CSIII Fuoss | UTM Hoepner |
|---|---|---|
| Clinical Staff (Retain ☒ Release ☐ ) | Security Staff ( Retain ☒ Release ☐ ) | Classification Staff (Retain ☒ Release ☐ ) |
| Comments: Placement Facts | Comments:  Placement Facts | Comments:  Placement Facts |

### PMC REVIEW/SIGNATURES

| PMC Member  (Retain ☐ Release ☐ ) | PMC Member (Retain ☐ Release ☐ ) | PMC Member (Retain ☐ Release ☐ ) |
|---|---|---|
| Comments: | Comments: | Comments: |

### DEPUTY SECRETARY REVIEW

Deputy Secretary, Facility Management        Retain ☐     Release ☐    Date_____

Date_____

Copy Received by inmate;

*2 of 12*

## KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW

| ☐ INITIAL | ☐ WEEKLY | ☒ MONTHLY | ☒ 180 DAY | ☐ YEARLY | ☐ BMU |
|---|---|---|---|---|---|

| Name: | Grissom, Richard | | DOC# | 33728 | Date: 9-6-2022 | |
|---|---|---|---|---|---|---|
| Date of placement: | 3/18/2019 | Location: | EDCF ACH | | Current Cell Location: | A1-134 |
| IMPP Segregation Status: | | IMPP 20-104 IB () | OSR | | Inmate Appeared?  Yes ☒ | ☐ No |

## SEGREGATION PLACEMENT/RETENTION FACTS:

| Date | Facts | Source | Location |
|---|---|---|---|
| 1-18-18 | Facts: Offender Grissom, Richard (KDOC#33728) while housed as general population in A1-264 at EDCF-C was involved in a physical altercation with CSI Palm. During the process of CSI Palm searching offender Grissom's Native American materials in his medicine bag, offender Grissom refused his directives and his resulting orders to be restrained. Offender Grissom then exited the cell grabbed CSI Palm's upper body with one hand and began striking several him with a closed fist in the stomach. After striking the officer, Grissom then physically picked the officer up under by the legs as if considering throwing over him over the 200 run hand railing. Due this incident, another offender attempting to aide Grissom which resulted in his commission of four additional staff batteries. Offender Grissom was placed on Other Security Risk status to prevent further disruption and for both his and other staff member's safety. Due to the amount of injury inflicted in this incident and the disruption created to facility operations, offender Grissom is recommended for transfer to HCF for long term Seg Placement. This placement is to maintain the safe and secure operation of the El Dorado Correctional Facility. | | |
| 3-15-2019 | DR for Fighting DR#19-03-109 and Dangerous Contrand (3 homemade weapons) | OMIS | EDCF |

## SUMMARY OF CURRENT BEHAVIOR:

| Date | Summary | Location |
|---|---|---|
| 3/23/22 | Offender chose to attend RHRB | EDCF B |
| 4/14/2022 | Resident chose to attend RHRB | EDCF B |
| 5/13/2022 | Resident chose to attend monthly RHRB | EDCF C |
| 6/28/2022 | Resident chose to attend monthly RHRB | EDCF A |
| 7/12/2022 | Resident chose to attend monthly RHRB | EDCF A |
| 9-6-2022 | Resident chose to attend monthly RHRB | EDCF A |

**INMATE'S COMMENTS:** Resident does request to move to A2 and become a porter.  He did request a transfer to LCMHF.  Resident did talk about a custody exception that we will review with Administration.

| Return to General Population? | Transfer to other facility? | Programs recommended? | Change in status? |
|---|---|---|---|
| Yes ☐   No ☒ | Yes ☐   No ☒ | Yes ☐  No ☒ | Yes ☐  No ☒ |

**REASONS FOR RECOMMENDATIONS:** RHRB would like to request an unrestrained custodial job for this resident at this time.   He will maintain AS/OSR placement. .

| BHP Clinical Staff (Retain ☒ Release ☐) Comments: | CSII C Austin Security Staff ( Retain☒ Release ☐) Comments: | UTM Buchanan Classification Staff (Retain☒ Release ☐) Comments: . |
|---|---|---|

## PMC REVIEW/SIGNATURES

| PMC Member  (Retain ☐ Release☐) Comments: | PMC Member (Retain ☐ Release☐) Comments: | PMC Member (Retain ☐ Release☐) Comments: |
|---|---|---|

## DEPUTY SECRETARY REVIEW

Deputy Secretary, Facility Management        Retain ☐     Release ☐   Date_____

## KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW

| ☐ INITIAL | ☐ WEEKLY | ☒ MONTHLY | ☐ 180 DAY | ☒ YEARLY | ☐ BMU |
|---|---|---|---|---|---|

| Name: Grissom, Richard | | DOC# 33728 | Date: 3-21-23 | |
|---|---|---|---|---|
| Date of placement: 3/18/2019 | Location: EDCF | | Current Cell Location: A2 107 | |
| IMPP Segregation Status: | IMPP 20-104 IB () HO | | Inmate Appeared? Yes ☐ ☒ No | |

## SEGREGATION PLACEMENT/RETENTION FACTS:

| Date | Facts | Source | Location |
|---|---|---|---|
| 1-18-18 | Facts: Offender Grissom, Richard (KDOC#33728) while housed as general population in A1-264 at EDCF-C was involved in a physical altercation with CSI Palm. During the process of CSI Palm searching offender Grissom's Native American materials in his medicine bag, offender Grissom refused his directives and his resulting orders to be restrained. Offender Grissom then exited the cell grabbed CSI Palm's upper body with one hand and began striking several him with a closed fist in the stomach. After striking the officer, Grissom then physically picked the officer up under by the legs as if considering throwing over him over the 200 run hand railing. Due this incident, another offender attempting to aide Grissom which resulted in his commission of four additional staff batteries. Offender Grissom was placed on Other Security Risk status to prevent further disruption and for both his and other staff member's safety. Due to the amount of injury inflicted in this incident and the disruption created to facility operations, offender Grissom is recommended for transfer to HCF for long term Seg Placement. This placement is to maintain the safe and secure operation of the El Dorado Correctional Facility. | | |
| 3-15-2019 | DR for Fighting DR#19-03-109 and Dangerous Contraband (3 homemade weapons) | OMIS | EDCF |
| 9-26-22 | Hired as a cellhouse custodian. | OMIS | File |

## SUMMARY OF CURRENT BEHAVIOR:

| Date | Summary | Location |
|---|---|---|
| 3/23/22 | Offender chose to attend RHRB | EDCF B |
| 4/14/2022 | Resident chose to attend RHRB | EDCF B |
| 5/13/2022 | Resident chose to attend monthly RHRB | EDCF C |
| 6/28/2022 | Resident chose to attend monthly RHRB | EDCF A |
| 7/12/2022 | Resident chose to attend monthly RHRB | EDCF A |
| 9-6-2022 | Resident chose to attend monthly RHRB | EDCF A |
| 10-18-2022 | Resident chose to attend monthly RHRB | EDCF A |
| 11-15-22 | Resident chose to attend monthly RHRB | EDCF A |
| 12-20-22 | Resident chose to attend monthly RHRB at cell door | EDCF A |
| 1-24-23 | Resident chose to attend monthly RHRB | EDCF A |
| 2-21-23 | Resident chose not to attend monthly RHRB | EDCF A |
| 3-21-23 | Resident chose not to attend monthly RHRB | EDCF A |

**INMATE'S COMMENTS: No comments**

| Return to General Population? | Transfer to other facility? | Programs recommended? | Change in status? |
|---|---|---|---|
| Yes ☒  No ☐ | Yes ☐  No ☒ | Yes ☐  No ☒ | Yes ☒  No ☐ |

**REASONS FOR RECOMMENDATIONS: Resident is waiting on a transfer to another facility.** Resident has been DR free since 2019 and has not been a management issue. EAI reports no concerns at this time but request a PC waiver for his release. His hope is to once in general population, be approved for a custody exception so that he may go to a facility where he can gain better employment. **Resident does not want to release at EDCF general population.**

| BHP McKeen Clinical Staff (Retain ☒ Release ☐ ) | CSII Austin Security Staff ( Retain ☒ Release ☐ ) | UTM Buchanan Classification Staff (Retain ☒ Release ☐ ) |
|---|---|---|
| Comments: | Comments: | Comments: . |

## PMC REVIEW/SIGNATURES

| PMC Member  (Retain ☐ Release ☐) | PMC Member (Retain ☐ Release ☐) | PMC Member (Retain ☐ Release ☐) |
|---|---|---|
| Comments: | Comments: | Comments: |

4 of 12

## KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW

| ☐ INITIAL | ☐ WEEKLY | ☒ MONTHLY | ☐ 180 DAY | ☒ YEARLY | ☐ BMU |
|---|---|---|---|---|---|

| Name: | Grissom, Richard | | DOC# | 33728 | Date: 3-19-24 | |
|---|---|---|---|---|---|---|
| Date of placement: | 3/18/2019 | Location: | EDCF | Current Cell Location: | | A2 107 |
| IMPP Segregation Status: | | IMPP 20-104 IB () **HO** | | Inmate Appeared?  Yes ☒ | | ☐ No |

### SEGREGATION PLACEMENT/RETENTION FACTS:

| Date | Facts | Source | Location |
|---|---|---|---|
| 1-18-18 | Facts: Offender Grissom, Richard (KDOC#33728) while housed as general population in A1-264 at EDCF-C was involved in a physical altercation with CSI Palm. During the process of CSI Palm searching offender Grissom's Native American materials in his medicine bag, offender Grissom refused his directives and his resulting orders to be restrained. Offender Grissom then exited the cell grabbed CSI Palm's upper body with one hand and began striking several him with a closed fist in the stomach. After striking the officer, Grissom then physically picked the officer up under by the legs as if considering throwing over him over the 200 run hand railing. Due this incident, another offender attempting to aide Grissom which resulted in his commission of four additional staff batteries. Offender Grissom was placed on Other Security Risk status to prevent further disruption and for both his and other staff member's safety. Due to the amount of injury inflicted in this incident and the disruption created to facility operations, offender Grissom is recommended for transfer to HCF for long term Seg Placement. This placement is to maintain the safe and secure operation of the El Dorado Correctional Facility. | | |
| 3-15-2019 | DR for Fighting DR#19-03-109 and Dangerous Contraband (3 homemade weapons) | OMIS | EDCF |
| 9-26-22 | Hired as a cellhouse custodian. | OMIS | File |
| 8-5-23 | Pending DR for Dangerous Contraband and Dealing and Trading | DR #23-08-0087 | File |

### SUMMARY OF CURRENT BEHAVIOR:

| Date | Summary | Location |
|---|---|---|
| 2023 | Resident attended 4 out 12 RHRB | EDCF |
| 1/23/24 | Resident chose to attend monthly RHRB | EDCF A |
| 2-20-24 | Resident did not attend monthly RHRB | EDCF A |
| 3-19-24 | Resident did attend monthly RHRB | EDCF A |
| | | |

| INMATE'S COMMENTS: So whats up? |
|---|

| Return to General Population? | Transfer to other facility? | Programs recommended? | Change in status? |
|---|---|---|---|
| Yes ☒    No ☐ | Yes ☐    No ☒ | Yes ☐  No ☒ | Yes ☐  No ☒ |

**REASONS FOR RECOMMENDATIONS:** Resident is waiting on a transfer to another facility.  Resident has been DR free since 2019 and has not been a management issue.  EAI reports no concerns currently but request a PC waiver for his release. His hope is to once in general population, be approved for a custody exception so that he may go to a facility where he can gain better employment. Resident has decided this month to release at EDCF general population. **RHRB requests his release to EDCF general population, a PC waiver has been attached.** Resident is max custody.

| BHP Caliendo<br>Clinical Staff (Retain ☐ Release☒) | CSII Austin<br>Security Staff (Retain☐ Release☒) | UTM Buchanan<br>Classification Staff (Retain☐ Release☒) |
|---|---|---|
| Comments: | Comments: | Comments: |

### PMC REVIEW/SIGNATURES

| PMC Member  (Retain ☐ Release☐)<br>Comments: | PMC Member (Retain ☐ Release☐)<br>Comments: | PMC Member (Retain ☐ Release☐)<br>Comments: |
|---|---|---|

March 25, 2022

Dear Warden S.L. Williams,

My name is Richard Grissom and on March 15, 2019 I was placed in the hole at HCF because I "physically assaulted a leader of the SLY Crips as well as SLY Bloods due to them stealing his property. He can no longer live in General Population due to these issues." (see attachment A).

HCF CC1 R. Benford informed me that I would be transferred to "general population" at a different facility and on April 2, 2019 stated that "Lansing and Larned were my two options." (see attachment B).

HCF Seg Review Board on September 27, 2019 recommended release from RHU "and transfer to another facility." Warden Schnurr also recommended release but more importantly "you" also recommended that I be released. (see attachment C) On my Restrictive Housing 360 day Review even the Deputy Secretary of Corrections recommended release on April 16, 2020.

HCF CC1 R. Benford on January 27, 2020 informed me that I was still on the transfer list to general population but was awaiting bed space. (see attachment D).

Then on June 2, 2021 I was sent to Lansing Long Term Restrictive Housing where they did not understand why I was transferred there instead of general population. During my very first Seg Review Board Major Ball, USM Wildermuth and EAI all recommended release to general population. (see attachment E).

On March 22, 2022 I was transferred to EDCF Long Term Restrictive Housing. Captain Gross, USM Hoesner and Mental Health Reed all recommend release as well during my March 23, 2022 Seg Review.

I understand that it maybe difficult for me to live in general population here, especially since both of the individuals were transferred here in 2020 and subsequently were paroled, plus they planted the seed in other gang members mind their rendition of the incident thus, I'm asking that you strongly consider transferring me to Larned since it's the only max facility I have not been housed. The last thing that I want is to end up back in lockdown because somebody here comes after me. I am 61 years old and I

want to do my time peacefully. I would have never engaged in that fight if the gang members hadn't stolen my TV, Radio and other property.

I have been waiting to transfer to general population for over 3 years and even you recommended release during my 180 day review so please assist me in expediting a transfer to Lansing. Also, note that I have 11 points according to UM Hoover but I have no idea if I have low medium custody or if I have to obtain it by exception. If I have medium custody then I can be transferred to other facilities in Kansas.

Thank you for your time and consideration. You do not need to return any of the attachments.

Respectfully,

Ivan Gibson #33728



El Dorado Correctional Facility
1737 SE Hwy 54
P.O. Box 311
El Dorado, KS. 67042

**Kansas**
Department of Corrections

Phone: (316) 321-7284
Fax: (316) 322-2018
www.doc.ks.gov/facilities/edcf

Jeff Zmuda, Secretary
Tommy Williams, Warden

Laura Kelly, Governor

DATE:        4/18/2022

TO:          Grissom, Richard #33728
             B2-211

FROM         T. L. Williams, Warden

SUBJECT:     Your Letter

I apologize for not getting back to you sooner. I have received your letter regarding your restrictive housing placement at HCF, then transfer to LCF and final transfer to EDCF. I do recall our recommendation to release you to the general population back in 2019.

I did not see in your file where you have had any additional disciplinary infractions since March of 2019. I will do some additional checking into your status as it relates to Long Term Restrictive Housing. I will make an appropriate decision based on the additional information I receive.

I hope that I have satisfactorily addressed your concerns.

T. L. Williams, Warden
El Dorado Correctional Facility

TW/tlw/jp:

cc:   file

8 of 12

**TO:   GRISSOM, Richard #33728 (B2-211)**

**FROM:** CMII Brandon Walmsley

**Regards To:** Form 9 requesting release from Restricted Housing

**Date:** 4/01/2022

**Inquired Issue:**
        This is in response to your form 9 you sent to me requesting information about how long you would have to be in Restricted housing.

**RESPONSE:**
        You will be housed in Restricted Housing for at least 30 days.  After this time frame we will re-evaluate your placement.  I am still working with CA Bos, Deputy Warden Call, and Warden Williams on your placement facts and when we can release you.  I would keep in contact with UTM Hoepner on your status and he will update you.

4/01/2022

CMII Brandon Walmsley
Restricted Housing Unit Administrator

INMATE REQUEST TO STAFF MEMBER

To: Urth Ohorburn – (1185 days in ad seg despite recommendations
Date: 6/13/2022
(Name and Title of Officer or Department)   for release by deputy sec.)

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by inmate

*10 of 12*

**Form 9**
For Cellhouse Transfer
Work Assignment _____
Interview Requests

*GRISSOM*
Last Name Only

## KANSAS DEPARTMENT OF CORRECTIONS

*33728*
Number

### INMATE REQUEST TO STAFF MEMBER

To: *CMII Shearburn*                           Date: *6/5/23*
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

*While visiting someone in A2 cell house over 3 months ago you informed me that you were attempting to get me a lower custody exception. Unit team also informed me recently that under the new guidelines I have 8 points. So I was wondering if you submitted me for at least medium by exception? You never responded to my form 9 germane to continued ad seg placement submitted last year?    thank You*

Work Assignment: _____    Living Unit Assignment: *A2-107*

Comment: _____    Unit Team Members Signature: _____

Disposition: _____
_____
_____
_____

To: _____                           Date: _____
(Name & Number)

Disposition: _____
*You are Max due to 10.1 being Marked. The new DSOC is not approving exceptions when non point-based items are marked.*

_____
Employee's Signature

RECEIVED JUN 2 8 2023
RECEIVED JUN 0 8 2023

**To be returned to inmate.**

P-0009b

*11 of 12*

#285205821                       Sep. 28 **23**
                                                   7:37

You are on my list as wanting to go to LSCF. At this time they are not taking anyone. You are approved to go to ERCF GP but you have refused. I will continue to work on a transfer but due to bed space transfers are still a trickle.   CMII Shearburn

Summary Of Request : Transfer to Larned             Sep: 04 **23**
                                                   11:38

To: CMII Shearburn

If you recall, I was released from RHU unanimously in 2019 by the RHRB, Wardens, and Dep. Sec. of Corr. but I was transferred to LCF then here. I have been told repeatedly that I'm still on holdover and still waiting to be transferred to Larned. CMII Lewis told me in July 2022 that I did not need to be in the Step Down Process and he would put me on holdover for transfer and in the meantime make me a porter. Then he told me that he would try to get me medium celstody and you informed me that was not possible recently. Its been over a year since CMII Lewis told me I would be transferred and I'm still in RHU almost 4 years past the date I was recommended for release. Do you have any idea where I am at on the transfer list?

Thank you

N/A

8/22/2022

Subject: Letter dated August 9, 2022

I would recommend going back to the restrictive housing review board. Larned takes all custody levels and their central unit is comprised of residents in max and medium custody. I do not have a transfer request for you to go anywhere at this time. Custody exceptions are reviewed after approved by the facility. The only facilities where medium is the highest custody level is Ellsworth and Norton.

M. Waldock, Classification/Population