IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD GRISSOM,

    Plaintiff,

    v.

JORDAN BELL, et al.,

    Defendants.

Case No. 5:23-cv-03260-HLT-ADM

# ORDER

A jury convicted Plaintiff Richard Grissom[1] of multiple counts of first-degree murder. He is serving a life sentence and is an inmate at the El Dorado Correctional Facility (EDCF) in Kansas. He alleges that Jordan Bell,[2] Daniel Schnurr,[3] and Joel Hrabe[4] violated his First Amendment rights by placing him in either restricted housing or in long-term segregation as retaliation for a prior lawsuit Plaintiff filed against Bell and Schnurr.

Defendants move to dismiss Plaintiff's claims under Rule 12(b)(1) and 12(b)(6). Doc. 15. This motion is fully briefed. Plaintiff moves for leave to amend his complaint to add ten new claims and dozens of new defendants. Doc. 31. The magistrate judge issued a report and recommendation (R&R) recommending that Plaintiff's motion be denied because the amendments are futile. Doc. 33-1. Plaintiff lodges multiple objections, and the objections are fully briefed.

---

[1] The Court is mindful of Plaintiff's pro se status and liberally construes his pleadings and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

[2] Bell is the Classification Administrator at Hutchinson Correctional Facility (HCF).

[3] Schnurr is the Warden at HCF.

[4] The complaint identifies Hrabe as the Deputy Secretary of Corrections-Facility Management.

The Court grants the motion to dismiss. The Court dismisses all Plaintiff's official capacity claims (except one) for lack of subject-matter jurisdiction. The Court dismisses the remaining official capacity claim and all Plaintiff's personal capacity claims as untimely. The Court overrules Plaintiff's objections to the R&R, adopts the R&R, and denies the motion to amend. This case is closed.

I.     BACKGROUND

Plaintiff is an inmate at the EDCF in Kansas. He is serving a life sentence after a state-court jury convicted him on multiple counts (including three counts of first-degree murder) in 1990. He has been housed at EDCF since March 2022. He has been housed at EDCF before but was transferred to HCF in January 2018 for safety reasons. Doc. 1 at 5.

In March 2019, while at HCF, Plaintiff was in an altercation with two inmates. The altercation resulted in Plaintiff's placement in HCF's restrictive housing unit (RHU). *Id.* at 4. Plaintiff was told in April 2019 that he would be transferred out of HCF and placed in a different prison's general population. *Id.* But, many months later, Plaintiff was still at HCF and still in the RHU. *Id.* On January 27, 2020, Plaintiff submitted an administrative form alerting prison officials to this fact. *Id.* Plaintiff received a response explaining that transfers couldn't occur quickly because bedspace was lacking. *Id.*

A few months later, at the yearly review of his housing status on March 13, 2020, it was recommended that he be released into general population. *Id.* He was not. Plaintiff remained in HCF's RHU. Plaintiff filed a grievance against Bell on June 10, 2020. *Id.* at 5. The next day he was moved to a worse cell in RHU; namely, Plaintiff was moved from a cell with bars on it to a cell with a solid door. *Id.* The lack of circulating air in the new cell aggravated Plaintiff's medical condition and resulted in him being placed in the clinic for more than a week. *Id.*

Plaintiff sued Bell, Schnurr, and 18 other HCF staff members shortly thereafter, on June 15, 2020. Doc. 4 at 4. Plaintiff's complaint alleged civil rights violations. Service was not completed until nearly a year later—on May 28, 2021.[5] *Id.* Plaintiff remained in HCF's RHU until June 2021. *See* Doc. 1 at 4-5. Before the defendants were served, Plaintiff filed another administrative form on November 9, 2020. It notified prison officials that he remained in HCF's RHU and had not been transferred despite the prior recommendation. *Id.* at 4. Bell told Plaintiff he would be transferred once the COVID-19 pandemic permitted them to resume transfers. *Id.*

On June 2, 2021, less than a week after Plaintiff served Bell and Schnurr, he was transferred to Lansing Correctional Facility (LCF). Plaintiff was placed in "supermax long-term segregation." *Id.* at 5. Long-term segregation at LCF is where the "wors[t] of the worst" go. *Id.* Placement in long-term segregation at LCF meant Plaintiff could not possess items like a television, sweats, shorts, art supplies, books, a hot pot, a lamp, or a mirror. *Id.* LCF staff also controlled the lights in the long-term segregation unit, which were kept on for 15 hours a day. *Id.*

A required review of Plaintiff's segregation occurred about a month later in July 2021. *Id.* The segregation review board told Plaintiff he did not belong in segregation and recommended a transfer to a different facility and a release into general population. *Id.* Plaintiff had filed an administrative form tied to his segregation. An LCF staff member (Plaintiff alleges a "Unit Team Manager") told Plaintiff that he and several others would "advocate for [Plaintiff's] release to [general population]." *Id.* But Plaintiff remained in segregation.

Several months later, in March 2022, Plaintiff left LCF and was transferred to EDCF even though Plaintiff had been transferred out of EDCF a few years earlier for safety reasons. *Id.* LCF's Warden Shannon Meyer approved the transfer. *Id.* Plaintiff was placed in EDCF's RHU. *Id.*

---

[5] *See Grissom v. Bell et al.*, 5:20-cv-03163-JWB-ADM (D. Kan. 2021) at Doc. 8. This case is closed. The court granted summary judgment in the defendants' favor. *Id.* at Docs. 43-44.

Plaintiff was again recommended for release into general population but remained in RHU. Plaintiff filed this case on December 28, 2023. At the time of filing, he was on holdover status waiting for transfer to another facility and had been in either RHU or long-term segregation since March 2019. *Id.* at 5-6.

Judge Lungstrum screened his complaint under the Prison Litigation Reform Act (PLRA). Doc. 4. He ordered Plaintiff to show cause why certain portions of the complaint should not be dismissed for failure to state a plausible claim. *Id.* at 13. He also gave Plaintiff until February 2, 2024, to file an amended complaint. *Id.* Plaintiff neither responded to the show-cause order nor filed an amended complaint by the February 2 deadline, so Judge Lungstrum dismissed several counts in Plaintiff's complaint. Doc. 9. One count survives. It asserts a First Amendment retaliation claim against Bell, Schnurr, and Hrabe in their official and personal capacities. In April 2024, while this case was pending, Plaintiff was released from RHU at EDCF.[6] Doc. 31-1 at 19.

## II.     ANALYSIS

Defendants move to dismiss Count I under Rule 12(b)(1) and Rule 12(b)(6). This motion is fully briefed. Plaintiff also seeks leave to amend to add new claims and many new defendants. The magistrate judge issued an R&R recommending denial of leave to amend because the proposed amendments are futile. Plaintiff objects to the R&R. The Court first takes up the motion to dismiss and then turns to the motion to amend, the R&R, and Plaintiff's objections.

### A.     Motion to Dismiss

Defendants move under Rule 12(b)(1) and Rule 12(b)(6). The Court starts with the Rule 12(b)(1) issues and its jurisdiction.

---

[6] As explained below, the ultimate result of the Court's jurisdictional analysis does not depend on whether Plaintiff is presently housed in an RHU. The Court nevertheless notes Plaintiff's release because Defendants argue it moots Plaintiff's claims. The Court makes no factual finding concerning Plaintiff's present custody classification.

       1.     Rule 12(b)(1)

**Standing.** Defendants initially contend that the Court lacks subject-matter jurisdiction over Plaintiff's official capacity claims. Defendants explain that Plaintiff lacks standing because he does not show redressability.[7] Federal courts are courts of limited jurisdiction, and a plaintiff bears the burden of establishing a federal court's subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Subject-matter jurisdiction includes standing. *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 594 (10th Cir. 1997). And standing requires the plaintiff to show an injury-in-fact that is traceable to the defendant and that can be redressed through a favorable ruling. *Uzuegbuanam v. Preczewski*, 592 U.S. 279, 285 (2021).

The Court agrees that it lacks subject-matter jurisdiction over the official capacity claims against Bell and Schnurr because Plaintiff doesn't identify an injury capable of redress. As Defendants observe, Plaintiff was housed at EDCF when he filed his complaint. Plaintiff does not allege that a favorable decision regarding his classification will affect Bell and Schnurr. Bell and Schnurr both hold positions at the HCF, and Plaintiff does not allege either man has any control over Plaintiff's classification. As a result, Plaintiff does not allege that a favorable order on his claim for injunctive relief could cure the classification-based injury Bell and Schnurr allegedly caused. Plaintiff lacks standing to bring official capacity claims against Bell and Schnurr, and the Court correspondingly lacks subject-matter jurisdiction.

But the redressability problem underlying the official capacity claims against Bell and Schnurr is not present for the Deputy Secretary of Corrections – Facility Management, the position

---

[7] A motion to dismiss under Rule 12(b)(1) can take two forms: facial or factual. Defendants' redressability argument against Bell and Schnurr lodges a facial attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). The Court therefore assumes the truth of the allegations in the complaint in resolving this challenge. *Id.* But the challenge lodged by Hrabe and the unnamed Deputy Secretary of Corrections – Facility Management is a factual attack because it relies on a fact outside of the complaint. *Id.* at 1003.

Hrabe used to have. Defendants acknowledge that resolution of a claim against someone holding the title of Deputy Secretary of Corrections – Facility Management could at the time the complaint was filed have affected Plaintiff's status. They argue, however, that Plaintiff still fails to show redressability because Plaintiff's official capacity claim against the Deputy Secretary of Corrections – Facility Management is asserted specifically against Hrabe as the person with this title. Defendants explain that, while Hrabe <u>was</u> the Deputy Secretary of Corrections – Facility Management, he isn't any longer and (critically) wasn't at the time Plaintiff filed his complaint.

This shortcoming does not deprive the Court of subject-matter jurisdiction. The problem Defendants identify is one of <u>substitution and party designation</u>. It is not an Article III standing problem. Rule 17 allows a plaintiff to sue public officers in their official capacities by title instead of by name. Fed. R. Civ. P. 17(d). The title alone suffices. And Rule 25(d) allows for automatic substitution when a public officer is sued in his official capacity by name and then leaves the position while the suit is pending. Fed. R. Civ. P. 25(d). True, this suit was not pending when Hrabe left his position, but it's clear from Plaintiff's complaint that the injunctive relief Plaintiff seeks from Hrabe is really just sought from whomever is the Deputy Secretary of Corrections – Facility Management. And the Court is mindful of Plaintiff's pro se status and its obligation to give liberal construction to Plaintiff's complaint. Plaintiff's mistake in suing Hrabe in his official capacity as the Deputy Secretary of Corrections – Facility Management instead of simply the "Deputy Secretary of Corrections – Facility Management" does not to deprive the Court of subject-matter jurisdiction. *See, e.g., Argue v. Burnett*, 2011 WL 976413, at *7 (W.D. Mich. 2011) (finding that the plaintiff's failure to correctly identify "the name of the individual who . . . held [the Correctional Facilities Administration, Special Activities Director] position" when the complaint was filed was "of no consequence"), *report and recommendation adopted by* 2011 WL 976408

(W.D. Mich. 2011). Plaintiff has standing to sue the Deputy Secretary of Corrections – Facility Management for injunctive relief relating to his custody status.

**Mootness.** Defendants also challenge this Court's subject-matter jurisdiction by arguing that Plaintiff's claim is moot.[8] Defendants explain that Plaintiff's post-filing release into EDCF's general population mooted his official capacity claims.[9] The Court disagrees.

A court analyzing mootness essentially asks whether granting the relief the plaintiff seeks will "have some effect in the real world." *Ind v. Colo. Dept. of Corrections*, 801 F.3d 1209, 1213 (10th Cir. 2015). "A case becomes moot when a plaintiff no longer suffers an actual injury that can be redressed by a favorable judicial decision." *Id.* (internal citations and quotation marks omitted). But there's an important qualification to that general statement: "[a] plaintiff's claim [for injunctive relief] is not [mooted] by the voluntary cessation of a challenged practice which the defendant is free to resume at any time." *Id.* at 1214. This makes sense because otherwise a defendant could cease illegal action to moot a lawsuit and then resume the illegal conduct after the lawsuit is dismissed. *Id.* A defendant seeking to overcome this challenge bears a "heavy burden" to show (1) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (internal citation and quotation marks omitted).

Defendants do not address these issues. The record is devoid of any explanation for Plaintiff's release from segregated confinement, which release appears to have occurred shortly

---

[8] Mootness is different from standing; mootness concerns the continued existence of a live case or controversy <u>during</u> the litigation's pendency while standing concerns the existence of a live case or controversy at the <u>time of filing</u>. *Garcia v. Board of Educ. of Albuquerque Public Schs.*, 520 F.3d 1116, 1123 (10th Cir. 2008) (Gorsuch, J.).

[9] This challenge likewise appears to be a factual challenge to subject-matter jurisdiction. *See, e.g., Cheever v. Zmuda*, 2021 WL 1854198, at *2 (D. Kan. 2021) (mootness challenge to § 1983 claims brought by death row inmates based on a change in KDOC policy was factual). But Plaintiff appears to concede this fact in his proposed amended complaint. Doc. 31-1 at 19.

after Plaintiff initiated the present litigation. Defendants do not satisfy their burden, so Plaintiff's claim for injunctive relief is not moot.

### 2. Rule 12(b)(6)

The Court lacks subject-matter jurisdiction over Plaintiff's official capacity claim against Bell and Schnurr but has subject-matter jurisdiction over the official capacity claim for injunctive relief against the Deputy Secretary of Corrections – Facility Management and over the individual capacity claims against Bell, Schnurr, and Hrabe. But the existence of subject-matter jurisdiction is only part of the equation. Jurisdiction over a claim does not mean that the claim is legally cognizable. The claim is still susceptible to dismissal under Rule 12(b)(6).

Defendants lodge a Rule 12(b)(6) challenge to the remaining claims.[10] They argue Plaintiff's remaining claims are untimely and barred by the statute of limitations. The Court agrees. Specially, the statute of limitations for § 1983 claims is tethered to state statutes of limitation for state personal injury claims. *Jenkins v. Chance*, 762 F. App'x 450, 454 (10th Cir. 2019). The accrual date for claims (i.e., the time when the statute begins to run) is a matter of federal common law. *Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022). Kansas's statute of limitations for tort claims is two years. Plaintiff's claims began to accrue when "the plaintiff ha[d] a complete and present cause of action," and could therefore "file suit and obtain relief." *Id*. Plaintiff's action accrued when he "knew or had reason to know of the injury [that is] the basis" of his lawsuit. *Id.* That date was June 2, 2021 (at the latest), which is the date when he was transferred from HCF's RHU to LCF and placed in long-term segregation. But Plaintiff waited

---

[10] The statute of limitations is an affirmative defense. But the Court can dismiss a claim under Rule 12(b)(6) based on this defense if dates in the complaint show that the statute has expired. *Cash v. City of Durant*, 2024 WL 1573947, at *3 (10th Cir. 2024). It's Plaintiff's burden to show that a basis for equitable tolling exists. *Id*.

until December 28, 2023, to file this lawsuit.[11] This time bar is clear from the face of the complaint, and Plaintiff offers no grounds for tolling.[12] Plaintiff's remaining claims are therefore untimely and dismissed.[13]

### B. Motion to Amend.

The final issue is Plaintiff's motion to file an amended complaint. Plaintiff seeks leave to file an amended complaint with ten claims and dozens of new defendants. The magistrate judge issued a R&R recommending that the motion be denied because Plaintiff's proposed amendments are futile. The R&R specifically concludes (1) proposed counts I-III and V-VIII are untimely, (2) proposed counts IV, IX, and XI are too vague to state legally cognizable claims, and (3) the new counts would result in improper party joinder.

Plaintiff objects to the R&R.[14] He contends: (1) this Court's referral of his motion for leave to amend to a magistrate judge was without his consent; (2) the magistrate judge's prior rulings establish she is biased against prisoners; (3) the R&R does not properly construe his proposed amendment liberally as a pro se filing; (4) amended complaints have been allowed in other pro se cases involving prisoners; (5) Plaintiff's segregated confinement was a continuing tort; and (6) the applicable statute of limitations for his official capacity is different from his personal capacity

---

[11] Plaintiff contends the continuing tort doctrine applies and that the correct accrual date for his retaliation claim is later. The Court disagrees. Defendants' alleged First Amendment retaliation was a "definite and discoverable" wrongful act and there is nothing alleged that would have prevented Plaintiff from "coming forward to seek redress." *Kelly v. Schnurr*, 2024 WL 4235123, at *1-2 (10th Cir. 2024). The continuing tort doctrine is therefore unavailable. *Id.*

[12] Even assuming purely for argument's sake a basis for equitable tolling exists, it's Plaintiff's burden to provide it. *See supra* note 10. The Court is not Plaintiff's advocate. *Supra* note 1.

[13] Because the Court dismisses Plaintiff's remaining claims on statute of limitations grounds, it does not address the alternative arguments for dismissal in Defendants' motion. *See* Doc. 15 at 11-12.

[14] Plaintiff objects to the R&R in two separate filings. Plaintiff's objections are technically untimely. The R&R set an October 15, 2024, deadline for objections. But Plaintiff filed his first set of objections on October 18th and his second set on October 30th. The Court nevertheless treats Plaintiff's objections as timely.

claims and is not two years. The Court overrules the objections after a de novo review, adopts the R&R, and denies the motion. *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

**First objection.** Plaintiff's first objection is unpersuasive because referral of a motion for leave to amend does not require his consent. "[U]nder 28 U.S.C. § 636(b)(1)(A), a magistrate judge may rule on certain pretrial matters without the parties' consent." *Gabriel v. Trans Am Trucking Co.*, 2022 WL 3652462, at *2 (10th Cir. 2022). This is what occurred in this case. Plaintiff's motion for leave to amend is one such pretrial matter, and the magistrate judge issued the R&R. Plaintiff's consent is not required. *Id*.

**Second objection.** Plaintiff's second objection is likewise unpersuasive because "judicial rulings alone almost never constitute a valid basis for" a challenge to a judge's bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Plaintiff does not endeavor to show how the magistrate judge's prior judicial rulings might constitute exception to this rule. Nor does he point to anything outside of the record showing impartiality.

**Third and Fourth objections.** Plaintiff's third and fourth objections are likewise flawed. His pro se status allows for a liberal construction, but it does not obligate the Court to allow futile amendments. *Tillotson v. McCoy*, 2010 WL 4810814, at *1 (D. Colo. 2010). Rule 15 is no different. The rule instructs courts to freely grant leave to amend, but this rule does not require futile amendments. *Id*. And the simple fact that other courts have allowed pro se plaintiffs to amend does not mean that this Court must allow Plaintiff leave to amend to add these futile claims. None of Plaintiff's arguments makes his proposed amendments less futile.

**Fifth and Sixth objections.** Plaintiff's fifth and sixth objections are meritless for the same reasons outlined in the Court's timeliness analysis above. Kansas's two-year statute of limitations in K.S.A. § 60-513(a)(4) applies to any "action for injury to the rights of another" irrespective of

whether money damages or injunctive relief is sought. There is nothing to Plaintiff's argument that a different statute of limitations applies to official capacity § 1983 claims seeking injunctive relief. And the continuing tort doctrine is inapplicable because—just like his original First Amendment retaliation claim—the new claims are all based on allegedly discrete unlawful acts about which he knew or should have known and for which he could have timely sought recovery.[15] *Kelly*, 2024 WL 4235123, at *2-3. The continuing tort doctrine concerns "continual unlawful acts," and not the "ill effects" from the original violation. *Id.* at *3 (internal citations and quotation marks omitted). The proposed claims are barred by the face of the amended complaint, and Plaintiff has not alleged that there was any barrier to him timely filing suit. The continuing tort doctrine is inapplicable to the claims in Plaintiff's proposed amended complaint. *Id.* (continuing tort doctrine inapplicable to § 1983 claim premised on wrongful placement in administrative segregation).

The Court did a de novo review. Based on this review, the Court overrules Plaintiff's objections and agrees that granting Plaintiff leave to file the proposed amended complaint would be futile. The Court adopts the R&R and denies Plaintiff's motion for leave to amend his complaint.

## III.    CONCLUSION

Plaintiff is clearly frustrated with his treatment in custody. But the Court is bound by its jurisdiction and the law. The Court lacks subject-matter jurisdiction over Plaintiff's official capacity claims against Bell and Schnurr. And Plaintiff's remaining claims are untimely.  His objections to the R&R are unpersuasive, and his proposed amendments are futile.

---

[15]   Counts I-III and V in the proposed amended complaint are based on activity or events that occurred at HCF. Like Count I in the operative complaint, Count VI in the proposed amended complaint concerns Plaintiff's transfer from HCF to LCF. Count VII in the proposed amended complaint deals with an event that occurred at LCF. Count VIII of the proposed amended complaint concerns Plaintiff's transfer to segregation at EDCF.

THE COURT THEREFORE ORDERS that Defendants' motion to dismiss (Doc. 15) is GRANTED. The Court dismisses Plaintiff's official capacity claims against Bell and Schnurr without prejudice. The Court dismisses Plaintiff's remaining claims with prejudice as untimely.

THE COURT FURTHER ORDERS that Plaintiff's objections to the R&R (Docs. 37 and 38) are OVERRULED. The Court ADOPTS the R&R (Doc. 33-1) and DENIES the motion for leave for leave to amend (Doc. 31).

This case is closed.

IT IS SO ORDERED.

Dated: February 3, 2025                    /s/ *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE